**EXHIBIT A**



No. 12-17

| | |
|---|---|
| Title: | Mark J. McBurney, et al., Petitioners<br>v.<br>Nathaniel L. Young, Deputy Commissioner and Director, Virginia Division of Child Support Enforcement, et al. |
| Docketed: | July 5, 2012 |
| Linked with 11A1012 | |
| Lower Ct: | United States Court of Appeals for the Fourth Circuit |
| Case Nos.: | (11-1099) |
| Decision Date: | February 1, 2012 |
| **Questions Presented** | |

| ~~~Date~~~ | ~~~~~~~Proceedings and Orders~~~~~~~~~~~~~~~~~~~~ |
|---|---|
| Apr 20 2012 | Application (11A1012) to extend the time to file a petition for a writ of certiorari from May 1, 2012 to June 30, 2012, submitted to The Chief Justice. |
| Apr 25 2012 | Application (11A1012) granted by The Chief Justice extending the time to file until June 29, 2012. |
| Jun 29 2012 | Petition for a writ of certiorari filed. (Response due August 6, 2012) |
| Jul 9 2012 | Waiver of right of respondents Nathaniel L. Young, Deputy Commissioner and Director, Virginia Division of Child Support Enforcement, et al. to respond filed. |
| Jul 18 2012 | Waiver of right of respondent Thomas C. Little to respond filed. |
| Jul 25 2012 | DISTRIBUTED for Conference of September 24, 2012. |
| Jul 30 2012 | Response Requested . (Due August 29, 2012) |
| Aug 28 2012 | Brief amici curiae of American Society of News Editors, et al. filed. |
| Aug 29 2012 | Brief amici curiae of Citizens for Responsibility and Ethics in Washington (CREW), et al. filed. |
| Aug 29 2012 | Brief of respondents Nathaniel L. Young, Deputy Commissioner and Director, Virginia Division of Child Support Enforcement, et al. in opposition filed. |
| Aug 29 2012 | Brief amici curiae of Judicial Watch, Inc., et al. filed. |
| Aug 29 2012 | Brief amici curiae of Coalition for Sensible Public Records Access, et al. filed. |
| Sep 12 2012 | DISTRIBUTED for Conference of October 5, 2012. |
| Sep 12 2012 | Reply of petitioners Mark J. McBurney, et al. filed. (Distributed) |
| Oct 5 2012 | Petition GRANTED. |

---

| ~~Name~~~~~~~~~~~~~~~~~~~~~ | ~~~~~~~Address~~~~~~~~~~~~~~~~~~ | ~~Phone~~~ |
|---|---|---|
| **Attorneys for Petitioner:** | | |

| | | |
|---|---|---|
| Deepak Gupta | Gupta PLLC | (202) 470-3826 |
| Counsel of Record | 1625 Massachusetts Avenue, NW<br>Suite 500<br>Washington, DC 20036<br>deepak@guptafirm.com | |

Party name: Mark J. McBurney, et al.

**Attorneys for Respondents:**

| | | |
|---|---|---|
| E. Duncan Getchell Jr. | Solicitor General | (804) 786-7240 |
| Counsel of Record | 900 East Main Street<br>Richmond, VA 23219<br>dgetchell@oag.state.va.us | |

Party name: Nathaniel L. Young, Deputy Commissioner and Director, Virginia Division of Child Support Enforcement, et al.

| | | |
|---|---|---|
| Joseph Paul Rapisarda Jr. | County Attorney's Office | (804) 501-4344 |
| Counsel of Record | P.O.Box 90775<br>Richmond, VA 23273-0775 | |

Party name: Thomas C. Little

**Other:**

| | | |
|---|---|---|
| Marvin Ammori | 1899 L Street, NW, Suite 400 | (202) 505-3680 |
| | Washington, DC 20036<br>marvin@ammorigroup.com | |

Party name: American Society of News Editors, et al.

| | | |
|---|---|---|
| Patrick J. Carome | Wilmer Cutler Pickering Hale & Dorr LLP | (202) 663-6000 |
| | 1875 Pennsylvania Ave., NW<br>Washington, DC 20006<br>patrick.carome@wilmerhale.com | |

Party name: Citizens for Responsibility and Ethics in Washington (CREW), et al.

| | | |
|---|---|---|
| Christopher A. Mohr | Meyer Klipper & Mohr PLLC | (202) 637-0850 |
| | 923 15th Street, N.W.<br>Washington, DC 20005<br>chrismohr@mkmdc.com | |

Party name: Coalition for Sensible Public Records Access, et al.

| | | |
|---|---|---|
| Paul J. Orfanedes | Judicial Watch, Inc. | (202) 646-5172 |

425 Third Street, S.W., Suite 800
Washington, DC 20024
porfanedes@judicialwatch.org

Party name: Judicial Watch, Inc., et al.

**EXHIBIT B**

NO. ____

IN THE

# Supreme Court of the United States

MARK J. MCBURNEY and ROGER W. HURLBERT,
*Petitioners*,

v.

NATHANIEL YOUNG, JR., Deputy Commissioner and Director, Division of Child Support Enforcement, Commonwealth of Virginia and THOMAS C. LITTLE, Director, Real Estate Assessment Division, Henrico County, Commonwealth of Virginia,
*Respondents*.

On Petition for a Writ of Certiorari to the United States Court of Appeals for the Fourth Circuit

## PETITION FOR A WRIT OF CERTIORARI

LEAH M. NICHOLLS
BRIAN WOLFMAN
INSTITUTE FOR PUBLIC REPRESENTATION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Ave, NW
Washington, DC 20001
(202) 662-9353

DEEPAK GUPTA
*Counsel of Record*
DAVID ARKUSH
GUPTA PLLC
1625 Massachusetts Ave, NW
Suite 500
Washington, DC 20036
(202) 470-3826
*deepak@guptafirm.com*

*Counsel for Petitioners*

June 2012

## QUESTION PRESENTED

Under the Privileges and Immunities Clause of Article IV and the dormant Commerce Clause of the United States Constitution, may a state preclude citizens of other states from enjoying the same right of access to public records that the state affords its own citizens?

## LIST OF PARTIES

**Petitioners:**

Mark J. McBurney

Roger W. Hurlbert

**Respondents:**

Nathaniel L. Young, Jr.

Deputy Commissioner and Director, Division of Child Support Enforcement, Commonwealth of Virginia

Thomas C. Little

Director, Real Estate Assessment Division, Henrico County, Commonwealth of Virginia

Plaintiff Bonnie E. Stewart initially sought equitable relief against the Attorney General of the Commonwealth of Virginia in his official capacity. The district court granted the defendants' motion to remove the Attorney General as an improper party, and the Fourth Circuit affirmed that dismissal. Accordingly, Stewart and the Attorney General are no longer parties to this case.

## TABLE OF CONTENTS

QUESTION PRESENTED ........................................ i

LIST OF PARTIES ........................................ ii

TABLE OF AUTHORITIES ........................................ v

INTRODUCTION ........................................ 1

OPINIONS BELOW ........................................ 2

JURISDICTION ........................................ 2

STATUTORY PROVISION INVOLVED ........................................ 3

STATEMENT OF THE CASE ........................................ 3

A. Factual Background ........................................ 4

B. Proceedings Below ........................................ 6

REASONS FOR GRANTING THE PETITION ........................................ 9

I. The Fourth Circuit's Privileges-and-Immunities-Clause Holding Conflicts With the Third Circuit and Is Wrong on the Merits. ........................................ 9

A. The Third and Fourth Circuits are split. ........................................ 10

B. Virginia bars noncitizens from obtaining public records to scrutinize official decisions and protect property—activities basic to the livelihood of the nation as a single entity. ........................................ 14

C. Virginia bars noncitizens from the records-retrieval business and burdens other common callings. ........................................ 19

II. The Fourth Circuit's Decision Is At Odds With This Court's Dormant Commerce Clause Cases. ....................22

III. The Question Presented Is Of Substantial National Importance. ....................27

CONCLUSION ....................30

APPENDIX

Fourth Circuit's Opinion on the Merits....................1a

District Court's Order on the Merits....................29a

Fourth Circuit's Opinion on Standing....................50a

# TABLE OF AUTHORITIES

**Cases**

*Aamodt v. City of Norfork, Arkansas,* --- F.3d ---, 2012 WL 2369109 (8th Cir. June 25, 2012) ........ 12

*Atchison v. Hospital Authority,* 245 Ga. 494 (1980) ........ 28

*Austin v. New Hampshire,* 420 U.S. 656 (1975) ........ 15

*Baldwin v. Fish & Game Commission of Montana,* 436 U.S. 371 (1978) ........ 1, 9, 10, 14, 18

*Barnard v. Thornstenn,* 489 U.S. 546 (1989) ........ 9

*Belth v. Daniels,* No. 4-11-cv-009-JMM (E.D. Ark. May 16, 2011) ........ 12

*Best & Co. v. Maxwell,* 311 U.S. 454 (1940) ........ 24

*Blake v. McClung,* 172 U.S. 239 (1898) ........ 14

*Brown-Forman Distillers Corp. v. New York State Liquor Authority,* 476 U.S. 573 (1986) ........ 24

*C&A Carbone, Inc. v. Town of Clarkstown, New York,* 511 U.S. 383 (1994) ........ 2, 25-26, 27

*Campbell v. Morris,* 3 H. & McH. 535 (Md. 1797) ........ 16

*Canadian Northern Railway Co. v. Eggen*, 252 U.S. 553 (1920) .......... 15

*Corfield v. Coryell*, 6 F. Cas. 546 (C.C. E.D. Pa. 1825) .......... 14, 15

*Davidian v. O'Mara*, 210 F.3d 371 (6th Cir. 2000) .......... 29

*Doe v. Bolton*, 410 U.S. 179 (1973) .......... 15

*Granholm v. Heald*, 544 U.S. 460 (2005) .......... 24

*Hague v. CIO*, 307 U.S. 496 (1939) .......... 1

*Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989) .......... 25

*Hicklin v. Orbeck*, 437 U.S. 518 (1978) .......... 9, 12, 23

*Hillside Dairy Inc. v. Lyons*, 539 U.S. 59 (2003) .......... 21

*H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525 (1949) .......... 24

*Jones v. City of Memphis*, --- F. Supp. 2d ---, 2012 WL 465169 (W.D. Tenn. Feb. 13, 2012) .......... 13

*Jones v. City of Memphis*, 2012 WL 1228181 (W.D. Tenn. Apr. 11, 2012) .......... 13

*Lee v. Minner*, 458 F.3d 194 (3d Cir. 2006) .......... *passim*

*McBurney v. Mims*,
2009 WL 1209037 (E.D. Va. Apr. 29, 2009) .................. 7

*National Archives and Records Administration v. Favish*,
541 U.S. 157 (2004) .................. 15

*Nixon v. Warner Communications*,
435 U.S. 589 (1978) .................. 15

*Oregon Waste Systems, Inc. v. Department of Environmental Quality of State of Oregon*,
511 U.S. 93 (1994) .................. 22, 25

*Paul v. Virginia*,
75 U.S. 168 (1869) .................. 9, 14

*Philadelphia v. New Jersey*,
437 U.S. 617 (1978) .................. 22

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970) .................. 8, 22, 25

*Reno v. Condon*,
528 U.S. 141 (2000) .................. 2, 23

*Supreme Court of New Hampshire v. Piper*,
470 U.S. 274 (1985) .................. 19, 20

*Supreme Court of Virginia v. Friedman*,
487 U.S. 59 (1988) .................. 15

*Toomer v. Witsell*,
334 U.S. 385 (1948) .................. 9, 19

*United Building & Construction Trades v. Camden*,
465 U.S. 208 (1984) .................. 21

*W.C.M. Window Co., Inc. v. Bernardi*,
730 F.2d 486 (7th Cir. 1984) .................. 22

*West Lynn Creamery v. Healy*,
512 U.S. 186 (1994) ........ 1, 24

*Wyoming v. Oklahoma*,
502 U.S. 437 (1992) ........ 22

**Constitutional and Statutory Provisions**

U.S. Constitution, Article IV § 2 ........ 9, 22

28 U.S.C. § 1254(1) ........ 3

42 U.S.C. § 1983 ........ 3, 6

Va. Code Ann. § 2.2-3704(A) ........ 3, 23

Va. Code Ann. § 2.2-3700 ........ 15

**Legislative History**

*H.R. 4282: International Child Support Recovery Improvement Act* of 2012 ........ 17

*Dep'ts. of Commerce, Justice, and State, the Judicary, and Related Agencies Appropriations for Fiscal Year 2000: Hearing on H.R. 2670/S. 1217 Before a Subcom. of the S. Comm. on Appropriations, 106 Cong. 280 (1999)* ........ 27

**State Attorney General Opinions**

Ark. Op. Att'y Gen. No. 2012-17 (Feb. 10, 2012) ........ 12

Ark. Op. Att'y Gen. No. 2011-60 (Aug. 1, 2011) ........ 12

Ga. Op. Att'y Gen. No. 93-27 (Dec. 15, 1993) ........ 13

Tenn. Op. Att'y Gen., No. 99–67 (Mar. 18, 1999) ........ 13

**Books, Articles, and Reports**

Matthew Baker, et al, *Optimal Title Search*, 31 J. LEGAL STUD. 139 (2002) ........ 16

Brooke Barnett, *Use of Public Record Databases in Newspaper and Television Newsrooms*, 53 FED. COMM. L. J. 557 (2001) ........ 28

Emily Bayer-Pacht, *The Computerization of Land Records*, 32 CARDOZO L. REV. 337 (2010) ........ 16

Charles Bonner, *Annual Survey of Virginia Law: Administrative Procedure*, 33 U. RICH. L. REV. 727 (1999) ........ 29

Kushal R. Desai, *Lee v. Minner: The End of Non-Citizen Exclusions in State Freedom of Information Laws?*, 58 ADMIN. L. REV. 235 (2006) ........ 28, 29

Ann Laquer Estin, *Families Across Borders: The Hague Children's Conventions and The Case for International Family Law in the United States*, 62 FLA. L. REV. 47 (2010) ........ 17

ROGER HOWELL, THE PRIVILEGES AND IMMUNITIES OF STATE CITIZENSHIP (1918)) ........ 16

Frederic Lardinois, *Ancestry.com Acquires Archives.com For $100 Million*, Techcrunch.com (Apr. 25, 2012)) ........ 28

*Report of the Virginia Freedom of Information Advisory Council to the Governors and the General Assembly of Virginia* (Dec. 2010) ........ 13, 29

Daniel J. Solove, *Access and Aggregation: Public Records, Privacy and the Constitution*, 86 MINN. L. REV. 1137 (2002) ................................ 20, 27

David R. Upham, *Corfield v. Coryell and the Privileges and Immunities of American Citizenship*, 83 TEX. L. REV. 1483 (2005) ...................................... 16

## INTRODUCTION

This case presents an important question of constitutional law at the intersection of federalism, freedom of information, and the burgeoning marketplace for public records: May a state constitutionally deny to non-residents the same right of access to public records that the state affords its own citizens?

In the decision below, the Fourth Circuit answered yes, upholding a provision of the Virginia Freedom of Information Act that denies non-Virginians the right to access public records that are made freely available to Virginians. The Third Circuit, by contrast, answered no, striking down as facially unconstitutional an identical limitation in Delaware's Freedom of Information Act. *Lee v. Minner*, 458 F.3d 194 (3d Cir. 2006). That head-on circuit split warrants resolution by this Court.

Petitioners challenge Virginia's law under two closely linked provisions of the Constitution—the Privileges and Immunities Clause of Article IV and the dormant Commerce Clause. The former "prevents a State from discriminating against citizens of other States in favor of its own," *Hague v. CIO*, 307 U.S. 496, 511 (1939), while the latter prohibits "discrimination against interstate commerce." *W. Lynn Creamery v. Healy*, 512 U.S. 186, 201 (1994).

With respect to the Privileges and Immunities Clause, this case offers the Court an opportunity not only to resolve the split between the Third and Fourth Circuits, but also to clarify an avowedly "uncertain[]" area of constitutional law that the Court has not grappled with in decades. *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 395 (1978) (Brennan, J, dissenting). "[B]ecause the Clause has not often been the subject of litigation before this Court, the precise scope of the protection it affords the citizens of each State in their sister

States remains to be decided." *Id.* Indeed, both the Third and Fourth Circuits, though reaching divergent outcomes, agreed that this Court has provided insufficient guidance on that score.

With respect to the dormant Commerce Clause, the Fourth Circuit's holding—that the Virginia statute, though facially discriminatory, does not discriminate against *commerce*—likewise merits review because it opens up an irreconcilable conflict with two of this Court's cases—*Reno v. Condon*, 528 U.S. 141, 148-49 (2000), which holds that public information released into commerce is indeed an "article of commerce," and *C&A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 394 (1994), which requires courts to consider a law's "practical effect" on commerce, regardless of whether that law explicitly regulates commerce.

Finally, certiorari is warranted because the Fourth Circuit's decision, if allowed to stand, will impose senseless additional costs on those who request public records, invite selective enforcement, and encourage every state to impose intolerable new burdens on the national market for public information.

## OPINIONS BELOW

The Fourth Circuit's opinion addressing the merits of the constitutional challenge is reproduced at 1a and reported at 667 F.3d 454. The district court's decision on the merits is reproduced at 29a and reported at 780 F. Supp. 2d 439. The Fourth Circuit's earlier opinion with respect to standing is reproduced at 50a and reported at 616 F.3d 393. The district court's decision on standing is unreported and can be found at 2009 WL 1209037.

## JURISDICTION

The judgment of the court of appeals was entered on February 1, 2012. Pet. App. 3a. On April 25, 2012, Chief

Justice Roberts granted an extension of time within which to file this petition to and including June 29, 2012. This Court has jurisdiction under 28 U.S.C. § 1254(1).

## STATUTORY PROVISION INVOLVED

The Virginia Freedom of Information Act (VFOIA) limits the right of access to public records in Virginia to citizens of the Commonwealth and certain media organizations. Va. Code Ann. § 2.2-3704(A) states:

> Except as otherwise specifically provided by law, all public records shall be open to inspection and copying by any citizen of the Commonwealth during the regular office hours of the custodian of such records. Access to such records shall not be denied to citizens of the Commonwealth, representatives of newspapers and magazines with circulation in the Commonwealth, and representatives of radio and television stations broadcasting in or into the Commonwealth. The custodian may require the requester to provide his name and legal address. The custodian of such records shall take all necessary precautions for their preservation and safekeeping.

## STATEMENT OF THE CASE

Petitioners Mark J. McBurney and Roger W. Hurlbert requested public records under VFOIA but were denied access to those records under a provision of the law limiting the right of access to Virginia citizens. They brought an action in federal district court under 42 U.S.C. § 1983 to require the defendants to process their public-records requests, challenging the law's citizens-only provision under the Privileges and Immunities Clause of Article IV and the dormant Commerce Clause of the United States Constitution.

The district court initially concluded that petitioners lacked standing, but the Fourth Circuit reversed that decision. In a concurrence, Judge Gregory concluded that the citizens-only provision should be subject to heightened scrutiny under the Privileges and Immunities Clause because it discriminates against a nonresident's ability to access information and thus burdens his fundamental right to pursue a common calling.

On remand, the district court held that VFOIA does not violate the Privileges and Immunities Clause or the dormant Commerce Clause. The Fourth Circuit affirmed on the merits with respect to both Clauses, holding—in conflict with the Third Circuit's decision in *Lee v. Minner*, 458 F.3d 194 (3d Cir. 2006)—that access to public records is not a right protected by the Privileges and Immunities Clause.

**A. Factual Background**

**1.** Roger W. Hurlbert is a California citizen and the sole proprietor of Sage Information Services, a company he formed in 1987. 4th Cir. J.A. 46A-47A. Hurlbert earns his living by obtaining public records from real property assessment officials on behalf of private clients. *Id.* The requested documents are often copies of computer-readable databases of property ownership, valuations, land tenure, and land use. *Id.* at 47A. Hurlbert obtains these documents by making requests under state Freedom of Information statutes and negotiating with local officials for the removal of impediments to their release. *Id.* at 47A, 70A. Although he operates his business from California, his clients seek public documents from real property officials nationwide. *Id.* at 46A-47A.

In 2008, a client hired Hurlbert to obtain documents from the Tax Assessor of Henrico County, Virginia. *Id.* at 47A. An official from the office denied Hurlbert's re-

quest because he was not a Virginia citizen. *Id.* Hurlbert no longer requests records in Virginia and has advised his clients that he cannot offer his services there. *Id.* at 47A-48A, 66A, 70A. As a result, he has lost business. *Id.* at 70A.

**2.** Mark J. McBurney is a Rhode Island citizen who lived in Virginia from 1987 to 2000. *Id.* at 33A. When McBurney's former wife defaulted on her child support obligations, McBurney asked the Virginia Division of Child Support Enforcement (DCSE) to file a petition for child support on his behalf while he was living overseas in Australia. *Id.* at 33A-34A. Although DCSE told McBurney that his petition was filed in August 2006, DCSE did not actually file the petition until April 2007, depriving McBurney of almost nine months of child support payments. *Id.* at 34A-35A.

Believing that DCSE mishandled his child support petition, McBurney submitted a VFOIA request to DCSE in April 2008 seeking "all emails, notes, files, memos, reports, letters, policies, [and] opinions" pertaining to him, his son, his former wife, and his child support application. *Id.* at 36A-39A.

DCSE denied McBurney's request because he was not a citizen of the Commonwealth. *Id.* at 36A. In May 2008, McBurney sent a second VFOIA request seeking the same records—as well as treatises, statutes, legislation, regulations, administrative guidelines and other reference materials relied on by DCSE "when one parent is overseas"—but was again denied access to those records because of the statute's citizens-only provision. *Id.* at 36A, 42A-43A. Though McBurney ultimately received some documents about his case under another state statute, he did not receive all the records sought in his VFOIA requests, including general policy infor-

mation about how DCSE handles cases when a parent lives overseas. Pet. App. 54a.

**B. Proceedings Below**

**1.** Petitioners McBurney and Hurlbert filed suit under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against the Attorney General of Virginia, the Deputy Commissioner and Director of the Virginia DCSE, and the Director of the Henrico County Real Estate Assessor's Office.

The complaint alleged that VFOIA's citizens-only provision violates Article IV's Privileges and Immunities Clause and the dormant Commerce Clause by barring petitioners' access to public records on the basis of their lack of Virginia citizenship. First Am. Compl. ¶ 1. Specifically, petitioners maintained that the citizens-only provision denied their right under the Privileges and Immunities Clause to participate in Virginia's governmental and political processes by preventing them from obtaining information from Virginia's government. *Id.* ¶ 32. McBurney also alleged that the citizens-only provision precluded him from advocating effectively on his own behalf and from invoking the dispute resolution procedures needed to resolve his child support application. *Id.* ¶¶ 34-35. Separately, Hurlbert claimed that the provision denied his right to pursue a common calling by preventing him from obtaining public records on an equal basis with Virginia citizens. *Id.* ¶ 36. Hurlbert also claimed that the citizens-only provision violated the dormant Commerce Clause by granting Virginia citizens, but not noncitizens, the right to conduct a public records retrieval business in Virginia. *Id.* ¶ 41.

The respondents moved to dismiss the suit for lack of standing. The district court granted their motions, concluding that both McBurney and Hurlbert lacked stand-

ing to maintain their suit. *McBurney v. Mims*, 2009 WL 1209037, at *4-6 (E.D. Va. Apr. 29, 2009). The court also summarily addressed the merits of Hurlbert's constitutional claims, ruling that the statute did not violate the Privileges and Immunities Clause or the dormant Commerce Clause. *Id.* at *6-7.

**2.** On appeal, the Fourth Circuit reversed the district court's standing determination and remanded for further proceedings on the merits. Pet. App. 64a-68a.

In a concurrence, Judge Gregory discussed the merits at length, explaining that Hurlbert, by alleging that Virginia had denied him information he collects for a profit, had made out "a classic common-calling claim under the Privileges Immunities Clause." *Id.* at 72a. Because "[t]he ability to quickly and efficiently gather and disseminate information is central to a great deal of economic activity," Judge Gregory reasoned, a statute that discriminates against a nonresident's ability to access information "implicates the right to pursue a common calling." *Id.* Accordingly, he concluded, "it is incumbent on the state to prove that the statute withstands heightened scrutiny." *Id.*

**3.** On remand, the parties cross-moved for summary judgment on the merits. The district court granted Respondents' motions, holding that VFOIA does not violate Article IV's Privileges and Immunities Clause or the dormant Commerce Clause. *Id.* at 36a-49a.

The Fourth Circuit affirmed. The court first held that the citizens-only provision implicates no privilege or immunity protected by Article IV's Privileges and Immunities Clause. Expressly rejecting the Third Circuit's approach in *Lee*, the court concluded that "[a]ccess to a state's records simply does not 'bear[] upon the vitality the Nation as a single entity' such that VFOIA's citizen-

only provision implicates the Privileges and Immunities Clause." *Id.* at 21a (citation omitted). And although *Lee* invalidated Delaware's law on its face, the Fourth Circuit purported to distinguish *Lee* on the ground that the court had recognized a right to access only records of "national, political, and economic importance." *Id.* at 19a. (In the court's view, petitioners sought only records of "personal import." *Id.*)

The Fourth Circuit also held that the citizens-only provision does not burden Hurlbert's right to pursue his common calling in Virginia. Noting that VFOIA on its face "addresses no business, profession, or trade," the court reasoned that the statute "[a]t most" imposes only an "incidental" effect on Hurlbert by limiting one method by which he may carry out his business. Pet. App. 17a-18a. In the court's view, this "incidental" effect is insufficient to implicate Hurlbert's right to pursue a common calling. *Id.* Finally, the court concluded that VFOIA does not infringe—or the Clause does not protect—petitioners' ability to access state courts or to advocate for their personal, economic, and political interests in Virginia. *Id.* at 22a-23a.

The Fourth Circuit also rejected Hurlbert's dormant Commerce Clause claim, holding that the district court appropriately applied the less exacting test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), to VFOIA's citizens-only provision. Again, the court reasoned that VFOIA does not discriminate against interstate commerce or out-of-state economic interests because VFOIA is "wholly silent as to commerce or economic interests." Pet. App. 26a. In the court's view, VFOIA only prevents Hurlbert from pursuing his chosen method of doing business in Virginia but does not prevent him from engaging in business in Virginia altogether. Pet. App. 27a.

## REASONS FOR GRANTING THE PETITION

### I. The Fourth Circuit's Privileges-and-Immunities-Clause Holding Conflicts With the Third Circuit and Is Wrong on the Merits.

Article IV's Privileges and Immunities Clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. ART IV § 2. Also known as the Comity Clause, it was intended to "place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned," *Paul v. Virginia*, 75 U.S. 168, 180 (1869), and thereby "fuse into one Nation a collection of independent, sovereign States." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948). The Clause relieves the citizens of each state of "the disabilities of alienage in other States" and "inhibits discriminating legislation against them by other states." *Hicklin v. Orbeck*, 437 U.S. 518, 524 (1978).

Analysis under the Clause involves a two-step inquiry. First, a state's discriminatory treatment of nonresidents must burden "rights or activities" that are "sufficiently basic to the livelihood of the Nation" to be protected by the Clause. *Baldwin*, 436 U.S. at 388. The second step asks whether the discrimination is justified by a substantial state interest. *See Barnard v. Thornstenn*, 489 U.S. 546, 552 (1989). Without reaching the second step, the Fourth Circuit incorrectly concluded that VFOIA does not burden any right or activity protected by the Clause. That incorrect conclusion brings the Fourth Circuit into conflict with the Third Circuit, is at odds with this Court's jurisprudence, and is wrong on the merits.

### A. The Third and Fourth Circuits Are Split.

The Third and Fourth Circuits have fully considered the constitutionality of identical citizens-only restrictions on the right of access to public records and have reached diametrically opposite conclusions.

In *Lee v. Minner*, the Third Circuit struck down the Delaware Freedom of Information Act's citizens-only provision, holding that "access to public records is a right protected by the Privileges and Immunities Clause." 458 F.3d at 200. Because the Delaware law facially discriminated against noncitizens' exercise of that right and was not justified by any substantial state interest, it was unconstitutional in all respects and the court enjoined its enforcement. *Id.* at 200-02. The Third Circuit recognized that this Court's cases leave the lower courts with "limited guidance" concerning the scope of the Clause, but reasoned from "basic principles" distilled from the existing case law. *Id.* Reasoning that access to public records is necessary to the ability to engage in political advocacy—an "essential activity" that "bear[s] upon the vitality of the Nation as a single entity," *id.* at 200 (quoting *Baldwin*, 436 U.S. at 387, 383), the court "conclude[d] that access to public records is a right protected by the Privileges and Immunities Clause." *Id.*

By contrast, the Fourth Circuit below rejected *Lee*'s holding and concluded that the right of access identified in *Lee* is not a fundamental right protected by the Privileges and Immunities clause. Pet. App. 21a. The Fourth Circuit, on that basis, upheld VOIA's indistinguishable citizens-only provision, holding that "[a]ccess to a state's records simply does not 'bear[] upon the vitality of the Nation as a single entity' such that VFOIA's citizen-only provision implicates the Privileges and Immunities Clause." *Id.* The court rejected *Lee* as "out-of-circuit au-

thority" that is "not binding on this Court" and emphasized that the right of public access recognized in *Lee* "is not one previously recognized by the Supreme Court." *Id.* at 19a.

The Fourth Circuit, in the alternative, attempted to distinguish *Lee* on its facts, interpreting the right identified by the Third Circuit as limited to "engag[ing] in the political process with regard to matters of both national political and economic importance." *Id.* at 19a. But that dicta cannot sweep aside the circuit split. Although *Lee* clarified that access to public records is a prerequisite to engaging in political advocacy, the Third Circuit stated—in no uncertain terms—that "access to public records is a [fundamental] right protected by the Privileges and Immunities Clause." 458 F.3d at 200.

It bears emphasis that the Third Circuit enjoined enforcement of Delaware's citizens-only provision in *all circumstances*, not only as applied to individuals invoking the statute for political advocacy on matters of national political and economic importance. *Id.* at 201-02. Thus, by holding that "[a]ccess to a state's records simply does not . . . implicate[] the Privileges and Immunities Clause" and upholding the citizens-only provision in VFOIA (Pet. App. 21a), the Fourth Circuit's decision below conflicts with the Third Circuit's decision in *Lee* on the important question whether a state may constitutionally deny individuals the right of access to public records based on state citizenship.

The split between the Third and Fourth Circuits concerning the constitutionality of citizens-only restrictions—coupled with the lack of guidance from this Court—exacerbates the already unclear state of the law. Just this month, in a case challenging the constitutionality of the citizens-only restriction of the Arkansas Free-

dom of Information Act under the Privileges and Immunities Clause, the Eighth Circuit acknowledged that the Third and Fourth Circuits have reached diametrically opposite conclusions on the question, but declined to reach the challenge because the challengers had failed to preserve it in the district court. *See Aamodt v. City of Norfork, Ark.*, --- F.3d ---, 2012 WL 2369109, at *2 (8th Cir. June 25, 2012). This leaves the law in a confused state. Last year, in response to a constitutional challenge, the Arkansas Auditor and State Highway and Transportation Department agreed to honor all FOIA requests by out-of-state residents. *Belth v. Daniels*, No. 4-11-cv-009-JMM (E.D. Ark. May 16, 2011), Doc. No. 16, Exh. 1 (settlement agreement). Yet the Arkansas Attorney General continues to assert its prerogative to enforce the state's citizens-only restriction on behalf of other state agencies. *See* Ark. Op. Att'y Gen. No. 2012-017 (Feb. 10, 2012). Meanwhile, the same Attorney General has opined that, in light of *Lee*'s "extensive analysis of a government action that treats FOIA requestors differently based solely on residence, a court would likely invalidate" a plan by an Arkansas county to distinguish between county and non-county residents in deciding how much to charge for access to a public records website. Ark. Op. Att'y Gen. No. 2011-060 (Aug. 1, 2011). These positions are, to put it mildly, hard to square.

In Tennessee, the state of confusion was recently illustrated by a federal district court's unsuccessful struggle to harmonize the decisions of the Third and Fourth Circuits in a pending constitutional challenge to the citizens-only provision of the Tennessee Public Records Act. That court initially declined to dismiss the challenge "[i]n light of *Lee* and *McBurney*," reasoning that "the only two circuit courts to address the issue have found, whether explicitly or implicitly," that the Privileges and

Immunities Clause protects a right to obtain records necessary to engage in the political process on issues of national importance. *Jones v. City of Memphis*, --- F. Supp. 2d ---, 2012 WL 465169, at *10 (W.D. Tenn. Feb. 13, 2012). But several months later the same court granted the defendants' motion for summary judgment, finding the Tennessee law "analogous to the Virginia provision at issue in *McBurney*" and limiting *Lee* to its facts. *Jones v. City of Memphis*, 2012 WL 1228181, at *5-13 (W.D. Tenn. Apr. 11, 2012). That case is now on appeal to the Sixth Circuit, and a decision there can only deepen the split, not resolve it. In the meantime, Tennessee adheres to its longstanding position that its citizens-only provision does not violate the Privileges and Immunities Clause. *See* Tenn. Att'y Gen. Op., No. 99–067 (Mar. 18, 1999) (addressing constitutional arguments).

Still other states, like Georgia, have provided noncitizen access as a policy matter but reserved the statutory right to withhold that access. *See* Ga. Op. Att'y Gen. No. 93-27 (Dec. 15, 1993) ("While the Code section on its face extends the absolute right of inspection only to citizens of Georgia, it is my opinion that inspection of otherwise public records should not be denied merely because the requester is a nonresident of this state.").[1] Even in Virginia, different agencies appear to have widely different policies about whether, and under what circumstances, to honor requests by non-Virginians. *See Report of the Virginia Freedom of Information Advisory Council to the Governor and the General Assembly of Virginia* 5-6 (2010), available at http://foiacouncil.dls.virginia.gov/2010ar.pdf.

[1] Amendments in April 2012 removed the references to citizens. *See* http://www1.legis.ga.gov/legis/2011_12/fulltext/hb397.htm.

For those who frequently obtain, sell, buy, and use public records, for citizens and journalists who make occasional requests, and for the state officials who process those requests, the state of the law is intolerable. A researcher seeking to conduct a 50-state survey concerning state participation in a federal program, for example, will have the right to obtain records on the same terms as in-state residents in some states, such as California, Delaware, New York, and New Jersey, but not in others, such as Arkansas, New Hampshire, Tennessee, or Virginia (unless they pay an in-state proxy to do so), and will have uncertain rights of access in still other states. Whatever else these restrictions are intended to accomplish, they certainly do not "place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *Paul*, 75 U.S. at 180.

### B. Virginia Bars Noncitizens from Obtaining Public Records to Scrutinize Official Decisions and Protect Property—Activities Basic To the Livelihood of the Nation as a Single Entity.

The Privileges and Immunities Clause ensures that citizens of one state can travel through, temporarily reside in, and do business in other states without suffering a "condition of alienage" before the governments of other states. *Blake v. McClung*, 172 U.S. 239, 248-50, 256 (1898). Americans' right to "take, hold and dispose of property, either real or personal" in every state in the Union has always been considered one of the most fundamental rights protected by the Clause. *Baldwin*, 436 U.S. at 384 (citing *Corfield v. Coryell*, 6 F. Cas. 546, 552 (C.C. E.D. Pa. 1825) (opinion of Washington, J.)). The Clause also secures to noncitizens the right to sue in an-

other state's courts, *Canadian Northern R. Co. v. Eggen*, 252 U.S. 553 (1920), to claim the writ of habeas corpus, *Baldwin*, 436 U.S. at 384 (citing *Corfield*, 6 F.Cas. at 552), to be free from discriminatory regulation of their profession, *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 65 (1988), to purchase the same services available to state citizens, *Doe v. Bolton*, 410 U.S. 179, 200 (1973), and to be treated the same by tax and bankruptcy authorities, *Austin v. New Hampshire*, 420 U.S. 656, 660-68 (1975).

Access to public records—including the property and administrative records sought by the petitioners here—is vital to exercising any of these rights, and to securing any number of personal, economic, and political interests that a citizen of one state may have in another. Open records laws take the place of, and supplement, the longstanding "general right to inspect and copy public records and documents," recognized in both English and American common law. *Nixon v. Warner Commc'ns.*, 435 U.S. 589, 597-98 (1978). The basic purpose of these laws—to let the people know what the "Government is up to"—"should not be dismissed as a convenient formalism" but instead "defines a structural necessity in a real democracy." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004). Virginia itself recognized when it enacted VFOIA that the public should have access to government records because the "affairs of government" should not be "conducted in an atmosphere of secrecy." Va. Code Ann. § 2.2-3700. By denying citizens of other states equal access to state records, Virginia subverts these principles, hinders the ability of noncitizens to protect their economic and other interests, and unconstitutionally undermines the vitality of the Nation as a single entity.

For instance, a noncitizen seeking real property records, like those sought by Hurlbert, has no right to obtain those records—even if he or she is considering purchasing real estate in the Commonwealth and wants to check the title and ownership. That result is hard to square with "the first reported judicial construction of the Privileges and Immunities Clause," in which Justice Samuel Chase explained that "one of the chief motivations for the inclusion of the analogous provision in the Articles was to secure the rights of real property ownership." David R. Upham, *Corfield v. Coryell and the Privileges and Immunities of American Citizenship*, 83 TEX. L. REV. 1483, 1493 (2005) (citing *Campbell v. Morris*, 3 H. & McH. 535 (Md. 1797)).

The rationale for protecting other rights—including the right to access the courts—is that they help secure property rights. *See* ROGER HOWELL, THE PRIVILEGES AND IMMUNITIES OF STATE CITIZENSHIP 48 (1918). The public's ability to obtain the sort of basic real estate title records sought by Hurlbert is just as essential as access to courts for facilitating the orderly acquisition, ownership, and transfer of property. Today, as in the founding era, an "important aspect of market exchange is the question of whether the seller of a good is the true owner"—a question that, with respect to real estate, can only be answered by resort to public records. Matthew Baker, et al, *Optimal Title Search*, 31 J. LEGAL STUD. 139, 139 (2002); *see also* Emily Bayer-Pacht, *The Computerization of Land Records*, 32 CARDOZO L. REV. 337, 337 (2010) (explaining that the "system of publicly recording land title documents originated in the United States in 1640, in the Plymouth and Massachusetts Bay Colonies," and is now accessed through computerized searches).

Similarly, access to records of state administrative

processes is often essential to protecting private property interests as well as conducting advocacy on issues of national importance—issues that may often come to light through an individual's personal experience with government. For example, petitioner McBurney sought records relating not only to the Commonwealth's failure to promptly handle his own application for child support, but also to its general policies for handling applications from overseas parents. State treatment of child support applications from overseas parents is a national policy issue with "significant consequences for families and children" and increased "relevance in foreign relations." Ann Laquer Estin, *Families Across Borders: The Hague Children's Conventions and The Case for International Family Law in the United States*, 62 Fla. L. Rev. 47, 48 (2010). With 6.6 million American citizens living abroad, it is not surprising that "many of these Americans will face challenging international family law problems," which "[n]ational and local laws are inadequate" to address. *Id.* Indeed, Congress is currently considering legislation that addresses the states' treatment of child support applications from overseas parents. *H.R. 4282: International Child Support Recovery Improvement Act of 2012*, http://www.govtrack.us/congress/bills/ 112/hr4282 (last visited June 26, 2012).

Whether pursuing their own interests through governmental processes or lobbying on behalf of others, non-Virginians like McBurney are denied the right that Virginians enjoy to obtain public information about the government's existing policies and procedures. Virginia, in effect, treats noncitizens as aliens in their own country, refusing to provide them with information the Commonwealth admits is vital to its own citizens.

In addition to burdening the individual interests of noncitizens—and by extension, the free movement of people and commerce across state lines—VFOIA hinders the Nation's vitality and development as one political community. Virginia's public records are valuable not only to citizens of the Commonwealth, but also to citizens of other states involved in political advocacy in their home states, in other states, or at the national level. As the Third Circuit observed, "events which take place in an individual state may be relevant to and have an impact upon policies of not only the national government but also of the states." *Lee*, 458 F.3d at 199-200. "Public records compiled from many states often reveal national trends or evidence of large-scale malfeasance not necessarily apparent through the examination of information from a single state." 4th Cir. Br. Amici Curiae of Reporters' Comm. for Freedom of the Press at 11-12. Many federal programs are administered in part by the states, which means that state-level information is critical to assessing them. In recent years, records obtained through state FOIA requests have exposed problems with state administration of federal laws, such as the "No Child Left Behind" Act, leading to national policy discussions. *Id.* at 12-14. By denying noncitizens the right to access public records, the Commonwealth deprives citizens of other states the opportunity to scrutinize—and learn from—its public policies and actions. This kind of isolationism threatens "the vitality of the Nation as a single entity." *Baldwin*, 436 U.S. at 383.

It is true that not every citizenship classification affects interests important enough to require scrutiny under the Clause. Thus, a state may restrict some activities, such as recreational elk hunting, to its own citizens. *See id.* at 388. But this case is far removed from elk hunting. Access to public information is not only closely re-

lated to other state rights that must be provided equally to noncitizens—such as the right to acquire and hold property, sue in state courts, or be free of discriminatory state regulations—but fundamental to our democratic and federalist system of government. The Fourth Circuit's failure to provide any reasoning to support its perfunctory conclusion to the contrary underscores its error and the need for this Court's review.

### C. Virginia Bars Noncitizens From the Records-Retrieval Business and Burdens Other Common Callings.

This Court has long recognized that "one of the privileges which the Clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State." *Supreme Court of N.H. v. Piper*, 470 U.S. 274, 280 (1985) (quoting *Toomer*, 334 U.S. at 396). VFOIA burdens noncitizens' ability to do business in Virginia, and the Fourth Circuit's reasons for finding otherwise conflict with the Court's precedents and the purpose of the Clause.

The procurement, compilation, and publication of public records is a major industry. *See* Part III, *infra*. The practical effect of VFOIA is to deny noncitizens the ability to pursue that business within Virginia on equal footing with Virginia residents and to immunize records-retrieval businesses owned by Virginia citizens from out-of-state competitors like petitioner Hurlbert.[2] "The Privileges and Immunities Clause was designed primari-

---

[2] *See* Public Record Retriever Network, Membership List for 2012: Virginia, http://www.brbpublications.com/prrn/search.aspx (16 Virginia companies offering public records retrieval services).

ly to prevent such economic protectionism." *Piper*, 470 U.S. at 285 n.18.

Not only does VFOIA completely exclude noncitizens from competing in the Virginia records-retrieval business, it also burdens virtually any other kind of noncitizen business owner who enters the Virginia market. Freedom of Information statutes are a crucial source of information for commercial entities, who use them to challenge government regulations, to obtain information about government licensing or contract decisions, and to obtain public information about competitors, among other purposes. "The vast majority of FOIA requests are made by businesses for commercial purposes." Daniel J. Solove, *Access and Aggregation: Public Records, Privacy and the Constitution*, 86 Minn. L. Rev. 1137, 1196 (2002). By denying out-of-state business owners the right to access public records, but granting that right to Virginia business owners, Virginia burdens noncitizens with a competitive disadvantage in the Virginia market. Again, the Privileges and Immunities Clause was intended to prevent this kind of economic discrimination.

Despite these burdens on noncitizen businesses, the Fourth Circuit concluded that VFOIA escapes review under the Clause because "[o]n its face . . . VFOIA addresses no business, profession, or trade" and, therefore, its effect on Hurlbert's business is merely "incidental." Pet. App. 17a-18a. This rationale is wrong for two reasons. First, VFOIA does not impose an "incidental" burden on Hurlbert's business in Virginia. Quite the contrary, as explained above, the statute prevents him from doing business there altogether.

Second, nothing in the history of the Privileges and Immunities Clause suggests that a state may burden a common calling so long as it avoids saying that is what it

is doing. For example, a state could not constitutionally pass a law that limits the amount of fish that only noncitizens may catch. Even if such a law applies to both recreational and commercial fishing, and even if its intention is to protect in-state fisheries, its effect would be to discriminate against out-of-state fisherman. The same is true for public records laws. *See* Pet. App. 72a (Gregory, J., concurring) ("A statute that discriminates against a nonresident's ability to access information therefore implicates the right to pursue a common calling in the Twenty-First century in much the same way that it would if it burdened an angler's ability to catch fish, or a cabby's ability to drive fares, in the Twentieth.") (citations omitted). VFOIA's failure to specifically mention noncitizen business owners does not lessen its discriminatory purpose or effect. *Cf. United Bldg. & Constr. Trades v. Camden*, 465 U.S. 208, 216-17 (1984) (holding that a municipal hiring preference that discriminated against people not residing in the city by definition discriminated against out-of-state residents).

At bottom, what matters is that the law has the "practical effect" of discriminating against out-of-state businesses like Hurlbert's. *See Hillside Dairy Inc. v. Lyons*, 539 U.S. 59, 67 (2003). Just as the "absence of an express statement . . . identifying out-of-state citizenship as a basis for disparate treatment is not a sufficient basis for rejecting [a Privileges and Immunities] claim," *id.*, the absence of an express statement identifying noncitizen business owners for disparate treatment is not sufficient to reject petitioners' Privileges and Immunities claim.

## II. The Fourth Circuit's Decision Is at Odds With This Court's Dormant Commerce Clause Cases.

This Court should also grant certiorari to review the Fourth Circuit's erroneous decision to apply the less rigorous dormant Commerce Clause analysis set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), instead of the "virtually per se rule of invalidity" applicable to statutes, like VFOIA, that discriminate against out-of-state economic interests. *See Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978). That holding warrants review not only because it conflicts with this Court's cases, but also because of "the mutually reinforcing relationship between the Privileges and Immunities Clause of Art. IV, § 2, and the Commerce Clause—a relationship that stems from their common origin in the Fourth Article of the Articles of Confederation and their shared vision of federalism." *Hicklin*, 437 US. at 531-32. As Judge Posner has observed, "[t]he commerce clause and the privileges and immunities clause are so closely related in a case of this kind that it would be artificial to ignore one of them." *W.C.M. Window Co., Inc. v. Bernardi*, 730 F.2d 486, 496 (7th Cir. 1984) (citation omitted).

This Court has repeatedly held that a statute is presumptively invalid if it discriminates against interstate commerce or out-of-state economic interests either facially or in effect. *E.g.*, *Wyoming v. Oklahoma*, 502 U.S. 437, 455 (1992); *Philadelphia*, 427 U.S. at 627. Discrimination under the dormant Commerce Clause "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994) (citations omitted). Differential treatment is inherent in VFOIA's citizens-

only provision, which discriminates against out-of-state economic interests *both* facially and in effect.

**1.** On its face, VFOIA provides that "all public records shall be open to inspection and copying by any citizen of the Commonwealth" and that "[a]ccess to such records shall not be denied to citizens of the Commonwealth." Va. Code Ann. § 2.2-3704(A). By expressly guaranteeing access to public records only to Virginia citizens while authorizing officials to bar noncitizens from such access, the statute facially discriminates against the economic interests of out-of-state businesses who, like Hurlbert, wish to participate in the Virginia records-retrieval market. The Fourth Circuit acknowledged that "VFOIA discriminates against noncitizens of Virginia" on its face, but erroneously concluded that it does not regulate "the flow of interstate commerce—the flow of goods, materials, and other articles of commerce across state lines." Pet. App. 26a-27a (citation and emphasis omitted).

That conclusion cannot be reconciled with *Reno v. Condon*, 528 U.S. 141, 148-49 (2000), in which this Court unanimously held that public drivers' records regulated by the Drivers' Privacy Protection Act are "article[s] of commerce" under the Commerce Clause because they are sold, compiled into databases, and resold for various commercial purposes. Because the Commonwealth's information is "used in the stream of interstate commerce by various public and private entities," its "sale or release into the interstate stream of business" constitutes interstate commerce under the Commerce Clause. *Id.; see also Hicklin*, 437 U.S. at 532 ("[T]he Commerce Clause circumscribes a State's ability to prefer its own citizens in the utilization of ... a state-owned resource [that] is destined for interstate commerce."). Thus, the

Fourth Circuit's assertion that "VFOIA is wholly silent as to commerce or economic interests" (Pet. App. 26a) is simply wrong.

By its terms, VFOIA does not afford Virginia businesses the right of access to public documents and thus prevents out-of-state businesses from competing in the market for Virginia public records without incurring added costs—such as hiring in-state employees to retrieve the desired records—or becoming a citizen of the Commonwealth. But as this Court has held, "the mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States." *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (citing *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 539 (1949)).

**2.** The citizens-only provision also discriminates in effect because it "favor[s] in-state economic interests over out-of-state interests." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986). This Court has long recognized that "'in each case it is [the Court's] duty to determine whether the statute under attack . . . will in its practical operation work discrimination against interstate commerce.'" *W. Lynn Creamery*, 512 U.S. at 201 (quoting *Best & Co. v. Maxwell*, 311 U.S. 454, 455-456 (1940)). The Fourth Circuit ignored that duty, first, by declining to consider at all the practical operation of VFOIA's citizens-only provision on interstate commerce and out-of-state economic interests and, second, by asserting without explanation that "any effect [of VFOIA] on commerce is incidental." Pet. App. 26a.

The Fourth Circuit's approach is wrong. VFOIA's citizens-only provision harms out-of-state businesses that have economic interests in retrieving public records in Virginia. By denying business entities in every other

state the right to Virginia public records but permitting identical in-state businesses to retrieve the same exact records on demand, VFOIA has the effect of placing out-of-state businesses, like Hurlbert's, at a disadvantage compared to in-state businesses.

Moreover, the Fourth Circuit's approach is at odds with this Court's command that "the practical effect of the statute must be evaluated . . . by considering how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). If every state were to adopt a citizens-only provision in its FOIA law, interstate commerce in the document retrieval market would come to a halt, and in-state economic interests would *de facto* be prioritized over out-of-state interests. Thus, under *Healy*, VFOIA's citizens-only provision has a discriminatory effect on interstate commerce and out-of-state economic interests.

Rather than evaluate the practical effect of VFOIA's citizens-only provision, the Fourth Circuit rescued the statute from rigorous review on the theory that VFOIA's purpose is not to erect protectionist barriers or discriminate against interstate commerce but to combat government secrecy. Pet. App. 26a. But purpose is irrelevant—as made clear by the Fourth Circuit's failure to cite any authority supporting its assertion. Because VFOIA's citizens-only provision discriminates against out-of-state economic interests on its face and in effect, "the virtually *per se* rule of invalidity provides the proper legal standard here, not the *Pike* balancing test." *Or. Waste Sys., Inc.*, 511 U.S. at 100.

The Fourth Circuit's ruling below departs from this Court's holding in *C & A Carbone, Inc. v. Town of*

*Clarkstown, N.Y.*, 511 U.S. 383, 394 (1994). There, this Court invalidated a flow control ordinance requiring that all local trash be processed in the town's transfer station before leaving the municipality. 511 U.S. at 386. The Court explained that the local government's policy discriminated against out-of-state processing facilities by requiring garbage to be processed in the town and thus had the effect of establishing a local monopoly over the "initial processing step" of the town's garbage. *See id.* at 392. In doing so, the statute produced economic effects that "were interstate in reach." *Id.* at 389.

Similar to the flow control ordinance in *Carbone*, VFOIA's citizens-only provision denies noncitizens and out-of-state businesses access to the market for Virginia document retrieval. The provision reserves the "initial processing step" of document retrieval to local businesses, denying out-of-state businesses primary access to that market in much the same way that the flow control ordinance in *Carbone* denied out-of-state haulers entry into the market for the initial processing of local garbage. Under VFOIA, Hurlbert either would have to hire a Virginia citizen or business to obtain Virginia public records or refrain from carrying out his document retrieval business in Virginia altogether. As a result of the added burdens imposed on his economic interests by the citizens-only provision, Hurlbert no longer does business in Virginia. 4th Cir. J.A. 47A-48A, 66A, 70A.

Thus, contrary to the Fourth Circuit's assertion that VFOIA only "prevents Hurlbert from using his 'chosen way of doing business'" (Pet. App. 27a), VFOIA discriminates against Hurlbert's *only* way of doing business in Virginia, and likewise burdens other out-of-state document retrieval businesses seeking to enter the market. Under *Carbone*, that type of discrimination "in favor of

local business or investment is *per se* invalid" absent Virginia's ability to "demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Carbone*, 511 U.S. 383 at 392 (citations omitted). In sum, the Fourth Circuit eschewed *Carbone*'s command to apply rigorous scrutiny to statutes, like VFOIA, that discriminate facially and in effect, and the Court should grant certiorari for that reason as well.

**III. The Question Presented Is of Substantial National Importance.**

The market for public information is of increasing importance to the national economy. "Once scattered about the country, now public records are consolidated by private sector entities into gigantic databases." Solove, *Access and Aggregation: Public Records, Privacy, and the Constitution*, 86 MINN. L. REV. at 1139. Searches that in the past would require "a treasure hunt around the country to a series of local offices to dig up records" can now be accomplished in seconds. *Id.* Electronic databases of public records are used to investigate credit risks, screen job applicants, purchase property, and evaluate insurance risks. Even law enforcement agencies, rather than attempt to find a needle in a haystack, search private commercial databases of public records to combat everything from terrorism and violent crime to health care fraud.[3] Journalists use public rec-

[3] *See Dep'ts of Commerce, Justice, and State, the Judicary, and Related Agencies Appropriations for Fiscal Year 2000: Hearing on H.R. 2670/S. 1217 Before a Subcom. of the S. Comm. on Appropriations,* 106 Cong. 280 (1999) (Statement of Louis Freeh, Director, FBI) (noting that "[t]he FBI subscribes to various commercial online databases ... to obtain public source information" for investigations).

ords databases to conduct data-intensive investigations into issues of national importance—from financial fraud to official corruption—that "would be virtually impossible" without databases. Brooke Barnett, *Use of Public Record Databases in Newspaper and Television Newsrooms*, 53 FED. COMM. L. J. 557, 566 (2001). And companies generate billions of dollars in annual revenue by selling access to these databases to businesses, governments, journalists, and consumers.[4]

Noncitizen restrictions in state open records laws burden this national market with inefficiencies, inequity, and opportunities for improper official conduct. To be complete, national databases must contain records from all 50 states. As a practical matter, the restrictions force out-of-state requesters to hire an in-state proxy to obtain the public information they need. *See* Kushal R. Desai, *Lee v. Minner: The End of Non-Citizen Exclusions in State Freedom of Information Laws?*, 58 ADMIN. L. REV. 235, 244 & n.62 (2006); *Atchison v. Hospital Auth.*, 245 Ga. 494, 494 (1980) (despite Georgia citizens-only provision, Georgia employee of Florida corporation could act as corporation's proxy for purposes of public-records request). This extra cost imposes a competitive disadvantage on out-of-state records-retrieval professionals—especially small business owners like Hurlbert.

Citizens-only restrictions in open records laws also invite selective enforcement, allowing public officials to

---

[4] *See* Reed Elsevier, *Annual Report 2011, Business Review, Lexis Nexis Legal & Professional*, http://reporting.reedelsevier.com/ar11/business-review/lexisnexis-legal-professional/; Frederic Lardinois, *Ancestry.com Acquires Archives.com For $100 Million*, Techcrunch.com (Apr. 25, 2012), http://techcrunch.com/2012/04/25/ancestry-com-acquires-archives-com-from-inflection-for-100-million.

deny requests based on their content or source. *See Davidian v. O'Mara*, 210 F.3d 371 (6th Cir. 2000) (allegations that city officials used citizens-only restriction to retaliate against critical journalist); Desai, *Non-Citizen Exclusions*, 58 ADMIN. L. REV. at 244 n.62 (reporting that citizens-only restrictions are "enforced sometimes and not enforced at other times"). Or officials may use the restrictions as a bargaining chip to impose additional fees or delay on noncitizen requesters. *See Report of the Virginia Freedom of Information Advisory Council* at 5 (reporting that one agency often "negotiates a deal" with the noncitizen data aggregators that request records). Improper official conduct can also burden citizen requesters, who may face "undue inconvenience and invasion of privacy" from public officials seeking to "verify the necessary citizenship or media relationships." Charles Bonner, *Annual Survey of Virginia Law: Administrative Procedure*, 33 U. RICH. L. REV. 727, 730 (1999).

There is simply no justification for imposing these discriminatory burdens on noncitizens—and the Fourth Circuit conspicuously did not identify any. Virginia's FOIA allows public officials to recoup the costs of reproducing records, so "government officials cannot reasonably fear inundation by a large volume of requests from persons or media lacking substantial ties with the Commonwealth." *Id.* at 731. Indeed, that some states have eliminated their citizens-only provisions over the past several decades underscores their lack of justification. *See* Desai, *Non-Citizen Exclusions*, 58 ADMIN. L. REV. at 245 n.63.

Because citizens-only laws like Virginia's impose unjustifiable burdens on the public information industry, and because the Fourth Circuit's erroneous decision has

exacerbated confusion concerning their constitutionality, this Court should grant the petition, resolve the circuit split, and restore certainty to the marketplace for public information.

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted,

DEEPAK GUPTA
*Counsel of Record*
DAVID ARKUSH
GUPTA PLLC
1625 Massachusetts Avenue, NW
Suite 500
Washington, DC 20036
(202) 470-3826
*deepak@guptafirm.com*

LEAH NICHOLLS
BRIAN WOLFMAN
INSTITUTE FOR PUBLIC REPRESENTATION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue, NW
Washington, DC 20001
(202) 962-5300

*Counsel for Petitioners*

June 2012