UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METROPOLITAN WASHINGTON CHAPTER, ASSOCIATED BUILDERS AND CONTRACTORS, INC., *et al.*,<br><br>                Plaintiffs,<br><br>   v.<br><br>DISTRICT OF COLUMBIA,<br><br>                Defendant. | No. 12-CV-00853 (EGS) |

**BRIEF OF *AMICUS CURIAE* ERWIN CHEMERINSKY REGARDING APPLICABILITY OF PRIVILEGES AND IMMUNITIES CLAUSE TO DISTRICT OF COLUMBIA**

ERWIN CHEMERINSKY
University of California, Irvine School of Law
401 East Peltason Drive
Irvine, CA 92697-8000
Telephone: (949) 824-7722

# TABLE OF CONTENTS

TABLES OF AUTHORITIES ................................................................................................... iii

QUESTION PRESENTED .......................................................................................................... 1

STATEMENT OF INTEREST .................................................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................... 1

ARGUMENT ................................................................................................................................ 2

    I.   The Privileges and Immunities Clause of Article IV Does Not Apply to the District of Columbia. ................................................................................................... 2

        A.  Binding Precedent Dictates that the Privileges and Immunities Clause Does Not Apply to the District of Columbia. .................................................................. 2

        B.  The Plain Language and Purpose of the Privileges and Immunities Clause Makes Clear that It Applies Only to the States. ....................................................... 3

        C.  The History of Non-State Territories Demonstrates that the Privileges and Immunities Clause Is Not Directly Applicable to Non-States. ..................................... 5

    II.  The Principle in the Privileges and Immunities Clause Barring Discrimination Against Non-Residents Should Be Applied to the District of Columbia Through the Fifth Amendment. ........................................................................................ 8

CONCLUSION ........................................................................................................................... 10

## TABLES OF AUTHORITIES

**CASES**

*Barnard v. Thorstenn*,
  489 U.S. 546 (1989) ................................................................................................ 5, 6

*Biddinger v. Comm'r of Police of City of New York*,
  245 U.S. 128 (1917) ..................................................................................................... 5

*Bolling v. Sharpe*,
  347 U.S. 497 (1954) ..................................................................................................... 9

*Chase Manhattan Bank (Nat. Ass'n) v. S. Acres Dev. Co.*,
  434 U.S. 236 (1978) ................................................................................................. 5, 6

*Corfield v. Coryell*,
  6 F. Cas. 546 (C.C.E.D. Pa. 1823) .................................................................... 3, 9, 10

*Costin v. Corp. of Washington*,
  6 F. Cas. 612 (C.C.D.D.C. 1821) ............................................................................ 2, 3

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ..................................................................................................... 4

*Duehay v. Acacia Mut. Life Ins. Co.*,
  105 F.2d 768 (D.C. Cir. 1939) ..................................................................................... 2

*Frazier v. Heebe*,
  788 F.2d 1049 (5th Cir. 1986) ..................................................................................... 9

*Hawes v. Club Ecuestre El Comandante*,
  535 F.2d 140 (1st Cir. 1976) ....................................................................................... 2

*Hepburn & Dundas v. Ellzey*,
  6 U.S. 445 (1805) ......................................................................................................... 4

*In re Hennick*, 5 Mackey 489 (1887) ............................................................................... 4

*Metropolitan Life Insurance Co. v. Ward*,
  470 U.S. 869 (1985) ..................................................................................................... 9

*New York v. United States*,
  505 U.S. 144 (1992) ..................................................................................................... 7

*People of Puerto Rico v. Shell Co.*,
  302 U.S. 253 (1937) ..................................................................................................... 7

*Pollack v. Duff*,
  958 F.Supp.2d 280 (D.D.C. 2013) .................................................................................. 2

*Toomer v. Witsell*,
  334 U.S. 385 (1948) ......................................................................................................... 4

*Torres v. Com. of Puerto Rico*,
  442 U.S. 465 (1979) ......................................................................................................... 5

*Truax v. Corrigan*,
  257 U.S. 312 (1921) ................................................................................................... 9, 10

*U.S. v. Barnett*,
  330 F.2d 369 (5th Cir. 1963) ........................................................................................... 2

*U.S. v. Windsor*,
  133 S.Ct. 2675 (2013) ...................................................................................................... 9

*Wardlaw v. Pickett*,
  CIV. A. 89-1557 (OG), 1990 WL 209835 (D.D.C. Dec. 5, 1990) .................................. 2

**STATUTES**

18 U.S.C.A. § 3182 .................................................................................................................. 5

28 U.S.C.A. § 1738 .................................................................................................................. 5

48 U.S.C.A. § 1421b ............................................................................................................ 6, 7

48 U.S.C.A. § 1561 .............................................................................................................. 6, 7

48 U.S.C.A. § 737 ............................................................................................................... 6, 7

D.C. Code § 1-201 *et. seq.* ............................................................................................. 6, 7, 8

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. V ............................................................................................................. 9

U.S. Const. art. I, § 8, cl. 17 .................................................................................................... 4

U.S. Const. art. IV, § 1 ............................................................................................................ 5

U.S. Const. art. IV, § 2, cl. 1 ............................................................................................... 1, 3

U.S. Const. art. IV, § 2, cl. 2 ................................................................................................... 5

**QUESTION PRESENTED**

Whether the privileges and immunities clause of Article IV, section 2, clause 1, which bars states from discriminating against nonresidents, applies to the District of Columbia. *See* U.S. Const. art. IV, § 2, cl. 1.

**STATEMENT OF INTEREST**

*Amicus* Erwin Chemerinsky is the current and founding dean of University of California, Irvine School of Law. He has taught constitutional law at the DePaul College of Law (1980-83), University of Southern California Law School (1983-2004), Duke University School of Law (2004-2008), and University of California, Irvine School of Law (2008-present).  He writes extensively about constitutional law. He was appointed by this court to be *amicus curiae* and to file this brief. Doc. 55.

**SUMMARY OF ARGUMENT**

Binding precedent commands that the privileges and immunities clause limits only the states and not the District of Columbia. The purpose of the privileges and immunities clause, as well as the clauses surrounding it in Article IV of the Constitution, indicates that the clause was intended only to apply to state governments. Furthermore, when the privileges and immunities clause has been applied to non-states, it has been because of federal statutes explicitly making it applicable. The Home Rule Act does not do this and does not change the constitutional status of the District of Columbia.

But the privileges and immunities clause, of course, is not the only constitutional limit that could bar the District of Columbia from enacting discriminatory legislation. The due process clause of the Fifth Amendment, which protects individual liberties and includes a requirement for equal protection, is an important limit on the District of Columbia.

Thus, the due process clause of the Fifth Amendment, and not the privileges and

1

immunities clause, is the basis for invalidating the First Source Act.

## ARGUMENT

### I. The Privileges and Immunities Clause of Article IV Does Not Apply to the District of Columbia.

#### A. Binding Precedent Dictates that the Privileges and Immunities Clause Does Not Apply to the District of Columbia.

In 1939, the United States Court of Appeals for the District of Columbia Circuit held that the privileges and immunities clause is not applicable to the District of Columbia because it is only "a limitation upon the powers of the states." *Duehay v. Acacia Mut. Life Ins. Co.*, 105 F.2d 768, 775 (D.C. Cir. 1939). No case from the United States Supreme Court or the D.C. Circuit has overruled or even questioned this decision. It is binding authority on this court and decides the issue presented.

In fact, since *Duehay*, federal courts have reaffirmed and reiterated its holding that the privileges and immunities clause only applies to state governments and does not limit any federal activity. *See U.S. v. Barnett*, 330 F.2d 369 (5th Cir. 1963) (The privileges and immunities clause "is inapplicable to the District of Columbia.") (*quoting Duehay*, 105 F.2d at 775); *see also Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 145 (1st Cir. 1976) (The privileges and immunities clause "is a limitation on powers of states and in no way affects the powers of a federal district court."); *see also Wardlaw v. Pickett*, CIV. A. 89-1557 (OG), 1990 WL 209835 (D.D.C. Dec. 5, 1990) (The privileges and immunities clause applies only to the "Citizens of each State[,]" and thus does not apply to the District of Columbia.). In fact, just a year ago, the United States District Court for the District of Columbia again found that the privileges and immunities clause "applies only to the states and does not apply to the federal government." *Pollack v. Duff*, 958 F.Supp.2d 280, 289 (D.D.C. 2013).

Plaintiffs raise *Costin v. Corp. of Washington*, 6 F. Cas. 612 (C.C.D.D.C. 1821), to

support the application of the privileges and immunities clause to the District of Columbia. *See* Doc. 15 at 5.  But *Costin* does not hold that the privileges and immunities clause applies to the District of Columbia; rather, the court in *Costin* said that there was no violation of the privileges and immunities clause because there was no discrimination against out-of-staters, a prerequisite for a violation of the provision. *See* 6 F. Cas. at 614. In other words, the *Costin* court merely analogized the District of Columbia's action to state action to show that there was no violation of the privileges and immunities clause even if it applied. *Id*. at 613-14 ("A citizen of one state, coming into another state, can claim only those privileges and immunities which belong to citizens of the latter state, in like circumstances. But the present case is like that of a state legislating in regard to its own citizens . . . .").

This court is bound by seventy-five years of cases, most importantly from the D.C. Circuit, rejecting the application of the privileges and immunities clause to the District of Columbia.

> **B.     The Plain Language and Purpose of the Privileges and Immunities Clause Makes Clear that It Applies Only to the States.**

The privileges and immunities clause provides that "[t]he citizens of each *state* shall be entitled to all privileges and immunities of citizens in the several *states*." U.S. Const. art. IV, § 2, cl. 1 (emphasis added).  Courts have long struggled with defining the phrase "privileges and immunities" in this provision. *See Corfield v. Coryell*, 6 F. Cas. 546, 551 (C.C.E.D. Pa. 1823) ("The inquiry is, what are the privileges and immunities of citizens in the several states?").

Although the definition of "privileges and immunities" is inherently uncertain, the meaning of "state" in this context certainly is not. The word "state" in the Constitution, including in the privileges and immunities clause, refers to specific government entities: the thirteen states that existed when the Constitution was ratified and the fifty that exist today. *See Hepburn &*

3

*Dundas v. Ellzey*, 6 U.S. 445, 452 (1805) ("[M]embers of the American confederacy only are the states contemplated in the Constitution."); *see also District of Columbia v. Heller*, 554 U.S. 570, 597 (2008) ("[I]nstances of 'state' in the Constitution are typically accompanied by modifiers making clear that the reference is to the several States—'each state,' 'several states,' 'any state,' 'that state,' 'particular states,' 'one state,' 'no state.'").

Thus, the plain language is dispositive in determining the entities to which this clause applies. The privileges and immunities clause applies to the fifty states. The District of Columbia obviously is not a state.

This plain meaning of "state" in the privileges and immunities clause is supported by the purpose of the clause itself: "to help fuse into one Nation a collection *of independent, sovereign States*." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948) (emphasis added). The clause did not need to limit the District of Columbia because it was part of the federal government and governed by Congress. *See* U.S. Const. art. I, § 8, cl. 17. It was thought that Congress would not pass a law for the District of Columbia that would burden citizens of the several states because Congress is comprised of representatives of citizens of the states. *See In re Hennick*, 5 Mackey 489, 504 (1887) ("Can it be supposed for an instant that any of the States would have ceded to the Government of the United States a district for the seat of its government in which hostile legislation should be exercised towards the interests of the citizens of those States or the citizens of their sister States? We cannot suppose such a thing possible.").

Quite importantly, the privileges and immunities clause is found in Article IV of the Constitution, which by its terms and its purposes is about limiting what state governments may do. *Toomer*, 334 U.S. at 395. For example, the full faith and credit clause, in Article IV, § 1, promotes comity between the states by requiring that each state enforce the judgments of other

4

states. U.S. Const. art. IV, § 1. The extradition clause, U.S. Const. art. IV, § 2, cl. 2, promotes comity by requiring that states provide "a summary executive proceeding by the use of which the closely associated states of the Union could promptly aid one another in bringing to trial persons accused of crime." *Biddinger v. Comm'r of Police of City of New York*, 245 U.S. 128, 132 (1917). Unlike the privileges and immunities clause, both the full faith and credit clause and the extradition clause apply to the District of Columbia by explicit acts of Congress. *See* 28 U.S.C.A. § 1738 ("Such Acts, records and judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories . . . ."); *see also* 18 U.S.C.A. § 3182 ("[T]he executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand."). Because Congress has not enacted a statute applying the privileges and immunities clause to the District of Columbia, the clause applies only to the states.

      C.      **The History of Non-State Territories Demonstrates that the Privileges and Immunities Clause Is Not Directly Applicable to Non-States.**

The Supreme Court has held that territories of Puerto Rico, the Virgin Islands, and Guam are limited by the privileges and immunities clause even though they are not states. *See Torres v. Com. of Puerto Rico*, 442 U.S. 465, 473 (1979) ("Puerto Rico must accord to all citizens of the United States the privileges and immunities of its own residents."); *see also Barnard v. Thorstenn*, 489 U.S. 546, 559 (1989) (the privileges and immunities clause applies to the Virgin Islands); *Chase Manhattan Bank (Nat. Ass'n) v. S. Acres Dev. Co.*, 434 U.S. 236, 238 (1978) (the privileges and immunities clause applies to Guam). However, the privileges and immunities clause is not directly and necessarily applicable to these non-states; rather, the clause applies to them by acts of Congress. *See Torres*, 442 U.S. at 473 (the Organic Act of Puerto Rico explicitly requires the territory to grant all U.S. citizens the same privileges and immunities that it affords

5

its own residents); *see also Barnard*, 489 U.S. at 559 (the Organic Act of the Virgin Islands extended the privileges and immunities clause to that territory); *Chase Manhattan Bank*, 434 U.S. at 238 ("Congress "extend[ed] the Privileges and Immunities Clauses of the Federal Constitution to Guam . . . .").

The Organic Acts for Puerto Rico, the Virgin Islands, and Guam are explicit that the privileges and immunities clause applies to them. The Organic Act of Puerto Rico requires that "[t]he rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union." 48 U.S.C.A. § 737. In the Organic Act of the Virgin Islands, Congress specifically extended Article IV, section 2 to the territory. 48 U.S.C.A. § 1561. Similarly, Guam's Organic Act extends Article IV, section 2 to its bill of rights. 48 U.S.C.A. § 1421b.

Unlike the Organic Acts of Puerto Rico, the Virgin Islands, and Guam, the District of Columbia's Home Rule Act makes no mention of privileges and immunities or Article IV, section 2. *See* D.C. Code § 1-201 *et. seq.* Rather, it simply requires that the District of Columbia's legislative power be "consistent with the Constitution of the United States and the provisions of this charter subject to all the restrictions and limitations imposed upon the states by the 10th section of the 1st article . . . ." D.C. Code § 1-203.02.

Plaintiffs argue that Congress intended to apply the privileges and immunities clause to the District of Columbia by requiring its legislative power be "consistent with the Constitution." Doc. 15 at 6-7. But the general requirement that the District of Columbia obey the Constitution does not answer the question of whether the privileges and immunities clause applies to it. Furthermore, in the Home Rule Act, Congress expressly named Article I, section 10 as a constitutional limitation imposed upon the District of Columbia, but tellingly did not name the

6

privileges and immunities clause. *See* D.C. Code § 1-203.02.

Congress's decision not to explicitly extend the privileges and immunities clause to the District of Columbia in the Home Rule Act is strong evidence that it did not intend the clause to apply. This is particularly important in light of the fact that Congress explicitly mentioned the privileges and immunities clause in the Organic Acts of Puerto Rico, the Virgin Islands, and Guam. *See* 48 U.S.C.A. § 737; *see also* 48 U.S.C.A. § 1561; 48 U.S.C.A. § 1421b. Furthermore, the Home Rule Act does not change the District of Columbia's status as a non-state, and thus does not make the privileges and immunities clause applicable to the District of Columbia.

Nor is it persuasive to argue that had the Framers foreseen local rule under the Home Rule Act, they would have written the clause differently so as to include the District of Columbia. *See People of Puerto Rico v. Shell Co.*, 302 U.S. 253, 257 (1937) (in determining whether Puerto Rico is a "territory" under the Sherman Act, the Court did not look to whether Congress had Puerto Rico in mind when passing the act, but whether Congress "would have so varied its comprehensive language as to exclude it from the operation of the act" if it had foreseen Puerto Rico as a territorial addition to the U.S.).

The Home Rule Act grants the District of Columbia the power of local self-governance. D.C. Code § 1-201.02. Congress, though, expressly "reserves the right, at any time, to exercise its constitutional authority as legislature for the District." D.C. Code § 1-206.01. Congress therefore retained the authority to trump District legislation that abridges the rights of nonresidents. *See id.* This is fundamentally distinct from the nature of a state, which has sovereignty over all powers not conferred to Congress by the Constitution. *See New York v. United States*, 505 U.S. 144, 156 (1992) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the

States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress."). The privileges and immunities clause is thus a necessary limitation on states because Congress lacks the power to intervene in the realm of state sovereignty. On the other hand, the clause is unnecessary for the District of Columbia even after the Home Rule Act because Congress retains ultimate and complete authority over District governance. *See* D.C. Code § 1-206.01.

It is problematic that Congress has not acted to disallow the First Source Act. But this lack of congressional action is not evidence that the privileges and immunities clause applies to the District of Columbia any more than an affirmative act of Congress discriminating against non-District residents would be evidence that the privileges and immunities clause applies to the District of Columbia. Evidence that the privileges and immunities clause does not apply to the District of Columbia—binding precedent, the plain language and purpose of the clause, and illustrations of the clause's applicability to other non-states—is as equally persuasive after the Home Rule Act as it was before. The Home Rule Act did not fundamentally change the constitutional status of the District of Columbia.  Nor could it as a federal statute.

**II. The Principle in the Privileges and Immunities Clause Barring Discrimination Against Non-Residents Should Be Applied to the District of Columbia Through the Fifth Amendment.**

Although the privileges and immunities clause does not apply to the District of Columbia, it is not permissible for the District of Columbia to discriminate against nonresidents or for states to discriminate against District residents. *See* Doc. 15 at 1 ("For if the District is not deemed a 'state' under the Privileges and Immunities Clause, it follows that District residents cannot be 'citizens of a state' under that same Clause."). The due process clause of the Fifth Amendment requires "that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society." *Truax v. Corrigan*, 257 U.S. 312, 332

8

(1921); *see also* U.S. Const. Amend. V. One such rule that governs our society is that every United States citizen is entitled to common privileges and immunities that cannot be abridged because of residency. *See Corfield*, 6 F. Cas. at 551. Thus, the Fifth Amendment, by incorporating the individual rights encompassed in the privileges and immunities clause, bars the District of Columbia from discriminating against nonresidents.[1]

*Bolling v. Sharpe*, 347 U.S. 497 (1954), should guide the court's analysis in this case. In *Bolling*, black students challenged segregation of public schools in the District of Columbia. *See id.* at 498. The Court recognized that the Fourteenth Amendment does not apply to the District of Columbia, but held that "racial segregation in the public schools of the District of Columbia is a denial of the due process of law guaranteed by the Fifth Amendment to the Constitution." *Id.* at 500. Although the Fifth Amendment does not contain an equal protection clause, "discrimination may be so unjustifiable as to violate due process." *Id.* at 499; *see also U.S. v. Windsor*, 133 S.Ct. 2675, 2695 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws.").

In fact, the Supreme Court in other contexts has recognized that state laws discriminating against out-of-staters violate the constitutional requirement for equal protection. In *Metropolitan Life Insurance Co. v. Ward,* 470 U.S. 869 (1985), the Court found that a state tax that discriminated against out-of-state insurance companies violated the equal protection clause, even

---

[1] This case is distinct from *Frazier v. Heebe*, 788 F.2d 1049 (5th Cir. 1986), in which the plaintiff attempted to make the privileges and immunities clause apply to local rules of federal courts through the Fifth Amendment. The court emphasized that there was not discrimination against out-of-staters.  The attorney plaintiff, unlike the non-resident plaintiffs here, was "a citizen of the relevant political community" rather than "a powerless outsider in need of the protection of the privileges and immunities clause . . . ." *Id.*

though a federal law permitted such discriminatory taxes, and thus there was not a violation of the dormant commerce clause.

As argued above, the purpose of the privileges and immunities clause was comity, not the protection of individual rights. Yet the clause necessarily recognizes that individual citizens have certain privileges and immunities, "which are, in their nature, fundamental; which belong, of right, to the citizens of all free governments." *Corfield*, 6 F. Cas. at 551. These fundamental privileges and immunities fall under the Fifth Amendment's "protection of the general rules which govern our society." *Truax*, 257 U.S. at 322. When the District of Columbia abridges these privileges and immunities, it strips nonresidents of a fundamental right to access their privileges and immunities. The First Source Act is unconstitutional, then, not because it violates the privileges and immunities clause of Article IV, but because it violates the due process clause of the Fifth Amendment.

## CONCLUSION

The privileges and immunities clause of Article IV, section 2 does not apply to the District of Columbia. However, the individual right to the privileges and immunities recognized within it is protected by the due process clause of the Fifth Amendment, which does apply to the District of Columbia.

Dated: October 16, 2014                                  Respectfully Submitted,

                                                         /s/ Erwin Chemerinsky
                                                         ERWIN CHEMERINSKY
                                                         University of California, Irvine School of Law
                                                         401 East Peltason Drive
                                                         Irvine, CA 92697-8000
                                                         Telephone: (949) 824-7722

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2014, I electronically filed the *Amicus Curiae* Brief on the ECM-ECF System.

I certify that all participants in the case are registered ECM-ECF users and that service will be accomplished by the ECM-ECF System.

/s/ Erwin Chemerinsky
ERWIN CHEMERINSKY
University of California, Irvine School of Law
401 East Peltason Drive
Irvine, CA 92697-8000
Telephone: (949) 824-7722