UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

METROPOLITAN WASHINGTON CHAPTER, ASSOCIATED BUILDERS AND CONTRACTORS, INC., *et al*.,

Plaintiffs,

v.

DISTRICT OF COLUMBIA,

Defendant.

Civil Action No. 12-CV-00853 (EGS)

**DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING INCORPORATION**

Pursuant to the Minute Order of November 3, 2014, defendant the District of Columbia ("the District") here provides its supplemental brief regarding incorporation.

The Court directs the parties (and Amicus) to address whether the Privileges and Immunities Clause is incorporated against the District by the Fifth Amendment.

Respectfully, as discussed by the District in its previous brief (Doc. No. 37), the Privileges and Immunities Clause cannot be applied wholesale to the District "through" the Fifth Amendment. As to the other specific issues raised in the Minute Order—plaintiffs did not raise this incorporation argument in any of their pleadings, and the Court has not ruled on the issue. The Court *has*, however, already determined that the First Source Act survives Equal Protection and Due Process challenge. Even if the Privileges and Immunities Clause was incorporated into the Fifth Amendment, this Court has already determined that the First Source Act passes judicial scrutiny. *See Metropolitan Wash. Ch., Associated Builders & Contractors, Inc. v. District of Columbia*, 2014 WL 3400569 (D.D.C. July 14, 2014). Accordingly, no further review on the Court's part is necessary or justified. *Cf. United States v. Wyche*, 741 F.3d 1284, n.13 (D.C. Cir.

2014) ("The law-of-the-case doctrine provides that 'the *same issue* presented a second time in the *same case* in the *same court* should lead to the *same result*.'") (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (*en banc*)).

## **<u>Argument</u>**

### I. THE PRIVILEGES AND IMMUNITY CLAUSE IS NOT INCORPORATED AGAINST THE DISTRICT BY THE FIFTH AMENDMENT.

The Privileges and Immunities Clause is not incorporated against the District by the Fifth Amendment, because the Due Process Clause does not incorporate all of "the general rules which govern society[,]" *Truax v. Corrigan*, 257 U.S. 312, 332 (1921). *See also* Doc. No. 37 at 5–6. Moreover, the Fifth Amendment does not prohibit all discrimination of any kind in favor of residents. *Bolling v. Sharpe*, 347 U.S. 497 (1954) itself explicitly noted that equal protection and due process are not "always interchangeable phrases" and, more importantly, applied searching scrutiny to the fundamentally suspect racial classification at issue there. No such invidious discrimination is implicated in the instant matter.

Decades of case law confirm that the discrimination prohibited by the Constitution must be "so unjustifiable" as to violate substantive due process. Indeed, the Privileges and Immunities Clause cases demonstrate that not all economic protection and promotion of residents is impermissible. The justifications underlying the First Source Act are reasonably related to the District's legitimate purposes of improving its economy and assisting its unemployed residents.

Additionally, the Supreme Court has repeatedly cautioned against recognizing substantive due process protections that duplicate other, express constitutional provisions, as Amicus (and now plaintiffs) urge.

Amicus contends that the "fundamental" rights encompassed by the Privileges and Immunities Clause cannot be abridged on the basis of State residency. *Id*. at 9. Amicus then argues that the Privileges and Immunities Clause is applicable to the District though the Due Process Clause of the Fifth Amendment, citing *Corfield v. Coryell,* 6 F. Cas. 546, 551 (C.C.E.D. Pa. 1823) and *Truax*, and that that fact prohibits the District from discriminating here. *See* Amicus Br. at 9–10. The District, in its earlier brief, distinguished *Truax* and rejected Amicus's categorical discrimination test (which was, as noted, set forth with no applicable standard of scrutiny).

Similarly, *Corfield* can be distinguished. Even Amicus, while explicitly acknowledging that the purpose of the Privileges and Immunities Clause was comity "and not the protection of individual rights[,]" *id*. at 10, nonetheless asserts that very point:

> Yet the clause necessarily recognizes that individual citizens have certain privileges and immunities, "which are, in their nature, fundamental; which belong, of right, to the citizens of all free governments." *Corfield*, 6 F. Cas. at 551. [W]hen the District of Columbia abridges these privileges and immunities, it strips nonresidents of a fundamental right to access their privileges and immunities.

*Id*.

But *Corfield* cannot be read that broadly. In addition to the limiting language in that case itself,[1] other cases, both before and after that one, suggest a more limited scope of rights encompassed within the Privileges and Immunities Clause. In *Campbell v. Morris*, 3 H. & Mc.H.

---

[1] *See* 6 F.Cas. at 552 (privileges and immunities are "subject nevertheless to such restraints as the government may justly prescribe for the general good of the whole."); *id*. ("But we cannot accede to the proposition which was insisted on by the counsel, that, under this provision of the constitution, the citizens of the several states are permitted to participate in all the rights which belong exclusively to the citizens of any other particular state, merely upon the ground that they are enjoyed by those citizens[.]").

535 (Md. Gen. 1797), Judge Samuel Chase (soon to be elevated to the Supreme Court), writing for the court, noted that that Clause was designed to give

> [T]he rights of citizenship, and not to put all the citizens of the United States upon a level; consequently, the injury, as to the effect of a law of any state, will not be whether it makes a discrimination between citizens of the several states; but whether it infringes upon any civil right, which a man as a member of a civil society must enjoy.

*Id*. at 554.

Similarly, Chief Justice Parker of the Massachusetts Supreme Judicial Court, writing four years after *Corfield*, noted that the rights encompassed by the Clause are "qualified and not absolute," and the Clause itself "is necessarily limited and qualified[.]" *Abbot v. Bayley*, 23 Mass. 89, 92 (Mass. 1827). *Corfield* cannot expand the rights encompassed under the Privileges and Immunities Clause to *any* constitutional right also encompassed by the concepts of Due Process and Equal Protection.

## II. THE RIGHT AT ISSUE HERE IS NOT "DEEPLY ROOTED."

This Court asks "whether the individual rights encompassed in the Privileges and Immunities Clause are 'fundamental to our scheme of ordered liberty.'" Minute Order (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010)). In other words, whether those rights are "'deeply rooted in this Nation's history and tradition.'" *McDonald*, 561 U.S. at 767 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

In *McDonald*, the Court examined the concept of incorporation, specifically whether the Second Amendment right to keep and bear arms was fundamental and thus fully applicable to the States by virtue of the Fourteenth Amendment. *See id*. at 778. The Court delved into the history of the Fourteenth Amendment, adopted in the aftermath of the Civil War, which provides, in part, that "No State shall make or enforce any law which shall abridge the privileges or immunities of

citizens of the United States[.]" The Court noted that the first Supreme Court case to interpret the Amendment's "Privileges or Immunities Clause" found that that provision protected "only those rights 'which owe their existence to the Federal government, its National character, its Constitution or its laws.'" *Id*. at 754 (quoting *The Slaughter-House Cases*, 16 Wall 36, 79 (1873)). Finding this analysis restrictive, the Court reiterated the finding from *Slaughter-House*, that is, that determining which rights are protected against State infringement is to be resolved by engaging in a due-process analysis. *Id*. at 758 (*plurality op.*). To conclude whether the rights protected by the Second Amendment were deeply rooted, the Court followed the exhaustive historical analysis of those rights conducted by the Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and found that "the right to keep and bear arms [was] among those fundamental rights necessary to our system of ordered liberty. *McDonald*, 561 U.S. at 778.

The *McDonald* decision also outlined the history of the concept of incorporation, as the Supreme Court has, over the last century-and-a-half, repeatedly used the Due Process Clause to incorporate against the States almost every one of the rights enumerated in the Bill of Rights. However, the Court did not address whether rights protected by the Privileged and Immunities clause of Article IV are incorporated in the concept of Due Process. *See McDonald; Peterson v. Martinez*, 707 F.3d 1197, n.6 (10th Cir. 2013).[2]

---

[2] Justice Frankfurter, in an article written after he had retired, attempted to clarify the meaning of "incorporation" in the context of these cases, and how it should only be applied to "fundamental" rights:

> These earlier cases, then, are certainly not saying that the freedoms of the First Amendment are also protected against state infringement by the Fourteenth because by the mechanical device of incorporation of the First into the Fourteenth they were automatically infused into the Fourteenth before the ink had dried. [I]nstead, the cases are reasoning that the Fourteenth prevents state intrusion upon "fundamental personal rights and liberties," that among those rights and liberties

Justice Stevens, in his dissent in *McDonald*, cautioned against an uncritical application of due-process analysis, and its "constitutional cousin, 'equal protection' analysis[,]" 561 U.S. at n.23, to determine the rights included in the scope of the term "liberty." *Id*. at 878. Further, he criticized "a standard (deeply rootedness) that has never been defined." *Id*. at 908.[3] "The Framers did not express a clear understanding of the term to guide us, and the now-repudiated *Lochner* [*v. New York*, 198 U.S. 45 (1905)] line of cases attests to the dangers of judicial overconfidence in using substantive due process to advance a broad theory of the right or the good." *McDonald*, 561 U.S. at 878 (Stevens, J., dissenting).[4] As Justice Stevens noted, in *Glucksberg*, the Supreme

---

> are free speech, press, etc., which the First Amendment explicitly protects against federal encroachment, and that, because they are fundamental (not because they are contained in the First Amendment), they fall within the scope of the prohibitions of the Fourteenth. This is precisely the line of thought displayed in all those cases, *infra*, that reject the idea of applying or "incorporating" some other provision of the Bill of Rights through the Fourteenth to the States. That is, since the Fourteenth encompasses only "fundamental" rights, and those considered (*e.g.*, grand jury indictment, common-law juries in civil cases) are not "fundamental," they make no requirements upon the States.

Felix Frankfurter, *Memorandum on "Incorporation" of the Bill of Rights into the Due Process Clause of the Fourteenth Amendment*, 78 HARV. L. REV. 746, 749 (Feb. 1965).

[3] These complaints are not new. *See, e.g., Malloy v. Hogan*, 378 U.S. 1 (1964):

> I accept and agree with the proposition that continuing re-examination of the constitutional conception of Fourteenth Amendment 'due process' of law is required, and that development of the community's sense of justice may in time lead to expansion of the protection which due process affords. [I] do not understand, however, how this process of re-examination, which must refer always to the guiding standard of due process of law, including, of course, reference to the particular guarantees of the Bill of Rights, can be short-circuited by the simple device of incorporating into due process, without critical examination, the whole body of law which surrounds a specific prohibition directed against the Federal Government.

*Id*. at 15–16 (Harlan, J., dissenting).

[4] Those cases too-rigorously scrutinized economic legislation "under the guise of interpreting the Due Process Clause." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 347 (2007). Since that line of cases was repudiated, the

Court expressly disapproved of recognizing new fundamental rights based solely upon abstract concepts of "liberty." 521 U.S. at 725.

While the "pursuit of a common calling" has been described as "fundamental," the ability to pursue a particular line of employment is a fundamental right "only in the limited context of the privileges and immunities clause[.]" *Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.2d 929, 932 (10th Cir. 1989) (citing *United Building & Construction Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 219 (1984) ("*Camden*") and *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313 (1976)).

> The Court, however, treats *equal protection clause* cases in which a party claims a fundamental right to pursue a particular line of employment *differently* from cases in which the right is asserted under the privileges and immunities clause. In the equal protection clause context, the Supreme Court has *never* recognized a fundamental right to pursue a particular line of employment.

*Oklahoma Educ. Ass'n*, 889 F.2d at 932.[5] *Cf. McDonald*, 561 U.S. at 868 (Stevens, J., dissenting) ("[T]he 'incorporation' of a provision of the Bill of Rights into the Fourteenth Amendment does not, in itself, mean the provision must have precisely the same meaning in both contexts."). As with

---

Supreme Court has repeatedly held that such legislation must be sustained unless it is arbitrary or irrational, *i.e.*, unless it fails to pass rational-basis review. *See, e.g.*, *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993); *Reagan v. Taxation With Representation*, 461 U.S. 540, 547 (1983); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). Since *Lochner*, "not one law has been declared unconstitutional by the Supreme Court as violating economic substantive due process." *Wolverine Fireworks Display v. Towne*, 2012 WL 2063608, *18 (E.D. Mich. Jun. 7, 2012) (quoting Erwin Chemerinsky, *Constitutional Law: Principles and Policies* 628 (3d ed. 2006)).

[5] *Cf. Oregon v. Mitchell*, 400 U.S. 112, 265 (1970) (Brennan, J., dissenting) ("[T]he Privileges and Immunities Clause of the original Constitution served a peculiar function; it did not create absolute rights but only placed a noncitizen of a State 'upon a perfect equality with its own citizens' as to those fundamental rights already created by state law. The Privileges and Immunities Clause, that is, was a sort of equal protection clause adopted for the benefit of out-of-state citizens[.]") (citing, *inter alia*, *Paul v. Virginia*, 8 Wall. 168, 180 (1869) (Privileges and Immunities Clause secured to citizens "in other States the equal protection of their laws.")).

Equal Protection, there is no basis to incorporate the pursuit of a common calling into the fundamental rights protected by Due Process.[6]

The common calling "right" is further circumscribed by *Camden*, where the Supreme Court acknowledged that "[p]ublic employment . . . is qualitatively different from employment in the private sector." 465 U.S. at 219; *see also White v. Massachusetts Council of Const. Employers, Inc.*, 460 U.S. 204, n.7 (1983) (holding that "for purposes of the Commerce Clause everyone employed on a city public works project is, 'in a substantial if informal sense, 'working for the city.'")). Where, as here, the employment is directly or indirectly subsidized by the government, no fundamental rights are implicated. *Camden*, 465 U.S. at 219 ("We have held that there is no fundamental right to government employment for purposes of the Equal Protection Clause.") (citing *Murgia*, 427 U.S. at 313).

Indeed, "[n]either the Supreme Court nor this court has ever recognized an interest in public employment as fundamental. [T]he right that plaintiffs allege is thus not one 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.' Accordingly, rational basis review applies[.]" *AFGE, AFL-CIO v. United States*, 330 F.3d 513, 523 (D.C. Cir. 2003) (quoting *Reno v. Flores*, 507 U.S. 292, 303 (1993) (in turn quoting *United States v. Salerno*, 481 U.S. 739, 751 (1987)). *See also McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) ("[E]mployment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection."). "Statutes create many classifications which do not deny

[6] Neither plaintiffs nor Amicus have even attempted to conduct the type of exhaustive analysis demonstrated by the Supreme Court in *McDonald* to support the proposition that pursuit of a common calling is so deeply rooted in the nation's history and tradition that any protection under the Privileges and Immunities Clause must be incorporated against the District by the Fifth Amendment. *Cf. Slaughter-House Cases*, 16 Wall at 80–81 (rejecting plaintiff-butchers' contention that their "right" to pursue their profession was protected by the Privileges or Immunities Clause of the Fourteenth Amendment.).

equal protection; it is only 'invidious discrimination' which offends the Constitution." *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963) (citing *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488–89 (1955)).

Accordingly, the right to public employment, as alleged here by plaintiffs, cannot pass the first step of a fundamental-rights analysis as it is not explicitly or implicitly guaranteed by the Constitution. *Gonzalez v. United States*, 553 U.S. 242, 252 (Scalia, J., concurring) (noting that "specification in the Constitution is a necessary, but not sufficient, condition for 'fundamental' status."); *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973) (for purposes of the Equal Protection Clause, a fundamental right is one "explicitly or implicitly guaranteed by the Constitution.").

This analysis demonstrates that the Court should not use Due Process to validate plaintiffs' (or Amicus's) broad theory of the "rights" protected by the Privileges and Immunities Clause.

In addition, although Amicus failed previously to specify the level of scrutiny that the First Source Act must undergo, he cannot reasonably deny that rational basis is the appropriate level to employ in this matter, as the District explained in its previous brief. *See also* Erwin Chemerinsky, *The Supreme Court and the Fourteenth Amendment: The Unfulfilled Promise,* 25 LOY. L.A. L. REV. 1143 (1992) ("Relatively few types of discrimination receive heightened scrutiny. Under current law only discrimination based on race, gender, alienage and legitimacy receive more than the rational basis test.") (footnote omitted).

The First Source Act is traditional economic legislation enacted under the District's police powers, and is therefore subject to rational-basis review. The Court has already upheld the law on that basis against plaintiffs' equal-protection and due-process challenges. Even assuming

more rigorous scrutiny is appropriate, the most rigorous level that could be appropriate is intermediate scrutiny, which the First Source Act comfortably withstands, based on the ample evidence already in the record.

The well-documented "structural imbalance" in the District economy—resulting largely from the District's inability to tax the income of the 70% of District jobs held by commuters—together with the fact that it is expending its own funds, demonstrates that the First Source Act bears a substantial relationship to the "peculiar evil" addressed therein.

Because only the Privileges and Immunities Clause claim remains, and because that Clause does not apply to the District, the Court should grant the District's pending motion.

## Conclusion

The District is entitled to judgment on the pleadings on the remaining counts.

Dated: November 24, 2014

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General for the District of Columbia

ELLEN EFROS
Deputy Attorney General
Public Interest Division

/s/ Grace Graham
GRACE GRAHAM, D.C. Bar No. 472878
Chief, Equity Section
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
Telephone: (202) 442-9784
Facsimile: (202) 741-8892
Email: grace.graham@dc.gov

/s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Senior Assistant Attorney General
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
Email: andrew.saindon@dc.gov