UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METROPOLITAN WASHINGTON CHAPTER, ASSOCIATED BUILDERS AND CONTRACTORS, INC., *et al.*, <br><br>   Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br>   Defendant. | No. 12-CV-00853 (EGS) |

**SUPPLEMENTAL BRIEF OF *AMICUS CURIAE* REGARDING INCORPORATION**

Despite the passage of the Home Rule Act and its creation of the District Council to pass local legislation governing the District of Columbia, the privileges and immunities clause does not directly apply to the District. However, the individual right to be free from discrimination on the basis of residency is fundamental to our scheme of ordered liberty, and is thus incorporated within the due process clause of the Fifth Amendment. Like analysis under the privileges and immunities clause, the abridgment of privileges and immunities protected by the Fifth Amendment must withstand heightened judicial scrutiny.

ARGUMENT

I.   The Privileges and Immunities Clause Does Not Directly Limit District Council Legislation.

Plaintiffs rely on the distinction between congressional legislation governing the District and District Council legislation after the Home Rule Act to argue that the privileges and immunities clause now directly applies to the District. *See* Dock. 36 at 2. Yet the applicability of the privileges and immunities clause does not depend on whether or not Congress is the governing entity. Rather, the privileges and immunities clause does not directly apply to the

1

District because by its terms in the Constitution and under controlling precedent of this Circuit it is a constitutional provision that only directly applies to "states." *See* Dock. 35 at 4. The District of Columbia is not a "state."

*Duehay v. Acacia Mut. Life Ins. Co.*, 105 F.2d 768, 775 (D.C. Cir. 1939), held that the privileges and immunities clause "is a limitation upon the powers of the states and in no way affects the powers of Congress over . . . the District of Columbia." Though the immediate governance of the District has shifted to the District Council, the District is obviously still not a state and therefore the privileges and immunities clause does not limit District Council laws. In addition to the textual limitation of the privileges and immunities clause to states, it also does not apply because unlike state governments, the District Council does not have autonomy over municipal matters. Congress can overrule District Council law at any time, including those that are discriminatory against those from outside the District.

Although District governance has changed, the holding in *Duehay* is directly applicable to the case at hand. In the clearest words, it binds this court to a conclusion supported by the plain language of the privileges and immunities clause and the history of its applicability in non-state territories: "Section 2 of Article IV is inapplicable to the District of Columbia." *Duehay*, 105 F.2d at 775.

Plaintiffs again raise concerns that states can discriminate against District citizens based on their residency with impunity if the District is not a "state" within the meaning of the privileges and immunities clause. *See* Dock. 36 at 7. Plaintiffs' concerns are well founded. However unlikely an occurrence, a state law discriminating against only District citizens based on their residency clearly would be unjust. Yet the privileges and immunities clause of Article IV is not necessary to protect against this injustice. A state law discriminating against District

residents would be impermissible under the Fourteenth Amendment, which forbids any state from denying equal protection and which protects fundamental personal liberties under its due process clause.

## II. The Individual Rights Inherent in the Privileges and Immunities Clause Are Fundamental Rights Protected by the Fifth Amendment's Due Process Clause.

Although Plaintiffs cannot use the privileges and immunities clause to directly challenge the District's First Source Act, Plaintiffs can challenge the Act as a violation of the right to be free of discrimination on the basis of residency. Because this right is fundamental, it is protected under the Fifth Amendment, which "applies to the federal government and agencies set up by Congress for the government of [a] territory."

Like the due process clause of the Fourteenth Amendment, the Fifth Amendment's due process clause "unquestionably provides substantive protections for certain unenumerated fundamental rights." *Raich v. Gonzales*, 500 F.3d 850, 862 (9th Cir. 2007) (*citing Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Rather than protecting only express rights, due process "is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints." *Poe v. Ullman*, 367 U.S. 497, 543, (1961) (Harlan, J., dissenting); *see also Planned Parenthood of Se. Pennsylvania v. Casey,* 505 U.S. 833, 847 (1992) (citing Justice Harlan's dissenting opinion in *Poe* to assert that due process is a substantive, as well as procedural, safeguard against arbitrary legislation).

There is no specific formula that courts use to determine which individual liberties constitute fundamental rights protected by substantive due process; instead, such determination is left to "reasoned judgment" by the courts. *Id.* at 849 (*citing Poe*, 367 U.S. at 542). Courts must use great restraint when expanding substantive due process, so that the liberty protected is not "subtly transformed into the policy preferences" of judges who, "[b]y extending constitutional

3

protection to an asserted right or liberty interest . . . place the matter outside the arena of public debate and legislative action." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citation omitted).  In the interest of restraint, courts frequently use a two-step method of analysis to decide what is protected under substantive due process: first, substantive due process protects "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition," and second, substantive due process cases must present "a careful description of the asserted fundamental liberty interest." *Id.* at 720-21 (quotations omitted).

It is useful to first address the latter feature in the *Glucksberg* method of analysis by describing the specific liberty interest at hand. *Id.* at 720. In the present case, the specific liberty interest is the fundamental right to challenge laws that discriminate on the basis of residency. Once a polity within the United States grants a right to its residents, non-residents have a fundamental right to challenge the denial of the same right to them. *See Toomer v. Witsell*, 334 U.S. 385, 395 ("a citizen of State A who ventures into State B [should have] the same privileges which the citizens of State B enjoy."). All individuals are equally entitled to available rights wherever they are within the United States, regardless of residency. In other words, with the unity of our nation came the expectation -- bolstered by the privileges and immunities clause and the dormant commerce clause -- that access to individual rights depends not on state citizenship, but on United States citizenship. Access to the same rights everywhere in the United States, regardless of residency, is not absolute, as some discriminatory laws survive strict scrutiny.  But the fundamental individual right to be from discrimination on this basis, which is embodied in the privileges and immunities clause, also should be seen as protected under the due process clause of the Fifth Amendment.

Next, it is beyond question that the individual liberty inherent in the privileges and

immunities clause is deeply rooted in the history and tradition of the United States. As discussed in the initial amicus brief, the driving force behind the inclusion of the privileges and immunities clause in Article IV was comity and national unity. From the moment the Constitution was ratified, the clause necessarily implicated an individual liberty interest by expressly entitling each state citizen to "all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. This individual liberty is not merely theoretical; rather, U.S. citizens have challenged government laws that discriminate on the basis of residency for two centuries. *See Corfield v. Coryell*, 6 F. Cas. 546, 551 (C.C.E.D. Pa. 1823).

In the present case, this court is confronted with "a consistent and almost universal tradition that has long [affirmed] the asserted right" to freedom from discrimination based on state residency. *Glucksberg*, 521 U.S. at 723. Just as with the incorporation of the Bill of Rights under the Fourteenth Amendment, it is not the privileges and immunities clause itself that is incorporated into the Fifth Amendment. Rather, the Fifth Amendment's due process clause incorporates the personal liberty *underlying* the privileges and immunities clause that is fundamental to our scheme of ordered liberty. *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 760 (2010). Here, Plaintiffs cannot challenge the First Source Act for discriminating against them on the basis of their residency outside of the District using the privileges and immunities clause because the District is not a state and is thus not limited by the clause. But the right to challenge such a discriminatory law is fundamental, and can thus be challenged through the due process clause of the Fifth Amendment.

### III. Heightened Scrutiny Is Proper When Analyzing Violations of Privileges and Immunities under the Fifth Amendment.

Because the individual right protected in this case under the Fifth Amendment is the same as the individual right enshrined in the privileges and immunities clause, the level of scrutiny that

the Court has applied to the privileges and immunities clause logically applies here, as Plaintiffs aptly address in their supplemental brief. *See* Dock. 39 at 4-5. Thus, in order to withstand judicial scrutiny for its discrimination against non-residents, "there [must be] a substantial reason for the difference in treatment" in the First Source Act, and "the discrimination practiced against nonresidents [must] bear a substantial relationship to the State's objective." *Barnard v. Thorstenn*, 489 U.S. 546, 552 (1989) (*citing Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 284 (1985)).

## CONCLUSION

The individual right to be free of discrimination on the basis of residency---inherent in the privileges and immunities clause---is fundamental, and is therefore incorporated under the Fifth Amendment. For that reason, the *amicus* suggests that this court analyze the First Source Act with heightened scrutiny, as it would a state law violating the privileges and immunities clause.

Dated:  January 12, 2015                                       Respectfully Submitted,


/s/ Erwin Chemerinsky
ERWIN CHEMERINSKY
University of California, Irvine School of Law
401 East Peltason Drive
Irvine, CA 92697-8000
Telephone: (949) 824-7722

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2015, I electronically filed the *Amicus Curiae* Supplemental Brief on the ECM-ECF System.

I certify that all participants in the case are registered ECM-ECF users and that service will be accomplished by the ECM-ECF System.

/s/ Erwin Chemerinsky
ERWIN CHEMERINSKY
University of California, Irvine School of Law
401 East Peltason Drive
Irvine, CA 92697-8000
Telephone: (949) 824-7722