UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| METROPOLITAN WASHINGTON CHAPTER, ASSOCIATED BUILDERS AND CONTRACTORS, INC., *et al.*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 12-CV-00853 (EGS) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S REPLY BRIEF

Pursuant to the Minute Orders of November 3, 2014 and December 30, 2014, defendant the District of Columbia ("the District") here provides its reply brief regarding incorporation with respect to the Privileges and Immunities Clause.

The District, in its previous brief, argued that the Privileges and Immunities Clause is not incorporated against the District by the Fifth Amendment, because the Fifth Amendment does not prohibit all discrimination of any kind in favor of residents, only *invidious* discrimination that is "so unjustifiable" as to violate substantive due process.[1] Moreover, the right to government public-works contracts (or tax breaks) is not "deeply rooted" in our history and tradition.

---

[1] Amicus correctly notes that "Courts must use great restraint when expanding substantive due process[.]" Doc. No. 41 at 3. *See also, e.g., Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006) (The Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended.") (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). This Court has already found that plaintiffs' allegations failed to meet the very high burden set by case law to state a claim for the violation of substantive due process. *Metropolitan Wash. Ch., Associated Builders & Contractors, Inc. v.*

Amicus responds to none of these arguments directly, nor does amicus address how District law at issue creates *invidious discrimination*, rather merely reiterating that substantive due process protects "certain unenumerated fundamental rights[,]" including the liberties encompassed by the Privileges and Immunities Clause. Doc. No. 41 at 3 (quoting *Raich v. Gonzalez*, 500 F.3d 850, 862 (9th Cir. 2007)). Amicus asserts that the "individual liberty" inherent in the Privileges and Immunities Claus is "deeply rooted" in our history, but, oddly, defines that liberty as "the fundamental right to challenge laws that discriminate on the basis of residency." *Id*. at 4. *That* purported right obviously has not been infringed here, as evidenced by the gallons of ink spilled in the ongoing litigation. Amicus also argues that "heightened scrutiny" is appropriate when examining discrimination against non-residents, but does not specify what type of scrutiny is appropriate.

Amicus's arguments all fail, are contrary to decisional precedent, and the few cases he cites fully support the District.

Plaintiffs similarly contend that due process protects the "individual rights" encompassed within the Privileges and Immunities Clause, and that the Court should use "strict scrutiny" to analyze the First Source Act. *See* Doc. No. 39 at 2–4. Plaintiffs argue that the "individual right" at issue here is "the right to pursue a common calling in another part of the United States[.]" *Id*. at 3.[2] Both Amicus and plaintiffs are incorrect, however. The "right" at issue here—defined at the

---

*District of Columbia*, 2014 WL 3400569, *21 (D.D.C. July 14, 2014). Neither Amicus nor plaintiffs present any persuasive reason to revisit that holding.

[2] Plaintiffs also suggest that the Court "revisit" its previous holdings dismissing their due-process claims. Doc. No. 39 at 7. But plaintiffs neither cite nor meet the difficult standard for such reconsideration. Reconsideration per Rule 54(b) may be justified when (1) "there was a patent misunderstanding of the parties," (2) "where a decision was made that exceeded the issues presented," (3) "where a court failed to consider controlling law," or (4)

proper level of specificity as discussed below—is not fundamental, and hence is not entitled to anything more than rational-basis review.

### Argument

I.   **THE RIGHT ALLEGED MUST BE NARROWLY DESCRIBED.**

As the Ninth Circuit indicated in *Raich*, substantive due process protects certain unenumerated fundamental rights. 500 F.3d at 862 (citing, *inter alia*, *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). To conduct such an analysis, a court first must determine whether the asserted right is "deeply rooted" in this country's history and tradition. *Glucksberg*, 521 U.S. at 720–21. Then, there must be "a 'careful description' of the asserted fundamental liberty interest." *Id. See also* Doc. No. 41 at 4.

The Ninth Circuit's decision in *Raich* helpfully explains the Supreme Court's substantive due process case law, and how it should guide courts analyzing alleged deprivations of "fundamental" rights. "*Glucksberg* instructs courts to adopt a narrow definition of the interest at stake." *Raich*, 500 F.3d at 863 (citing also *Reno v. Flores*, 507 U.S. 292, 302 (1993) (asserted liberty interest must be construed narrowly to avoid unintended consequences).

Here, adhering to *Glucksberg's* instruction, defining the asserted interest as "the right to pursue a common calling" is too broad. Rather, the liberty interest at stake must be narrowed to the right to work on government public-works contracts. "[W]e have a tradition of carefully formulating the interest at stake in substantive-due-process cases." *Glucksberg*, 521 U.S. at 723. *See also Chavez v. Martinez*, 538 U.S. 760, 775–76 (2003) ("*Glucksberg* requires a 'careful

---

"where a significant change in the law occurred after the decision was rendered." *Zalduondo v. Aetna Life Ins. Co.*, 845 F.Supp.2d 146, 157 (D.D.C. 2012) (quoting *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F.Supp.2d 82, 85 (D.D.C. 2009)).

description' of the asserted fundamental liberty interest for the purposes of substantive due process analysis; vague generalities . . . will not suffice.") (citations omitted).

As the District has shown, the right to government employment is *not* fundamental. "Neither the Supreme Court nor this court has ever recognized an interest in public employment as fundamental. [T]he right that plaintiffs allege is thus not one 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.' Accordingly, rational basis review applies[.]" *AFGE, AFL-CIO v. United States*, 330 F.3d 513, 523 (D.C. Cir. 2003) (quoting *Reno v. Flores*, 507 U.S. 292, 303 (1993) (in turn quoting *United States v. Salerno*, 481 U.S. 739, 751 (1987)). *See also United Bldg. & Const. Trades Council of Camden County & Vicinity v. Mayor & Council of City of Camden*, 465 U.S. 208, 219 (1984) ("[T]here is no fundamental right to government employment[.]"). "[N]o citizen has a 'right,' in the sense of a legal right, to do business with the government." *Gonzalez v. Freeman*, 334 F.2d 570, 574 (D.C. Cir. 1964) (citing *Perkins v. Lukens Steel Co.*, 310 U.S. 113 (1940)).

In *Glucksberg*, the plaintiff brought a substantive due process challenge to Washington State's prohibition on assisted suicide. The Supreme Court rejected the too-broad definitions that what was at issue there was "the right to die" or "the right to choose a humane, dignified death," and instead held that the narrow issue was "whether the 'liberty' specially protected by the Due Process Clause includes a right to commit suicide which itself includes a right to assistance in doing so." 521 U.S. at 722–23.[3] Similarly, the Court in *Flores*, which involved the rights of

---

[3] In addition to the specific freedoms protected by the Bill of Rights, the Due Process Clause protects certain unenumerated "liberty" interests, including the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion. *Glucksberg*, 521 U.S. at 720 (citing cases). "These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by

unaccompanied alien juveniles in the custody of immigration authorities, rejected "freedom from physical restraint" as a too-broad statement of the right at issue. *Flores*, 507 U.S. at 302. The Court also rejected the proposed definition of "the right of a child to be released from all other custody into the custody of its parents, legal guardian, or even close relatives." *Id*. Instead, the Court's narrowed formulation was the "right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." *Id*. *See also Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 279 (1990) (rejecting broad characterization of right as the "right to die;" construing right as a "constitutionally protected right to refuse lifesaving hydration and nutrition.").

Similarly, the plaintiff in *Raich* was a seriously ill individual who used marijuana—legally, per California law—for medical treatment for multiple, serious medical conditions; according to her physician, "foregoing marijuana treatment may be fatal." *Raich*, 500 F.3d 855. Ms. Raich brought a pre-enforcement challenge to the federal Controlled Substances Act, asserting that application of it to her would deprive her of a fundamental right to "mak[e] life-shaping medical decisions that are necessary to preserve the integrity of her body, avoid intolerable physical pain, and preserve life." *Id*. at 864.

---

the Fourteenth Amendment." *Planned Parenthood of SE Pa. v. Casey*, 505 U.S. 833, 851 (1992). *Cf. Troxel v. Granville*, 530 U.S. 57, 66 (2000) (suggesting that fundamental right of parents regarding the upbringing of their children is entitled to a level of deference that is "lacking when appeal is made to liberties which derive merely from shifting economic arrangements'") (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). Here, the "liberty" at issue—even defined as broadly as plaintiffs' insist—is a matter of "shifting economic arrangements" and not the deeply personal rights at the core of the liberty protected by Due Process.

The Ninth Circuit carefully analyzed Supreme Court precedent and determined that Ms. Raich's statement "does not narrowly and accurately reflect the right that she seeks to vindicate." *Id*. Instead, the Ninth Circuit determined that the more specific right at issue was the "right to make a life-shaping decision on a physician's advice to use medical marijuana to preserve bodily integrity, avoid intolerable pain, and preserve life, when all other prescribed medications and remedies have failed." *Id*.

The Ninth Circuit ultimately held that while there was some history of medical marijuana use in this country, and a growing number of states have decriminalized medical marijuana, the conclusion could not yet be drawn that the right to use medical marijuana was "fundamental" and "implicit in the concept of ordered liberty." *Id*. at 866 (quoting *Glucksberg*, 521 U.S. at 720–21).

Applying decisional precedent, "the right to pursue a common calling" is simply too broad of a formulation of the issue at stake here. What is at stake, narrowly and accurately stated, is the right of plaintiffs to receive District tax dollars for employment on public-works projects (or as economic-development benefits). Such a right is not "deeply rooted" in this nation's history and tradition, and is therefore not fundamental.

## II. BECAUSE THE "RIGHT" TO GOVERNMENT EMPLOYMENT IS NOT FUNDAMENTAL, IT NEED ONLY WITHSTAND RATIONAL-BASIS SCRUTINY.

Because the "right" of which plaintiffs were allegedly deprived is not fundamental, the First Source Act need be examined only for a rational basis or, at most, under intermediate scrutiny, which it comfortably withstands, as the District has previously explained at length. *See* Doc. No. 37 at 12–18. *Cf. Glucksberg*, 521 U.S. at 728 (because asserted "right" to assisted suicide is not a fundamental liberty interest protected by the Due Process Clause, law need only

be rationally related to legitimate government interests) (citing *Heller v. Doe*, 509 U.S. 312, 319–20 (1993); *Flores*, 507 U.S. at 305). *See also West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391 (1937) (overruling *Lochner* line of cases and rejecting challenge to minimum-wage law on principle that "regulation which is reasonable in relation to its subject and is adopted in the interests of the community is due process").

In a recent case, *NASA v. Nelson*, 562 U.S. 134 (2011), the Supreme Court held that, for an alleged violation of unenumerated constitutional rights that were not "fundamental," something less than strict scrutiny was required. In that case, federal government contract employees alleged that a newly imposed background-check requirement "violates a constitutional right to informational privacy." *Id*. at 754. The Court assumed the existence of "a privacy interest of constitutional significance[,]" *id*. at 756, and found that the background-checks were a "reasonable" approach to furthering the government's interests. *Id*. at 759. The Court specifically rejected plaintiffs' argument that the government must demonstrate that the background checks were "necessary" or the "least restrictive means" of furthering its interests. *Id*. at 760. The Court noted that, in instituting the background-check requirement, the government was *not* exercising "its sovereign power 'to regulate or license[,]'" but was operating "in its capacity 'as proprietor' and manager of its 'internal operations.'" *Id*. at 757 (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 896 (1961)). Consequently, the government has a "much freer hand" when dealing with its own employees than it has when regulating citizens at large. *Id*.

So too here: just as in the previously decided Commerce Clause context, the District is not acting as a regulator, but as a customer of construction services, choosing how to spend its own tax dollars. The First Source Act is a reasonable method to attempt to maximize the

District's return on its investment, to increase the amount of money kept in the District and in the families of its poor or under- or unemployed residents, rather than funnel it out of state. These are unquestionably legitimate government goals.

"[U]nder the deferential standard of review applied in substantive due process challenges to economic legislation there is no need for mathematical precision in the fit between justification and means." *Concrete Pipe & Prods. v. Construction Laborers Pension Trust*, 508 U.S. 602, 639 (1993). Consequently, the First Source Act survives the substantive due process inquiry even though it neither targets all possible causes of high unemployment in the District nor necessarily succeeds in reducing unemployment in the construction sector. *See Stretton v. Disciplinary Bd. of Supreme Court of Pa.*, 944 F.2d 137, 146 (3d Cir. 1991) ("A state is permitted to take steps . . . that only partially solve a problem without totally eradicating it."). "Courts should not use the Due Process Clause as putty to fill up the gaps they deem unsightly in the protections provided by other constitutional provisions." *Nelson*, 562 U.S. at 765 (Scalia, J., concurring).

### III. THE FIRST SOURCE ACT IS NOT A COMPLETE PROHIBITION ON PLAINTIFFS' RIGHTS TO PURSUE A COMMON CALLING.

Even leaving aside that the District is a market participant here, *see Nelson*, *supra*, the right to pursue a common calling is not an unassailable prerogative to engage in any occupation without reasonable government regulation.

The interpretation of "liberty" in the instant due-process context, with the Supreme Court discussing a continuum of government regulation between reasonable and arbitrary,

> is fairly traceable to Justice Bradley's dissent in the *Slaughter-House Cases*, 16 Wall. 36, 21 L.Ed. 394 (1873), in which he said that a person's right to choose a calling was an element of liberty (as the calling, once chosen, was an aspect of property) and declared

>that the liberty and property protected by due process are not truly recognized if such rights may be "arbitrarily assailed," *id*., 16 Wall., at 116.

*Glucksberg*, 521 U.S. at 759 (Souter, J., concurring) (footnote omitted).

That Court more recently defined a violation of that liberty interest as the "complete prohibition on the right to engage in a calling[.]" *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999).[4] In *Conn*, the plaintiff—a prosecutor in a high-profile murder case who was subject to a search warrant while his client was providing grand-jury testimony—alleged that the government had violated his "right to practice his profession without undue and unreasonable government interference[,]" because he could not consult with his client during her testimony. *Id*. at 290. The Supreme Court rejected the claim, holding that while there is "some generalized due process right to choose one's field of private employment," that right "is nevertheless subject to reasonable government regulation." *Id*. at 292. The Court held that the brief interruption in the plaintiff's duties while he was patted down and questioned did not offend due process. *Id*. The Court contrasted Mr. Gabbert's allegations with a number of cases that had dealt "with a complete prohibition of the right to engage in a calling," *id*., including *Schware v. Board of Bar Examiners of N.M.*, 353 U.S. 232, 238–39 (1957), in which the Court held that a State cannot completely exclude a person from the practice of law based on previous membership in the Communist Party and an arrest record for union activities.

Here, the First Source Act is not a "complete prohibition" on the right to engage in *any* calling, but merely reflects reasonable government regulation. Any plaintiff can continue to work

---

[4] Recall that *The Slaughter-House Cases* involved a State-granted monopoly on the operation of slaughterhouses within New Orleans (*i.e.*, a complete prohibition on anyone else engaging in that occupation), which the plaintiff butchers unsuccessfully challenged under the Privileges or Immunities Clause of the Fourteenth Amendment. 16 Wall at 78–79. Despite "overwhelming consensus" that that decision was incorrect, the Supreme Court has expressly declined to overrule it. *McDonald v. City of Chicago*, 561 U.S. 742, 759 (2010) (*plurality op.*).

in any field they so choose, construction, contracting, or otherwise. While the plaintiffs alleged broadly that they "have been deprived of their fundamental right to pursue a common calling" Complaint, ¶¶ 90–91, their specific allegations do not show the "complete prohibition" encountered in the case law, but merely a regulatory regime that plaintiffs find too burdensome or expensive. But such a showing is insufficient to state a claim under substantive due process. *See Casey*, 505 U.S. at 873 ("[N]ot every law which makes a right more difficult to exercise is, *ipso facto*, an infringement of that right.") (*plurality op.*); *id*. ("The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive [to exercise it] cannot be enough to invalidate it.").

Again, the high threshold set by case law has not been met by plaintiffs here. *See, e.g., ABA, Inc. v. District of Columbia*, ___ F.Supp.2d ___, 2014 WL 1863944, *9 (D.D.C. May 9, 2014) ("The right to due process is *not* implicated when a contractor is not completely cut off from doing business with the government.") (emphasis in original); *cf. PDK Labs, Inc. v. Ashcroft*, 338 F.Supp.2d 1, 10 (D.D.C. 2004) (plaintiff was deprived of its liberty interest under Due Process where government action "has the direct effect of preventing [plaintiff] from engaging in its core business [and] threatens [plaintiff's] livelihood as a business.") (citation omitted).

Plaintiffs have not alleged such extreme effects of the First Source Act, much less a "complete prohibition" on their rights to pursue a common calling, nor could they; hence judgment on the remaining claim is appropriate for the District.

## Conclusion

The District is entitled to judgment on the pleadings on the remaining count.

Dated: February 2, 2015            Respectfully submitted,

                                           KARL A. RACINE
                                           Attorney General for the District of Columbia

                                           ELLEN EFROS
                                           Deputy Attorney General
                                           Public Interest Division


                                           /s/ Andrew J. Saindon
                                           ANDREW J. SAINDON, D.C. Bar No. 456987
                                           Senior Assistant Attorney General
                                           441 Fourth Street, N.W., 6th Floor South
                                           Washington, D.C. 20001
                                           Telephone: (202) 724-6643
                                           Facsimile: (202) 730-1470
                                           Email: andrew.saindon@dc.gov