UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

METROPOLITAN WASHINGTON CHAPTER,
ASSOCIATED BUILDERS AND
CONTRACTORS, INC., *et al.*,

      Plaintiffs,

      v.

DISTRICT OF COLUMBIA,

      Defendant.

Civil Action No. 12-00853 (EGS)

---

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The District is constitutionally distinct—neither a State nor a non-State territory—and it has shown that Congress's prohibition on taxing nonresidents is the *primary* source of the District's structural budget imbalance. Plaintiffs complain that the District has conflated the "source of the local evil" and the role of nonresidents. On the contrary, it is plaintiffs who conflate the target of the First Source Act and themselves. The "evil" is not the nonresidents who hold more than 70% of the jobs in the District, but the fact that the District cannot tax their income. This may be no fault of the nonresidents, but the "evil" remains. And because Congress expressly declined to apply the Privileges and Immunities Clause here, the District is permitted to reasonably discriminate against nonresidents in its efforts to help offset the structural budget imbalance.

## ARGUMENT

### I.   The Record Evidence Supports Summary Judgment for the District.

Plaintiffs argue that the District relied largely on the legislative record of the First Source Act, and imply that it was improper for the District to "supplement" that evidence with "materials developed after the enactment of the Amended Act and raised for the first time in the litigation[.]" P.Opp. at 6.

Plaintiffs did not provide any support for these arguments but, in any event, they are incorrect. The Supreme Court expressly authorized (indeed, ordered) such supplementation in *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994) (*Turner I*) and *Turner Broadcasting Sys., Inc. v. FCC*, 520 U.S. 180, 185, 195–96 (1997) (*Turner II*). And the D.C. Circuit (relying on *Turner I* and *II*) has also expressly followed this methodology in *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*), when it remanded the matter—after summary judgment briefing—for further factual development of the record, "because the record is insufficient to inform our resolution of the important constitutional issues presented." *Id.* at 1248. Further, the Supreme Court has explicitly rejected plaintiffs' argument that our analysis is invalid "merely because the [government] advances it for the first time in" an adversarial proceeding. *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 158 (1991). Whether the District possessed or presented this evidence during Council consideration of the law is immaterial. The District presented that evidence here.

Plaintiffs did not. Plaintiffs have had repeated opportunities to demonstrate how the First Source Act has harmed them. They have failed.

Plaintiffs complain that the District misleadingly presented the opinion of the then-General Counsel of the Council on the constitutionality of the First Source Act. P.Opp. at 4. But the Committee Report included a full copy of that opinion because it reflected the Committee's reasoning, and the Committee's attempt to meet the concerns of all stakeholders, especially those who—like the instant plaintiffs—challenged the constitutionality of the First Source Act under the Privileges and Immunities Clause. *See* PEx. 5 at ABC023–024. *See also Washington Ry. & Elec. Co. v. District of Columbia*, 77 F.2d 366, 369 (D.C. Cir. 1935) ("It is hardly necessary to say that the reports of a legislative committee explaining a bill to it may be used to determine the intention of [the legislature] in the event of doubt or difficulty in its construction as enacted.") (citations omitted).

## II.   <u>Plaintiffs Lack Standing or Their Claims are Moot.</u>

In their scant, half-page of discussion on the issue, plaintiffs assert that "the evidence is that the individuals as well as the companies that might employ them are adversely impacted by the First Source Act." P.Opp. at 9. But plaintiffs fail to point out "the evidence" to which they refer. Consequently, they have failed to meet their burden to show their right to proceed. *See, e.g., Rainbow/PUSH Coalition v. FCC*, 396 F.3d 1235, 1239 (D.C. Cir. 2005) ("The petitioner may carry its burden of production by citing any record evidence relevant to its claim of standing and, if necessary, appending to its filing additional affidavits or other evidence sufficient to

support its claim.") (quoting *Sierra Club v. EPA*, 292 F.3d 895, 900–901 (D.C.Cir. 2002)).

Plaintiffs argue that the First Source Act, as amended, "is not limited to new hires but, instead, focuses on hours worked by all employees." P.Opp. at 2. This is correct but incomplete. The "hours" requirements are only applicable to beneficiaries of the largest projects, those worth $5 million or more. D.C. Official Code § 2-219.03(e)(1A)(A). There are no allegations—much less evidence—that any plaintiff has been harmed by these requirements. Indeed, plaintiff Miller & Long has conceded that it no longer seeks to work on such projects, hence its claims as to that provision are moot. *See* PEx. 12 at ¶ 3. Plaintiffs therefore lack standing to challenge that provision of the First Source Act because they have suffered no injury that is "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (May 16, 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). *See also, e.g., Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1149 (Feb. 26, 2013) (party lacks standing where injury is not "fairly traceable" to specific provision challenged).

## III.   The District's Evidence Regarding the Impact of the Law is Persuasive.

Plaintiffs belittle the value of the District's evidence about the impact of the law, *see* P.Opp. at 10–12, but fail to cite any authority for their arguments. Plaintiffs fault the District for failing to provide a written report for its expert, Dr. Fitzroy Lee, and suggest that they "could complain about the sequencing of the disclosures[.]" *Id.* at n.20. That argument is unavailing. The Federal Rules

specifically authorize the procedure followed by the District. *See* Fed. R. Civ. P. 26(a)(2)(C) (witnesses not "retained or specially employed to provide expert testimony" need not provide written report, but a "disclosure" which states "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702; and (ii) a summary of the facts and opinions to which the witness is expected to testify."). *See also, e.g., Owens-Hart v. Howard Univ.*, 2016 WL 1239223, *2 (D.D.C. Mar. 29, 2016) (treating physician need only provide "summary disclosure" of expert opinions, which is "considerably less extensive than the report required by Rule 26(a)(2)(B).") (quoting Advisory Committee's Note (2010 Amendments)).

Plaintiffs also argue that "there is no evidence about whether the net result to the District is positive once the costs associated with the program are factored in." P.Opp. at 11. Regardless of whether that statement is true, it is irrelevant. The only "costs" the District is required (by law, the Constitution, or otherwise) to analyze regarding legislation are those "which will be incurred by the District[,]" D.C. Code § 1-301.47a(a)(2), and the First Source Act easily cleared that hurdle. *See* PEx. 5 at 39 (Fiscal Impact Statement). Similarly meaningless is plaintiffs' complaint about the First Source Act's "relatively small economic boost." P.Opp. at 11. The projections by Dr. Lee are the *minimum* amounts that the First Source Act is contributing to the District's bottom line, and are based on very conservative assumptions. *See* DEx. 1. In reality, the First Source Act is likely having a far greater positive impact on the District's economy.

5

Plaintiffs also complain that John McGaw was not previously identified as a potential witness. P.Opp. at 11. But the parties agreed to waive initial disclosures, and the plaintiffs never asked for this information (*i.e.*, the names of potential witnesses). Moreover, Mr. McGaw's declaration only summarized public-record information about the District's budget, of which the Court may take judicial notice. *Kennedy-Jarvis v. Wells*, 2016 WL 3659886, n.2 (D.D.C. July 1, 2016) ("The Court may take judicial notice of public records … in adjudicating a motion for summary judgment.") (citing *Covad Comm'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)).

Plaintiffs then attempt (unsuccessfully) to dispute that information, arguing that there is no evidence "that these budgeted costs would have been higher or lower with or without the First Source Act" or evidence "about the relationship of these costs to the First Source program or to the presence of absence of nonresidents working in the District." P.Opp. at 11. These arguments are utterly immaterial. Mr. McGaw's testimony was elicited solely to show that the First Source Act would have an even *larger* positive impact if it were applied or enforced fully on every qualifying District expenditure.

IV.   <u>The First Source Act Does Not Violate Due Process.</u>

Plaintiffs argue that it is "unimaginable that the Framers" who inserted the Privileges and Immunities Clause into the Constitution would then "allow for a carve-out for the new federal district to enact laws that discriminate against citizens of Virginia and Maryland." P.Opp. at 14.

6

The point—which plaintiffs ignore—is not what the Framers imagined but what Congress did when it enacted the Home Rule Act; it explicitly declined to apply the Privileges and Immunities Clause to the District. It is absurd to suggest, as plaintiffs do, that the *implicit* reach of one constitutional provision (the Fifth Amendment) is as broad or broader than another (the Privileges and Immunities Clause). Congress's choice—and its consequences—must be respected.[1]

Plaintiffs insist that "public employment" is not at issue, and that the "right to work on government public-works projects" is not the right to be protected here. P.Opp. at 14, 16. But this is wrong. The Supreme Court has—for decades—indicated that the *source* of the projects' funding is decisive, at least where the Privileges and Immunities Clause is not implicated. *See White v. Massachusetts Council of Const. Employers, Inc.*, 460 U.S. 204, n.7 (1983) (holding that "for purposes of the Commerce Clause everyone employed on a city public works project is, 'in a substantial if informal sense, 'working for the city.'"))[2] *See also Camden*, 465 U.S. at 221 ("In sum, Camden may, without fear of violating the Commerce

---

[1]    The Ninth Circuit recently held, *en banc*, that challenges under the Privileges and Immunities Clause entail "a two step inquiry." *Marilley v. Bonham*, ___ F.3d ___, 2016 WL 7384038, *3 (9th Cir. Dec. 21, 2016) (quoting *Supreme Ct. of Va. v. Friedman*, 487 U.S. 59, 64 (1988) and citing *United Building & Construction Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 218 (1984) (*Camden*)). At step one, the plaintiff bears the burden of showing that the disputed law "fall[s] within the purview of the Privileges and Immunities Clause." *Id.* (quoting *Camden*, 465 U.S. at 221–22). The instant dispute fails at this step, because that provision does not apply to the District of Columbia.

[2]    The District has long had a law awarding a preference to District residents for District government jobs, D.C. Code § 1-608.01(e), which has never been challenged under the Constitution.

Clause, pressure private employers engaged in public works projects funded in whole or in part by the city to hire city residents."); *cf. id.* ("The fact that Camden is expending its own funds or funds it administers … is certainly a factor—perhaps the crucial factor—to be considered in evaluating whether the statute's discrimination violates the Privileges and Immunities Clause.").[3] Here, the Privileges and Immunities Clause does not apply, and the District is expending its own funds. The First Source Act is constitutional.

Plaintiffs complain that there is no evidence "that nonresidents were a source of unemployment." P.Opp. at 19. But that is too narrow of a formulation. The "evil" here is not just unemployment, but the structural budget imbalance, and the "source" of that evil is not just the untaxable income of the nonresidents who work in the District, but the legal restraints put on the District by Congress.

Plaintiffs contend that the analysis conducted by the Third Circuit in *A.L. Blades & Sons, Inc. v. Yerusalim*, 121 F.3d 865 (3d Cir. 1997) is "very instructive." P.Opp. at 21. But that case is distinguishable on multiple grounds. *First*, it involved a challenge under the Privileges and Immunities Clause, which even plaintiffs concede does not apply here. *Second*, the law at issue there required *all* workers on public-works contracts to be residents of Pennsylvania at least 90 days prior to starting work. *A.L. Blades*, 121 F.3d at 868. In contrast, the First Source Act only

---

[33]   *See also Lunding v. New York Tax Appeals Tribunal*, 522 U.S. 287, 298 (1998) ("The inquiry must also, of course, be conducted with due regard for the principle that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures.") (quoting *Toomer v. Witsell*, 334 U.S. 385, 396 (1948)).

requires good-faith efforts to ensure that *new positions* created by public-works contracts are filled by qualified, unemployed District residents, with some exceptions for the largest projects. *See* p.4, above. *Third*, in *A.L. Blades* the "record disclosed that the unemployment rate among Pennsylvania workers was not significantly higher than in neighboring jurisdictions." P.Opp. at 2. As already shown, the unemployment rate in the District remains higher than the United States as a whole and higher than all surrounding jurisdictions. *See* Doc. No. 63 at 10 (and sources cited); SMF ¶ 4. *Fourth*, in *A.L. Blades* there was no evidence "that non-residents have significantly displaced resident workers[.]" P.Opp. at 22. Here, in contrast, it is undisputed that more than 70% of the jobs in the District are held by nonresidents; surely that figure represents a "significant displacement" of native workers. That is not to say, of course, that nonresidents are the *cause* of District resident unemployment. The District does not—and cannot—make such a claim. But the case law does not require such a rigorous showing.

As the District has argued repeatedly, the Court need only consider whether there is a rational basis for the First Source Act. The Court has already done so, finding that "the District's goal of directing local funds to local residents is rationally related to the means used by the Act." *Metropolitan Wash. Ch., Associated Builders & Contractors, Inc. v. District of Columbia*, 57 F. Supp. 3d 1, 29 (D.D.C. 2014). Plaintiffs have presented no persuasive argument or evidence to suggest that the decision was incorrect or incomplete.

Even if the First Source Act is reviewed under intermediate scrutiny, the most stringent possible review, the District is entitled to summary judgment. Discrimination against non-residents is permissible if there is a "substantial reason" for the difference in treatment, and the discrimination has a "substantial relationship" to the State's objective. *Landise v. Mauro*, 141 A.3d 1067, 1076 (D.C. 2016) (quoting *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 284 (1985)). *Cf. Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955) ("The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."); *Brown v. Board of Education*, 347 U.S. 483, 498 (1954) ("discrimination may be so unjustifiable as to be violative of due process.").

The law's requirements bear a "substantial relationship" to the "peculiar evil" of the congressionally created structural imbalance, promoting the District's important interest in addressing its budgetary problems and doing so by imposing only modest burdens on the companies that choose to compete for the District's business.

## V.   Plaintiffs' "Statement of Genuine Issues" Raises None.

Plaintiffs do not dispute *any* of the facts cited by the District, only arguing that some are "inadequately supported in the record." *See* Doc. No. 66-1 at 2–3. But the facts that plaintiffs claim are inadequately supported are derived from public-record documents whose authenticity plaintiffs do not (and cannot) dispute. *See* Fed. Evid. R. 201(b) (permitting judicial notice as to facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be

10

questioned."). *See also, e.g., Jones v. United States*, 934 F. Supp. 2d 284, 289 (D.D.C. 2013) ("At the summary judgment stage, a party is not required to produce evidence in a form that is admissible, but the evidence must be capable of being converted into admissible evidence at trial.") (citations omitted).

There are no disputed material facts that preclude granting summary judgment to the District.

## CONCLUSION

For the foregoing reasons, and those stated previously, the Court should deny plaintiffs' motion for summary judgment and award summary judgment to the District on all claims in plaintiffs' Amended Complaint.


Dated: January 24, 2017.          Respectfully submitted,

                                  KARL A. RACINE
                                  Attorney General for the District of Columbia

                                  ELIZABETH SARAH GERE
                                  Deputy Attorney General
                                  Public Interest Division

                                  /s/ Toni Michelle Jackson
                                  TONI MICHELLE JACKSON
                                  D.C. Bar No. 453765
                                  Chief, Equity Section

<u>/s/ Andrew J. Saindon</u>
ANDREW J. SAINDON, D.C. Bar No. 456987
Senior Assistant Attorney General
CONRAD Z. RISHER*
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, DC 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
E-mail: andy.saindon@dc.gov

*Counsel for the District of Columbia*

---

* Appearing pursuant to LCvR 83.2(f).

12