1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
OFFICE OF THE ATTORNEY GENERAL

+ + + + +

_____
                                :
IN THE MATTER OF:               :
                                :
METROPOLITAN WASHINGTON         :
CHAPTER, ASSOCIATED BUILDERS    :
AND CONTRACTORS, INC.,          :
et al.,                         :
                                :
          Plaintiffs            :
                                :
     v.                         : Civil Action No.
                                : 12-00853 (EGS)
DISTRICT OF COLUMBIA,           :
                                :
          Defendant             :
_____:

Friday,
October 21, 2016

Washington, DC

DEPOSITION OF:

**ROBERT HENLEY**

          called for examination by Counsel for
the Defendant, pursuant to Fed. R. Civ. P.
30(b)(6), in the Office of the Attorney General,
located at 441 4th Street, NW, Suite 600 South,
Washington, DC 20001, when were present on behalf
of the respective parties:

2

APPEARANCES:


On Behalf of Plaintiffs:

PAUL J. KIERNAN, ESQ.
Holland & Knight, LLP
800 17th Street, NW
Suite 1100
Washington, DC 20006
(202) 663-7276
paul.kiernan@hklaw.com


On Behalf of Defendant:

ANDREW J. SAINDON, ESQ.
CONRAD RISHER, ESQ.
Office of the Attorney General
441 4th Street, NW
Suite 600 South
Washington, DC 20001
(202) 724-6643
andy.saindon@dc.gov

# CONTENTS

WITNESS                 DIRECT  CROSS
Robert Henley              4      --

# EXHIBITS

NO.                                                    PAGE
1    Notice of Deposition                               12

2    Interrogatories                                    16

3    Plaintiff's Responses and Objections
     to Defendant's First Set of Requests
     for Admissions                                     30

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      www.nealrgross.com

4

```
 1                  P-R-O-C-E-E-D-I-N-G-S

 2      WHEREUPON

 3                     ROBERT HENLEY

 4                was called as a witness by counsel for

 5      the defendant and, having first been duly sworn,

 6      was examined and testified as follows:

 7                MR. SAINDON:  Good morning.  Could you

 8      state your name for the record, please?

 9                THE WITNESS:  Robert Henley.  Nickname

10      is Buddy.

11                     DIRECT EXAMINATION

12                BY MR. SAINDON:

13           Q    And you're currently employed?

14           A    Yes.

15           Q    Okay.  My name is Andy Saindon.  I'm

16      an attorney for the District of Columbia.  And

17      this  case,  as  you  know,  was  filed  by  the

18      Metropolitan Washington Chapter of the Associated

19      Builders and Contractors.  Sometimes we call that

20      ABC  Metro.   And  you're  challenging  the  First

21      Source Act in this case.

22                Have you ever been deposed before?
```

1      A     Yes.

2      Q     And what -- how many times?

3      A     At least once.

4      Q     What was that case about?

5      A     That was a construction claim.

6      Q     Against your company?

7      A     Against an owner.

8      Q     I'm sorry?

9      A     Against the owner of a project.

10     Q     Okay.  Why were you called to testify?

11     A     Our company filed a claim.

12     Q     Okay.  And what was the result of the

13  lawsuit?

14     A     As part of the settlement agreement,

15  I'm not allowed to say, am I?

16     Q     Well, I don't know.

17           (Simultaneous speaking)

18     Q     Okay.  Is that the only time you've

19  been deposed before?

20     A     That's the only one that comes to

21  light at the moment.

22     Q     Okay.  Mr. Henley, it's very important

1   that you answer with verbal responses.  If you

2   say "uh-huh," that doesn't always get recorded

3   accurately in a transcript.  Likewise, if you nod

4   yes or no, that's hard for the court reporter to

5   take down.  So please make sure you give verbal

6   responses.

7              If you need a break at any time, just

8   let me know.  I'd just ask that you don't take a

9   break when we're in the middle of a question.

10             And it's very important that you

11  understand individual questions and give accurate

12  answers.  If there's any question that you don't

13  understand, please ask me to repeat.  So I'll

14  assume, if you answer a question, you understand

15  it and you're answering it accurately.

16             Does that make sense?

17     A     Yes.

18     Q     Okay.  Great.  What's your position at

19  ABC Metro?

20     A     I'm chairman of the board for 2016.

21     Q     And how long is that term?

22     A     One year.

1     Q      Do you draw any salary for those

2     duties?

3     A      No.

4     Q      Okay.   What are your duties as

5     chairman of the board?

6     A      Conduct the meetings.  Also represent

7     the Association in, say, for today, in meetings

8     and other -- like we might meet with the City

9     Council, so I'd be there to speak for the

10    Association.

11    Q      And you have met with the counsel

12    before on other occasions?

13    A      Yes.

14    Q      How often does ABC Metro meet?

15    A      We meet -- the board meets monthly for

16    important meetings.   There's the executive

17    committee that also meets monthly in addition to

18    that.  And then there's other kinds of meetings,

19    networking events, et cetera.

20    Q      How many would you say in a year on

21    average?

22    A      15.

1    Q    How long have you been involved with

2    ABC Metro?

3    A    As far as a member company, it dates

4    back to the 1960s.  As far as being on the board

5    of directors, since 2010.

6    Q    So your company was a member since the

7    1960s?

8    A    Yeah.

9    Q    And you have a job elsewhere as well?

10   A    Yes.

11   Q    And what do you do?

12   A    General contractor, so I'm president

13   of Henley Construction Company.

14   Q    And what do you do for that company?

15   A    President, so set our goals and chart

16   our course for the future.

17   Q    What   kind   of   work   does   Henley

18   Construction do?

19   A    The majority of it local government

20   work, so schools, libraries.

21   Q    You build those buildings?

22   A    Yes.

1        Q     And where do you operate?

2        A     All counties surrounding the District.

3        Q     The District of Columbia.  So you

4   operate in Maryland and Virginia.  Do you do any

5   work in Pennsylvania?

6        A     We do not currently.

7        Q     Okay.

8        A     We are licensed in West Virginia.  I

9   don't believe we hold a license in Pennsylvania.

10       Q     Now you're familiar generally with the

11  First Source Act?

12       A     Yes.

13       Q     Mr. Henley, do you have any work

14  experience aside from Henley Construction?

15       A     I worked one summer at Ocean City, so

16  let's not consider that.

17       Q     Okay.  So Henley Construction is a

18  family company?

19       A     Yes.

20       Q     And when was it founded?

21       A     In 1964.

22       Q     By who?

1        A      My father.

2        Q      Okay.  And do you know how he got his

3   start, or the first projects he did?

4        A      One of the first projects he did was

5   a house.

6        Q      And where was that?

7        A      That was in Rockville.

8        Q      How many members does ABC Metro have?

9        A      At the end of 2015, we had roughly

10   550.

11        Q      550?

12        A      Yes.

13        Q      Do the members pay dues?

14        A      Yes.

15        Q      What are those dues?

16        A      They vary based on associate members

17   or their level of revenue, if they're a

18   contractor.

19        Q      What are the range of fees?

20              MR. KIERNAN:  Of dues you mean?

21              MR. SAINDON:  Of due fees, yes.  I'm

22   sorry.

1             THE WITNESS:   I think an associate

2    member might be 1,500, and it probably goes up to

3    6,500 for the larger contractors.

4             BY MR. SAINDON:

5        Q    Yearly dues?

6        A    Yearly dues.

7        Q    How much does Henley Construction pay?

8        A    I believe right around 5,000.

9        Q    Who are ABC Metro's biggest members as

10   far as number of employees?

11       A    That's a tough question.   Balfour

12   Beatty, Miller and Long, Hensel Phelps.

13       Q    Would you say those are also ABC

14   Metro's biggest members in terms of revenues

15   also?

16       A    Most likely.  I don't know for sure.

17       Q    I think you answered this before.

18   What does ABC Metro do?  They lobby on behalf of

19   their members' interests.  What else?

20       A    We  provide  management  education

21   training, workforce development, safety training,

22   networking opportunities, political advocacy.

1      Q     Can you explain what you mean by

2   workforce development training?

3      A     We offer like safety training courses,

4   OSHA courses.  We have a training trust where we

5   train the people in the trades.  That's a four-

6   year apprenticeship program.  Plumbing, concrete,

7   masonry, carpentry.  So we offer that.

8      Q     Mr. Henley, do you know how long the

9   First Source Act has been in place?

10     A     The original one or the --

11     Q     The original one.

12     A     Off the top of my head, I do not know

13  that.

14     Q     Okay.  More than 10 years?

15     A     I would say yes.

16     Q     I'm going to hand you an exhibit that

17  the reporter will mark as Exhibit No. 1 and I'll

18  have you take a look at it.

19            (Whereupon, the above-referred to

20  document was marked as Exhibit 1 for

21  identification.)

22            BY MR. SAINDON:

1       Q     If you'll take a look at that.   Take

2   a look at it and let me know if you've ever seen

3   this before.

4       A     Yes, I have.

5       Q     This is the notice of deposition for

6   plaintiffs Miller and Long and ABC Metro; is that

7   right?

8       A     Yes.

9       Q     And you have been designated, as I

10  understand it, to discuss certain topics; is that

11  correct?

12      A     Yes.

13      Q     You're here to testify about topics 1,

14  3, 4, and 5; is that right?   Take a look.

15      A     Yes.

16      Q     And you're aware that your testimony

17  here will be binding on ABC Metro as to these

18  topics; is that right?

19      A     Yes.

20      Q     When did you first find out you were

21  being designated to testify on behalf of ABC

22  Metro?

1        A      It  was  earlier  this  year  that  I

2    potentially could be the one being deposed.

3        Q      Do  you  remember  when  that  was?

4    Spring?  Summer?

5        A      Spring I'd say.

6        Q      Did you have any involvement in this

7    litigation before you were designated to testify?

8        A      It was obviously a topic of discussion

9    at our board meetings.

10       Q      Did  you  help  counsel  in  any  other

11   aspect before he asked you to testify here?  What

12   I  mean  by  that  is,  did  you  assist  preparing

13   written  responses  to  interrogatories  and  the

14   other documents?

15       A      I reviewed them.

16       Q      Okay.  You reviewed the responses that

17   someone else had written?

18       A      Yes.

19       Q      Okay.  Did you help gather documents?

20       A      I did not.

21       Q      Okay.  What did you do to gather

22   information known to ABC Metro on these topics?

1        A    I  didn't  personally  gather  the

2    documents.   Staff assembled the documents.

3        Q    Okay.  Did you educate yourself about

4    these topics as to what ABC Metro knew?

5        A    Can you repeat that one?

6        Q    Sure.  Did you educate yourself about

7    these topics to the extent of the knowledge of

8    ABC Metro?

9        A    Yes.

10       Q    Well,  what  did  you  do  to  educate

11   yourself?

12       A    I read the questions.

13       Q    Okay.  Did you look at any ABC Metro

14   documents?

15       A    I  looked  at  the  documents  that  were

16   provided in discovery.

17       Q    The  documents  that  were  provided  to

18   the District?

19       A    Yes.

20       Q    Okay.  Did  you  look  at  any  company

21   documents of members of ABC Metro?

22       A    I did not.

1        Q      Did you speak to any ABC Metro members

2    about these topics, but not generally, in

3    preparation for this deposition?

4        A      In preparation for this?

5        Q      Yes.

6        A      I did not.

7        Q      Okay.   Did you do anything else to

8    prepare for the deposition today, aside from

9    talking to counsel?

10       A      Nothing that I haven't already said.

11       Q      All right.   Let's -- I'm going to have

12   -- I will have you look at an exhibit I will have

13   marked No. 2, please.

14              (Whereupon, the above-referred to

15   document was marked as Exhibit 2 for

16   identification.)

17              BY MR. SAINDON:

18       Q      The same thing.   Take a look at it and

19   let me know if you've seen this before.

20       A      Yes.

21       Q      And this is Plaintiffs' Responses and

22   Objections to the Defendant's First Set of

1    Interrogatories; is that right?

2         A    Yes.

3         Q    Mr. Henley, who is Debra Livingston?

4         A    She's the president of the associate

5    chapter.

6         Q    For ABC Metro?

7         A    Yeah.

8         Q    Okay.  If you'll turn to page 5 of

9    this document.    Interrogatory number 6, the

10   District asked for all facts and circumstances

11   supporting plaintiffs' contention of increased

12   costs.  Do you see that?

13        A    Yes.

14        Q    In plaintiffs' response, they said

15   Miller and Long spends roughly 30 percent of its

16   human resources efforts to meet the requirements

17   of the District's First Source Act.  Do you see

18   that?

19        A    Yes.

20        Q    How does that percentage compare to

21   other ABC Metro members?

22        A    I don't believe I could comment on

1    that, having not -- I don't have that

2    information.

3         Q    Okay.  So you didn't talk to other

4    agency metro members about what their costs would

5    be to comply with the First Source Act?

6         A    We talked about increased costs.  And,

7    from my company's perspective, I know there would

8    be increased costs.

9         Q    But not other members of ABC Metro?

10        A    We did not discuss a percentage.

11        Q    Okay.  Well, how does that percentage

12   compare to Henley Construction?

13        A    It would be lower than the costs for

14   Henley Construction.

15        Q    Okay.       What    would    Henley

16   Construction's percentage be?

17        A    It would probably be somewhere around

18   60 percent.

19        Q    Of your human resources budget?

20        A    Yes.

21        Q    Okay.  Do you know where -- do other

22   ABC Metro members spend more or less than that 30

1    percent figure, if you know?

2         A     I don't know that.

3         Q     Does   Henley   Construction   work   on

4    projects where the First Source Act applies?

5         A     We do not currently.

6         Q     Have you ever worked on a project that

7    did?

8         A     We have chosen to not pursue those

9    projects because of the increased cost.

10        Q     I'm   sorry.     Maybe   you   didn't

11   understand.

12             Did   Henley   Construction,   have   they

13   ever   worked   on   a   project   in   which   the   First

14   Source Act complied?

15        A     No.

16        Q     Applied, I'm sorry.   All right.   If

17   you'll turn to page 6 of Exhibit 2.   Towards the

18   middle,  it  says  owners  and  general  contractors

19   have hire third-party consulting firms to assist

20   them in monitoring compliance with the Act.   Do

21   you see that?

22        A     Yes.

1          Q      Have any members of ABC Metro done

2     that, hired third-party consultants?

3          A      I don't have knowledge of that at the

4     moment.

5          Q      So you don't know what the costs would

6     be   to   hire   a   third-party   consultant   for

7     compliance?

8          A      No.

9          Q      Okay.

10         A      I know   our   members   have   attended

11    seminars   and   whatnot,   so   I don't   know   if   they

12    hired somebody as a result of that.

13         Q      Okay.   If you'll take a look again

14    towards the bottom of page 6.   The plaintiffs say

15    another   increased   cost   to   companies   is   the

16    decision not to bid on work because of a shortage

17    of qualified District resident employees.   Do you

18    see that?

19         A      Yes.

20         Q      Do you know of any ABC members, aside

21    from Miller and Long and Henley Construction,

22    that have decided not to bid on work because of a

1    shortage    of    qualified    District    resident

2    employees?

3         A    Yeah.    It's  a  topic  of  --  when  you

4    talk  about  workforce  development,  it's  a  huge

5    topic  that  many  companies  have  --  many  member

6    companies  said  that.    So  that's  why  we  have  the

7    workforce    as    one    of    our    strategic    goals,

8    workforce  development.    I  can't  sit  here  and  name

9    companies  off  the  top  of  my  head,  but  several

10   members  --

11        Q    Okay.    And  you  can't  tell  me  specific

12   companies  that  have  made  the  decision  not  to  bid

13   on  work,  aside  from  the  two  that  I  mentioned?

14        A    Due  to  the  lack  of  qualified  District

15   residents,  probably  --  Keller  Brothers  is  one.    I

16   know  I've  talked  to  him.    Having  550  members,

17   it's  difficult  to  remember  who  you  talked  to  and

18   what  about  all  the  time.    But,  yeah,  it's  a  topic

19   with  many  members.

20        Q    Do  you  know  what  projects  Keller  did

21   not  bid  on  for  that  reason?

22        A    He's  one  of  our  competitors,  so  he

1 would do the same type of local government,

2 libraries and schools.

3   Q All right.  And if you'll flip over to

4 page 7 of Exhibit 2, I believe it's the last

5 sentence in the first paragraph.  It says, and

6 should the building industry economy falter and

7 layoffs were required, companies would choose to

8 lay off people who do not live in the District in

9 order to maximize their opportunities to work in

10 the District.  Do you see that?

11   A Yes.

12   Q What does that mean?

13   A What they're saying is that the -- in

14 the event of a layoff of people, it appears that

15 this statement says that workers other than

16 District workers would be laid off first.

17   Q Why would companies do that?

18   A Well, it says here, in order to

19 maximize opportunities to bid for work in -- you

20 know, work in the District.

21   Q So what does that mean?  Does that

22 mean the District is a more lucrative place to

1    work than other places?

2        A     In the context here that I'm reading,

3    it sounds like the objective would be to hold on

4    to   the   District   workers,   to   allow   more

5    opportunities to work in the District.

6        Q     Okay.   But I guess my question --

7    maybe I'm not saying it properly -- is why that

8    would be -- why an ABC Metro member company would

9    lay off, say, Virginia and Maryland residents

10   before they would lay off District residents.

11       A     And, regardless of this statement, if

12   you laid off a District resident, you wouldn't

13   have the opportunity to work on District projects

14   because you wouldn't be able to apply with the

15   First Source Act.

16       Q     All right.   If you'll flip to page 8.

17   In interrogatory number 9, the District asks for

18   some -- a variety of information.   One category

19   was the names of companies that do not oppose

20   entering into employment agreements.   Do you see

21   that?

22       A     In the interrogatory part?

1          Q     Yes.

2          A     I see that.

3          Q     Now Henley Construction was listed in

4    the response.  Do you see that on the following

5    page?

6          A     Yes.

7          Q     Are there any other companies that fit

8    that description, that don't try to comply with

9    the First Source Act?

10         A     Well, honestly, there are many workers

11   in a 550 number, so --

12         Q     Can you name specific companies that

13   do not try to comply with the First Source Act?

14         A     That do not try to comply with it?  I

15   don't know of any that do not try to comply with

16   it.  I think the thought that it's a barrier to

17   entry would be more -- and cumbersome to comply

18   with, not that they do not try to comply with it.

19         Q     Okay.  Do you know of any companies

20   that, as it says here, do not oppose entering

21   into employment agreements?

22         A     When    you    talk    about    employment

1    agreements, I think of something such as a union

2    agreement or a contract labor agreement.

3         Q    And you know of companies that do not

4    oppose that and voluntarily enter into those

5    agreements?

6         A    There are union companies that --

7    yeah.

8         Q    Are there any of those that are

9    members of ABC Metro?

10        A    Very few, because I believe 13 percent

11   of the construction workforce chooses to belong

12   to a union in this area, so --

13        Q    Do you know of any companies

14   specifically?

15        A    That are members of ABC?

16        Q    Yes.

17        A    I do not know.

18        Q    The question also asks for -- asks

19   plaintiffs to identify any construction companies

20   that are able to secure waivers or exemptions

21   from the First Source Act.  Do you know of any

22   ABC Metro members that have done that?

1        A      To secure a waiver or exemption?

2        Q      Yes.

3        A      I  do  not  know  of  any  because,  as  a

4   business  owner,  you  would  not  enter  --  it  would

5   not  be  prudent  to  enter  into  a  contract  hoping  to

6   get  a  waiver  on  something.

7        Q      Okay.    If  you'll  flip  to  the  next

8   page,   Mr.   Henley,   it   says   that   Henley

9   Construction  does  not  work  on  school  projects  in

10  the  District  where  the  amended  First  Source  Act

11  requirements  might  apply.    I  think  we  talked

12  about  this  briefly.    How  much  money  would  it  take

13  for  your  company  to  hire  staff  to  comply  with  the

14  First  Source  Act?

15       MR.   KIERNAN:    Can   I   just   asked   a

16  clarifying  --  because  it  talks  about  employees

17  and  staff,  and  I  couldn't  tell  if  your  answer  was

18  administrative  staff  or  something  else.

19       MR.   SAINDON:    Just   administrative

20  staff.

21       MR.  KIERNAN:   Okay.   Thank  you.

22       THE   WITNESS:    Administrative   staff,

1    we'd have to put on at least one more person

2              BY MR. SAINDON:

3        Q    And    what    would    that    cost,

4    approximately?

5        A    $120,000.

6        Q    Does Henley Construction work on any

7    other projects in DC where the First Source Act

8    applies?

9        A    No.

10       Q    Mr. Henley, are you familiar with the

11   federal Davis-Bacon Act?

12       A    Yes.

13       Q    What is that Act, generally?

14       A    They  refer  to  it  as  wage  scale

15   projects where certain trades are paid certain

16   wages.

17       Q    That requires the payment of certain

18   levels of wages?

19       A    Certain levels of wages and benefits.

20       Q    Do you know generally what that law

21   requires, aside from that?  Are there reporting

22   requirements under the law?

1    A    There's reporting requirements, yes.

2    Q    Do you know how often a company has to

3    report?

4    A    We report monthly on the ones we do.

5    Q    And you have somebody at your office

6    who does that?

7    A    Yes.

8    Q    Do you have more than one person?

9    A    One person.

10    Q    Would it be fair to say that most ABC

11    Metro members regularly work on projects to which

12    the Davis-Bacon Act applies?

13    A    I have no idea of the percentage, but

14    I know it's not a barrier.

15    Q    It's not a barrier?

16    A    It's not a barrier to entry.

17    Q    Okay.  Do you know what the minimum

18    requirements of the Davis-Bacon Act are, like

19    when it kicks in, when it applies to a project?

20    A    I do not.  Typically, it's spelled out

21    in the specifications for the project before we

22    bid it whether it's Davis-Bacon or not.

1        Q      If you'll turn over to page 10,

2    please, of Exhibit 2, right at the top, it says,

3    it appears that the District have not actively

4    enforced the requirements of the amended First

5    Source Act.  Do you see that?

6        A      Yes.

7        Q      Is that still true?

8        A      I've heard members discuss that, yes.

9        Q      So is that true, that they haven't

10   enforced it?

11       A      That's what I've heard.

12       Q      And you have talked to other companies

13   about this?

14       A      Yes.

15       Q      Have any of ABC Metro's members been

16   fined for failure to comply with the First Source

17   Act?

18       A      I have no way of knowing that.

19       Q      So you haven't talked about that with

20   other --

21       A      I have not talked about that.

22       Q      Do you know if any ABC Metro members

1    have requested a waiver from the First Source

2    Act?

3         A    I have no knowledge of that right now.

4         Q    At the bottom there at page 10,

5    interrogatory number 14, the District asks for

6    which of ABC Metro's members have not bid on

7    jobs.  Do you see that?

8         A    Yes.

9         Q    And, in the answer, you say --

10   plaintiffs say Miller and Long and Hawkins

11   Electric.  Are there any other ABC Metro members,

12   aside from Henley Construction, that have

13   declined to bid on jobs, that you know of?

14        A    There's Miller and Long, Hawkins, and

15   Henley Construction.  I have, again, 550 members.

16   I know it's something we've discussed.  I do not

17   recall members' names at this moment.

18        Q    We'll take a look at our last exhibit,

19   which will be marked as No. 3.

20             (Whereupon, the above-referred to

21   document was marked as Exhibit 3 for

22   identification.)

1          BY MR. SAINDON:

2          Q    And, like before, if you'll take a

3    look at it and let me know if you recognize it,

4    please.

5          A    Okay.  Yes.

6          Q    Yes, you have.  Okay.  And this is

7    Plaintiffs' Responses and Objections to

8    Defendant's First Set of Request for Admissions;

9    is that right?

10         A    Yes.

11         Q    Okay.  If you'll look at page 2,

12   request number 4 says, beginning in 2010, DOE has

13   developed an online system to allow qualifying

14   companies to register and provide the data and

15   information required by the First Source Act.  Do

16   you see that?

17         A    Yes.

18         Q    Are you familiar with that online

19   system?

20         A    I am not.

21         Q    All right.  If you'll look at -- it

22   kind of goes over between pages 2 and 3, request

1    for admission number 5.  I'm sorry.  It says, the

2    online system referenced in request for admission

3    number 4 reduced the administrative burden on

4    qualified companies.  Do you see that?

5         A    Yes.

6         Q    It says denied.  Do you know why

7    plaintiffs denied that?

8              MR. KIERNAN:  If you know.

9              THE WITNESS:  I don't know.

10             BY MR. SAINDON:

11        Q    Okay.  And how about number 6?  It

12   says, the online system referenced above was

13   easier and less time-consuming.  And it was also

14   denied.  Do you know why plaintiffs denied that?

15        A    I do not know.

16             MR. SAINDON:  Let's take a little

17   break now.  I think we're done.  We'll see if Mr.

18   Kiernan has some follow-up, but give us about

19   five minutes.

20             THE WITNESS:  Okay.

21             (Whereupon, the above-entitled matter

22   went off the record at 10:41 a.m. and resumed at

1    10:47 a.m.)

2            MR. SAINDON:  I just have a couple of

3    follow-ups.

4            BY MR. SAINDON:

5        Q    Mr. Henley, I apologize.  I just want

6    to clarify.

7            Has Henley Construction ever done any

8    work in the District?

9        A    Yes.

10       Q    And what kind of work?

11       A    We've done schools.  It's like a

12   halfway house renovation.

13       Q    And these are projects to which the

14   First Source Act did not apply?

15       A    Did not apply.

16       Q    Okay.    How   long   has   Henley

17   Construction worked in the District?

18       A    How long have we been -- well, the

19   last job was probably eight or 10 years ago.

20       Q    You talked earlier about ABC Metro and

21   their meetings.   Are minutes kept of these

22   meetings?

1          A      Yes.

2          Q      Are those available to the public?

3          A      That I don't know.

4          Q      Do you know if those minutes were

5    produced to the District here?

6          A      That I -- I don't recall seeing them

7    in my papers that I reviewed.

8          Q      Does ABC Metro correspond -- send

9    mailings, documents to its members about the

10   First Source Act?

11         A      We have held seminars.  We send out

12   flyers, emails.

13         Q      And do you know if those flyers and

14   emails were produced to the District here?

15         A      Yes.

16                MR. SAINDON:  That's all I have.

17                MR. KIERNAN:  I have no questions.

18                (Whereupon, the above-entitled matter

19   went off the record at 10:49 a.m.)

20

21

22

**A**

**a.m** 32:22 33:1 34:19
**ABC** 4:20 6:19 7:14 8:2 10:8 11:9,13 11:18 13:6,17,21 14:22 15:4,8,13 15:21 16:1 17:6 17:21 18:9,22 20:1,20 23:8 25:9 25:15,22 28:10 29:15,22 30:6,11 33:20 34:8
**able** 23:14 25:20
**above-entitled** 32:21 34:18
**above-referred** 12:19 16:14 30:20
**accurate** 6:11
**accurately** 6:3,15
**Act** 4:21 9:11 12:9 17:17 18:5 19:4 19:14,20 23:15 24:9,13 25:21 26:10,14 27:7,11 27:13 28:12,18 29:5,17 30:2 31:15 33:14 34:10
**Action** 1:9
**actively** 29:3
**addition** 7:17
**administrative** 26:18,19,22 32:3
**admission** 32:1,2
**Admissions** 3:9 31:8
**advocacy** 11:22
**agency** 18:4
**ago** 33:19
**agreement** 5:14 25:2,2
**agreements** 23:20 24:21 25:1,5
**al** 1:7
**allow** 23:4 31:13
**allowed** 5:15
**amended** 26:10 29:4

**ANDREW** 2:9
**Andy** 4:15
**andy.saindon@ d...** 2:12
**answer** 6:1,14 26:17 30:9
**answered** 11:17
**answering** 6:15
**answers** 6:12
**apologize** 33:5
**APPEARANCES** 2:1
**appears** 22:14 29:3
**Applied** 19:16
**applies** 19:4 27:8 28:12,19
**apply** 23:14 26:11 33:14,15
**apprenticeship** 12:6
**approximately** 27:4
**area** 25:12
**aside** 9:14 16:8 20:20 21:13 27:21 30:12
**asked** 14:11 17:10 26:15
**asks** 23:17 25:18 25:18 30:5
**aspect** 14:11
**assembled** 15:2
**assist** 14:12 19:19
**associate** 10:16 11:1 17:4
**Associated** 1:6 4:18
**Association** 7:7,10
**assume** 6:14
**attended** 20:10
**attorney** 1:2,19 2:10 4:16
**available** 34:2
**average** 7:21
**aware** 13:16

**B**

**back** 8:4
**Balfour** 11:11

**barrier** 24:16 28:14 28:15,16
**based** 10:16
**Beatty** 11:12
**beginning** 31:12
**behalf** 1:20 2:2,8 11:18 13:21
**believe** 9:9 11:8 17:22 22:4 25:10
**belong** 25:11
**benefits** 27:19
**bid** 20:16,22 21:12 21:21 22:19 28:22 30:6,13
**biggest** 11:9,14
**binding** 13:17
**board** 6:20 7:5,15 8:4 14:9
**bottom** 20:14 30:4
**break** 6:7,9 32:17
**briefly** 26:12
**Brothers** 21:15
**Buddy** 4:10
**budget** 18:19
**build** 8:21
**Builders** 1:6 4:19
**building** 22:6
**buildings** 8:21
**burden** 32:3
**business** 26:4

**C**

**call** 4:19
**called** 1:18 4:4 5:10
**carpentry** 12:7
**case** 4:17,21 5:4
**category** 23:18
**certain** 13:10 27:15 27:15,17,19
**cetera** 7:19
**chairman** 6:20 7:5
**challenging** 4:20
**chapter** 1:6 4:18 17:5
**chart** 8:15
**choose** 22:7
**chooses** 25:11
**chosen** 19:8

**circumstances** 17:10
**City** 7:8 9:15
**Civ** 1:18
**Civil** 1:9
**claim** 5:5,11
**clarify** 33:6
**clarifying** 26:16
**Columbia** 1:1,10 4:16 9:3
**comes** 5:20
**comment** 17:22
**committee** 7:17
**companies** 20:15 21:5,6,9,12 22:7 22:17 23:19 24:7 24:12,19 25:3,6 25:13,19 29:12 31:14 32:4
**company** 5:6,11 8:3,6,13,14 9:18 15:20 23:8 26:13 28:2
**company's** 18:7
**compare** 17:20 18:12
**competitors** 21:22
**compliance** 19:20 20:7
**complied** 19:14
**comply** 18:5 24:8 24:13,14,15,17,18 26:13 29:16
**concrete** 12:6
**Conduct** 7:6
**CONRAD** 2:9
**consider** 9:16
**construction** 5:5 8:13,18 9:14,17 11:7 18:12,14 19:3,12 20:21 24:3 25:11,19 26:9 27:6 30:12 30:15 33:7,17
**Construction's** 18:16
**consultant** 20:6
**consultants** 20:2

**consulting** 19:19
**contention** 17:11
**CONTENTS** 3:1
**context** 23:2
**contract** 25:2 26:5
**contractor** 8:12
   10:18
**contractors** 1:7
   4:19 11:3 19:18
**correct** 13:11
**correspond** 34:8
**cost** 19:9 20:15
   27:3
**costs** 17:12 18:4,6
   18:8,13 20:5
**Council** 7:9
**counsel** 1:18 4:4
   7:11 14:10 16:9
**counties** 9:2
**couple** 33:2
**course** 8:16
**courses** 12:3,4
**court** 1:1 6:4
**CROSS** 3:2
**cumbersome** 24:17
**currently** 4:13 9:6
   19:5

**D**
**data** 31:14
**dates** 8:3
**Davis-Bacon** 27:11
   28:12,18,22
**DC** 1:14,20 2:5,11
   27:7
**Debra** 17:3
**decided** 20:22
**decision** 20:16
   21:12
**declined** 30:13
**defendant** 1:11,18
   2:8 4:5
**Defendant's** 3:9
   16:22 31:8
**denied** 32:6,7,14,14
**deposed** 4:22 5:19
   14:2
**deposition** 1:16 3:6

13:5 16:3,8
**description** 24:8
**designated** 13:9,21
   14:7
**developed** 31:13
**development** 11:21
   12:2 21:4,8
**difficult** 21:17
**DIRECT** 3:2 4:11
**directors** 8:5
**discovery** 15:16
**discuss** 13:10
   18:10 29:8
**discussed** 30:16
**discussion** 14:8
**District** 1:1,1,10
   4:16 9:2,3 15:18
   17:10 20:17 21:1
   21:14 22:8,10,16
   22:20,22 23:4,5
   23:10,12,13,17
   26:10 29:3 30:5
   33:8,17 34:5,14
**District's** 17:17
**document** 12:20
   16:15 17:9 30:21
**documents** 14:14
   14:19 15:2,2,14
   15:15,17,21 34:9
**DOE** 31:12
**draw** 7:1
**due** 10:21 21:14
**dues** 10:13,15,20
   11:5,6
**duly** 4:5
**duties** 7:2,4

**E**
**earlier** 14:1 33:20
**easier** 32:13
**economy** 22:6
**educate** 15:3,6,10
**education** 11:20
**efforts** 17:16
**EGS** 1:10
**eight** 33:19
**Electric** 30:11
**emails** 34:12,14

**employed** 4:13
**employees** 11:10
   20:17 21:2 26:16
**employment** 23:20
   24:21,22
**enforced** 29:4,10
**enter** 25:4 26:4,5
**entering** 23:20
   24:20
**entry** 24:17 28:16
**ESQ** 2:3,9,9
**et** 1:7 7:19
**event** 22:14
**events** 7:19
**examination** 1:18
   4:11
**examined** 4:6
**executive** 7:16
**exemption** 26:1
**exemptions** 25:20
**exhibit** 12:16,17,20
   16:12,15 19:17
   22:4 29:2 30:18
   30:21
**EXHIBITS** 3:4
**experience** 9:14
**explain** 12:1
**extent** 15:7

**F**
**facts** 17:10
**failure** 29:16
**fair** 28:10
**falter** 22:6
**familiar** 9:10 27:10
   31:18
**family** 9:18
**far** 8:3,4 11:10
**father** 10:1
**Fed** 1:18
**federal** 27:11
**fees** 10:19,21
**figure** 19:1
**filed** 4:17 5:11
**find** 13:20
**fined** 29:16
**firms** 19:19
**first** 3:9 4:5,20 9:11

10:3,4 12:9 13:20
   16:22 17:17 18:5
   19:4,13 22:5,16
   23:15 24:9,13
   25:21 26:10,14
   27:7 29:4,16 30:1
   31:8,15 33:14
   34:10
**fit** 24:7
**five** 32:19
**flip** 22:3 23:16 26:7
**flyers** 34:12,13
**follow-up** 32:18
**follow-ups** 33:3
**following** 24:4
**follows** 4:6
**founded** 9:20
**four-** 12:5
**Friday** 1:13
**future** 8:16

**G**
**gather** 14:19,21
   15:1
**general** 1:2,19 2:10
   8:12 19:18
**generally** 9:10 16:2
   27:13,20
**give** 6:5,11 32:18
**goals** 8:15 21:7
**goes** 11:2 31:22
**going** 12:16 16:11
**Good** 4:7
**government** 8:19
   22:1
**Great** 6:18
**guess** 23:6

**H**
**halfway** 33:12
**hand** 12:16
**hard** 6:4
**Hawkins** 30:10,14
**head** 12:12 21:9
**heard** 29:8,11
**held** 34:11
**help** 14:10,19
**Henley** 1:17 3:3 4:3

4:9 5:22 8:13,17
9:13,14,17 11:7
12:8 17:3 18:12
18:14,15 19:3,12
20:21 24:3 26:8,8
27:6,10 30:12,15
33:5,7,16
**Hensel** 11:12
**hire** 19:19 20:6
26:13
**hired** 20:2,12
**hold** 9:9 23:3
**Holland** 2:4
**honestly** 24:10
**hoping** 26:5
**house** 10:5 33:12
**huge** 21:4
**human** 17:16 18:19

**I**

**idea** 28:13
**identification** 12:21
16:16 30:22
**identify** 25:19
**important** 5:22 6:10
7:16
**increased** 17:11
18:6,8 19:9 20:15
**individual** 6:11
**industry** 22:6
**information** 14:22
18:2 23:18 31:15
**interests** 11:19
**interrogatories** 3:7
14:13 17:1
**interrogatory** 17:9
23:17,22 30:5
**involved** 8:1
**involvement** 14:6

**J**

**J** 2:3,9
**job** 8:9 33:19
**jobs** 30:7,13

**K**

**Keller** 21:15,20
**kept** 33:21

**kicks** 28:19
**Kiernan** 2:3 10:20
26:15,21 32:8,18
34:17
**kind** 8:17 31:22
33:10
**kinds** 7:18
**knew** 15:4
**Knight** 2:4
**know** 4:17 5:16 6:8
10:2 11:16 12:8
12:12 13:2 16:19
18:7,21 19:1,2
20:5,10,11,20
21:16,20 22:20
24:15,19 25:3,13
25:17,21 26:3
27:20 28:2,14,17
29:22 30:13,16
31:3 32:6,8,9,14
32:15 34:3,4,13
**knowing** 29:18
**knowledge** 15:7
20:3 30:3
**known** 14:22

**L**

**labor** 25:2
**lack** 21:14
**laid** 22:16 23:12
**larger** 11:3
**law** 27:20,22
**lawsuit** 5:13
**lay** 22:8 23:9,10
**layoff** 22:14
**layoffs** 22:7
**let's** 9:16 16:11
32:16
**level** 10:17
**levels** 27:18,19
**libraries** 8:20 22:2
**license** 9:9
**licensed** 9:8
**light** 5:21
**Likewise** 6:3
**listed** 24:3
**litigation** 14:7
**little** 32:16

**live** 22:8
**Livingston** 17:3
**LLP** 2:4
**lobby** 11:18
**local** 8:19 22:1
**located** 1:19
**long** 6:21 8:1 11:12
12:8 13:6 17:15
20:21 30:10,14
33:16,18
**look** 12:18 13:1,2
13:14 15:13,20
16:12,18 20:13
30:18 31:3,11,21
**looked** 15:15
**lower** 18:13
**lucrative** 22:22

**M**

**mailings** 34:9
**majority** 8:19
**management** 11:20
**mark** 12:17
**marked** 12:20
16:13,15 30:19,21
**Maryland** 9:4 23:9
**masonry** 12:7
**matter** 1:5 32:21
34:18
**maximize** 22:9,19
**mean** 10:20 12:1
14:12 22:12,21,22
**meet** 7:8,14,15
17:16
**meetings** 7:6,7,16
7:18 14:9 33:21
33:22
**meets** 7:15,17
**member** 8:3,6 11:2
21:5 23:8
**members** 10:8,13
10:16 11:9,14
15:21 16:1 17:21
18:4,9,22 20:1,10
20:20 21:10,16,19
25:9,15,22 28:11
29:8,15,22 30:6
30:11,15 34:9

**members'** 11:19
30:17
**mentioned** 21:13
**met** 7:11
**metro** 4:20 6:19
7:14 8:2 10:8
11:18 13:6,17,22
14:22 15:4,8,13
15:21 16:1 17:6
17:21 18:4,9,22
20:1 23:8 25:9,22
28:11 29:22 30:11
33:20 34:8
**Metro's** 11:9,14
29:15 30:6
**Metropolitan** 1:6
4:18
**middle** 6:9 19:18
**Miller** 11:12 13:6
17:15 20:21 30:10
30:14
**minimum** 28:17
**minutes** 32:19
33:21 34:4
**moment** 5:21 20:4
30:17
**money** 26:12
**monitoring** 19:20
**monthly** 7:15,17
28:4
**morning** 4:7

**N**

**name** 4:8,15 21:8
24:12
**names** 23:19 30:17
**need** 6:7
**networking** 7:19
11:22
**Nickname** 4:9
**nod** 6:3
**notice** 3:6 13:5
**number** 11:10 17:9
23:17 24:11 30:5
31:12 32:1,3,11
**NW** 1:19 2:4,10

**O**

**Objections** 3:8
16:22 31:7
**objective** 23:3
**obviously** 14:8
**occasions** 7:12
**Ocean** 9:15
**October** 1:13
**offer** 12:3,7
**office** 1:2,19 2:10
28:5
**Okay** 4:15 5:10,12
5:18,22 6:18 7:4
9:7,17 10:2 12:14
14:16,19,21 15:3
15:13,20 16:7
17:8 18:3,11,15
18:21 20:9,13
21:11 23:6 24:19
26:7,21 28:17
31:5,6,11 32:11
32:20 33:16
**once** 5:3
**ones** 28:4
**online** 31:13,18
32:2,12
**operate** 9:1,4
**opportunities**
11:22 22:9,19
23:5
**opportunity** 23:13
**oppose** 23:19
24:20 25:4
**order** 22:9,18
**original** 12:10,11
**OSHA** 12:4
**owner** 5:7,9 26:4
**owners** 19:18

**P**

**P** 1:18
**P-R-O-C-E-E-D-I-...**
4:1
**page** 3:6 17:8 19:17
20:14 22:4 23:16
24:5 26:8 29:1
30:4 31:11
**pages** 31:22
**paid** 27:15

**papers** 34:7
**paragraph** 22:5
**part** 5:14 23:22
**parties** 1:20
**PAUL** 2:3
**paul.kiernan@ hk...**
2:6
**pay** 10:13 11:7
**payment** 27:17
**Pennsylvania** 9:5,9
**people** 12:5 22:8,14
**percent** 17:15
18:18 19:1 25:10
**percentage** 17:20
18:10,11,16 28:13
**person** 27:1 28:8,9
**personally** 15:1
**perspective** 18:7
**Phelps** 11:12
**place** 12:9 22:22
**places** 23:1
**Plaintiff's** 3:8
**plaintiffs** 1:8 2:2
13:6 20:14 25:19
30:10 32:7,14
**plaintiffs'** 16:21
17:11,14 31:7
**please** 4:8 6:5,13
16:13 29:2 31:4
**Plumbing** 12:6
**political** 11:22
**position** 6:18
**potentially** 14:2
**preparation** 16:3,4
**prepare** 16:8
**preparing** 14:12
**present** 1:20
**president** 8:12,15
17:4
**probably** 11:2
18:17 21:15 33:19
**produced** 34:5,14
**program** 12:6
**project** 5:9 19:6,13
28:19,21
**projects** 10:3,4
19:4,9 21:20
23:13 26:9 27:7

27:15 28:11 33:13
**properly** 23:7
**provide** 11:20
31:14
**provided** 15:16,17
**prudent** 26:5
**public** 34:2
**pursuant** 1:18
**pursue** 19:8
**put** 27:1

**Q**

**qualified** 20:17
21:1,14 32:4
**qualifying** 31:13
**question** 6:9,12,14
11:11 23:6 25:18
**questions** 6:11
15:12 34:17

**R**

**R** 1:18
**range** 10:19
**read** 15:12
**reading** 23:2
**reason** 21:21
**recall** 30:17 34:6
**recognize** 31:3
**record** 4:8 32:22
34:19
**recorded** 6:2
**reduced** 32:3
**refer** 27:14
**referenced** 32:2,12
**regardless** 23:11
**register** 31:14
**regularly** 28:11
**remember** 14:3
21:17
**renovation** 33:12
**repeat** 6:13 15:5
**report** 28:3,4
**reporter** 6:4 12:17
**reporting** 27:21
28:1
**represent** 7:6
**request** 31:8,12,22
32:2

**requested** 30:1
**Requests** 3:9
**required** 22:7 31:15
**requirements**
17:16 26:11 27:22
28:1,18 29:4
**requires** 27:17,21
**resident** 20:17 21:1
23:12
**residents** 21:15
23:9,10
**resources** 17:16
18:19
**respective** 1:20
**response** 17:14
24:4
**responses** 3:8 6:1
6:6 14:13,16
16:21 31:7
**result** 5:12 20:12
**resumed** 32:22
**revenue** 10:17
**revenues** 11:14
**reviewed** 14:15,16
34:7
**right** 11:8 13:7,14
13:18 16:11 17:1
19:16 22:3 23:16
29:2 30:3 31:9,21
**RISHER** 2:9
**Robert** 1:17 3:3 4:3
4:9
**Rockville** 10:7
**roughly** 10:9 17:15

**S**

**safety** 11:21 12:3
**Saindon** 2:9 4:7,12
4:15 10:21 11:4
12:22 16:17 26:19
27:2 31:1 32:10
32:16 33:2,4
34:16
**salary** 7:1
**saying** 22:13 23:7
**says** 19:18 22:5,15
22:18 24:20 26:8
29:2 31:12 32:1,6

32:12
**scale** 27:14
**school** 26:9
**schools** 8:20 22:2
  33:11
**secure** 25:20 26:1
**see** 17:12,17 19:21
  20:18 22:10 23:20
  24:2,4 29:5 30:7
  31:16 32:4,17
**seeing** 34:6
**seen** 13:2 16:19
**seminars** 20:11
  34:11
**send** 34:8,11
**sense** 6:16
**sentence** 22:5
**set** 3:9 8:15 16:22
  31:8
**settlement** 5:14
**shortage** 20:16
  21:1
**Simultaneous** 5:17
**sit** 21:8
**somebody** 20:12
  28:5
**sorry** 5:8 10:22
  19:10,16 32:1
**sounds** 23:3
**Source** 4:21 9:11
  12:9 17:17 18:5
  19:4,14 23:15
  24:9,13 25:21
  26:10,14 27:7
  29:5,16 30:1
  31:15 33:14 34:10
**South** 1:19 2:11
**speak** 7:9 16:1
**speaking** 5:17
**specific** 21:11
  24:12
**specifically** 25:14
**specifications**
  28:21
**spelled** 28:20
**spend** 18:22
**spends** 17:15
**Spring** 14:4,5

**staff** 15:2 26:13,17
  26:18,20,22
**start** 10:3
**state** 4:8
**statement** 22:15
  23:11
**STATES** 1:1
**strategic** 21:7
**Street** 1:19 2:4,10
**Suite** 1:19 2:5,11
**summer** 9:15 14:4
**supporting** 17:11
**sure** 6:5 11:16 15:6
**surrounding** 9:2
**sworn** 4:5
**system** 31:13,19
  32:2,12

---
**T**
---
**take** 6:5,8 12:18
  13:1,1,14 16:18
  20:13 26:12 30:18
  31:2 32:16
**talk** 18:3 21:4 24:22
**talked** 18:6 21:16
  21:17 26:11 29:12
  29:19,21 33:20
**talking** 16:9
**talks** 26:16
**tell** 21:11 26:17
**term** 6:21
**terms** 11:14
**testified** 4:6
**testify** 5:10 13:13
  13:21 14:7,11
**testimony** 13:16
**Thank** 26:21
**thing** 16:18
**think** 11:1,17 24:16
  25:1 26:11 32:17
**third-party** 19:19
  20:2,6
**thought** 24:16
**time** 5:18 6:7 21:18
**time-consuming**
  32:13
**times** 5:2
**today** 7:7 16:8

**top** 12:12 21:9 29:2
**topic** 14:8 21:3,5,18
**topics** 13:10,13,18
  14:22 15:4,7 16:2
**tough** 11:11
**trades** 12:5 27:15
**train** 12:5
**training** 11:21,21
  12:2,3,4
**transcript** 6:3
**true** 29:7,9
**trust** 12:4
**try** 24:8,13,14,15,18
**turn** 17:8 19:17
  29:1
**two** 21:13
**type** 22:1
**Typically** 28:20

---
**U**
---
**uh-huh** 6:2
**understand** 6:11,13
  6:14 13:10 19:11
**union** 25:1,6,12
**UNITED** 1:1

---
**V**
---
**v** 1:9
**variety** 23:18
**vary** 10:16
**verbal** 6:1,5
**Virginia** 9:4,8 23:9
**voluntarily** 25:4

---
**W**
---
**wage** 27:14
**wages** 27:16,18,19
**waiver** 26:1,6 30:1
**waivers** 25:20
**want** 33:5
**Washington** 1:6,14
  1:20 2:5,11 4:18
**way** 29:18
**We'll** 30:18 32:17
**we're** 6:9 32:17
**we've** 30:16 33:11
**went** 32:22 34:19
**West** 9:8

**whatnot** 20:11
**witness** 3:2 4:4,9
  11:1 26:22 32:9
  32:20
**work** 8:17,20 9:5,13
  19:3 20:16,22
  21:13 22:9,19,20
  23:1,5,13 26:9
  27:6 28:11 33:8
  33:10
**worked** 9:15 19:6
  19:13 33:17
**workers** 22:15,16
  23:4 24:10
**workforce** 11:21
  12:2 21:4,7,8
  25:11
**wouldn't** 23:12,14
**written** 14:13,17

---
**X**
---
**Y**
---
**yeah** 8:8 17:7 21:3
  21:18 25:7
**year** 6:22 7:20 12:6
  14:1
**Yearly** 11:5,6
**years** 12:14 33:19

---
**Z**
---
**0**
---
**1**
---
**1** 3:6 12:17,20
  13:13
**1,500** 11:2
**10** 12:14 29:1 30:4
  33:19
**10:41** 32:22
**10:47** 33:1
**10:49** 34:19
**1100** 2:5
**12** 3:6
**12-00853** 1:10
**120,000** 27:5
**13** 25:10
**14** 30:5

**15** 7:22
**16** 3:7
**17th** 2:4
**1960s** 8:4,7
**1964** 9:21

---

**2**

**2** 3:7 16:13,15
   19:17 22:4 29:2
   31:11,22
**20001** 1:20 2:11
**20006** 2:5
**2010** 8:5 31:12
**2015** 10:9
**2016** 1:13 6:20
**202** 2:6,12
**21** 1:13

---

**3**

**3** 3:8 13:14 30:19
   30:21 31:22
**30** 3:9 17:15 18:22
**30(b)(6)** 1:19

---

**4**

**4** 3:3 13:14 31:12
   32:3
**441** 1:19 2:10
**4th** 1:19 2:10

---

**5**

**5** 13:14 17:8 32:1
**5,000** 11:8
**550** 10:10,11 21:16
   24:11 30:15

---

**6**

**6** 17:9 19:17 20:14
   32:11
**6,500** 11:3
**60** 18:18
**600** 1:19 2:11
**663-7276** 2:6

---

**7**

**7** 22:4
**724-6643** 2:12

---

**8**

**8** 23:16
**800** 2:4

---

**9**

**9** 23:17

C E R T I F I C A T E

This is to certify that the foregoing transcript

Deposition of: Robert Henley

In the matter of: Assoc Builders and Contractors v. DC

Before: US District Court for the District of Columbia

Date: 10-21-16

Place: Washington, DC

were duly recorded and accurately transcribed under
my direction; further, that said transcript is a
true and accurate record of the proceedings; and
that I am neither counsel for, related to, nor
employed by any of the parties to this action in
which this deposition was taken; and further that I
am not a relative nor an employee of any of the
parties nor counsel employed by the parties, and I
am not financially or otherwise interested in the
outcome of the action.

_____
Court Reporter

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        www.nealrgross.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METROPOLITAN WASHINGTON CHAPTER, ASSOCIATED BUILDERS AND CONTRACTORS, INC., *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | Civil Action No. 12‑ 00853 (EGS) |

NOTICE OF DEPOSITION OF PLAINTIFFS MILLER & LONG COMPANY, INC.
AND METROPOLITAN CHAPTER, ASSOCIATED BUILDERS AND
<u>CONTRACTORS, INC.</u>

TO:   Miller & Long Company, Inc.
Metropolitan Washington Chapter, Associated Builders & Contractors, Inc.
c/o Paul Kiernan, Esq.
Holland & Knight LLP
800 17th Street N.W., Suite 1100
Washington, DC 20006
paul.kiernan@hklaw.com

Pursuant to Fed. R. Civ. P. 30(b)(6), the District of Columbia will take the

deposition of plaintiff Miller & Long Company, Inc. ("Miller & Long") and plaintiff

Metropolitan Chapter, Associated Builders and Contractors, Inc. ("ABC Metro"), at

the offices of defendant's counsel specified below, on October 21, 2016, beginning at

10:00 A.M. (for ABC Metro), and on October 25, 2016, beginning at 10:00 A.M. (for

Miller & Long), continuing until completed, including adjournments to such times

and places as may be required.



EXHIBIT
1

1

The depositions will occur before an officer or other person duly authorized to administer oaths, and will be recorded by audio and stenographic means.

In accordance with Rule 30(b)(6), plaintiff Miller & Long and plaintiff ABC Metro, are each required to designate and fully prepare one or more officers, directors, managing agents or other persons with the most knowledge concerning the following designated matters, or other persons who consent to testify on their respective behalves, and whom plaintiffs will fully prepare to testify regarding the following designated matters and such information that is known or reasonably available to those plaintiffs:

## SUBJECTS OF DEPOSITION

1. Plaintiffs' Responses and Objections to the Defendant's First Set of Interrogatories and Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Admission, and the efforts to respond to them.

2. Plaintiff Miller & Long's efforts to comply with the First Source Act and costs associated with those efforts.

3. Plaintiff ABC Metro's members' efforts to comply with the First Source Act and costs associated with those efforts.

4. Plaintiff ABC Metro's members' efforts to obtain a waiver from the requirements of the First Source Act.

5. Plaintiff ABC Metro's members who decided to "not bid on jobs" as that phrase is used in paragraph 85 of the Amended Complaint.

6. Plaintiff Miller & Long's operations over the last five years, including financial information (revenue, profits, losses), projects in the District (including those covered by the First Source Act), employee hiring and firing, and corporate structure.

DATE: October 12, 2016.      Respectfully submitted,

                                       KARL A. RACINE
                                       Attorney General for the District of Columbia

                                       ELIZABETH SARAH GERE
                                       Deputy Attorney General
                                       Public Interest Division

                                       */s/ Toni Michelle Jackson*
                                       TONI MICHELLE JACKSON
                                       D.C. Bar No. 453765
                                       Chief, Equity Section

                                       */s/ Andrew J. Saindon*
                                       ANDREW J. SAINDON, D.C. Bar No. 456987
                                       Senior Assistant Attorney General
                                       441 Fourth Street, N.W., Suite 600 South
                                       Washington, D.C. 20001
                                       Telephone: (202) 724-6643
                                       Email: andy.saindon@dc.gov

## CERTIFICATE OF SERVICE

I certify that, on October 12, 2016, a copy of this Notice was served by electronic mail to:

Paul J. Kiernan, Esq.
Christine N. Walz, Esq.
HOLLAND & KNIGHT, LLP
800 17th Street, NW

Suite 1100
Washington, D.C. 20006
Paul.Kiernan@hklaw.com
Christine.Walz@hklaw.com

/s/ Andrew J. Saindon
ANDREW J. SAINDON
Senior Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| METROPOLITAN WASHINGTON CHAPTER, ASSOCIATED BUILDERS AND CONTRACTORS, INC., et al., | ) ) ) ) | |
| Plaintiffs | ) | No. 12-CV-00853 (EGS) |
| v. | ) ) | |
| DISTRICT OF COLUMBIA, | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiffs[1] Metropolitan Washington Chapter, Associated Builders and Contractors, Inc. ("ABC-Metro Washington"), Miller & Long Co., Inc., Emmett Morris, Jr., and Dairon Upshur reply to the District's First Set of Interrogatories, as follows:

### GENERAL OBJECTIONS

1.      Plaintiffs object to the discovery requests, including the definitions and instructions, to the extent they (a) contain requests that exceed the scope and requirements of the applicable federal and local rules and (b) purport to require discovery not provided for by these rules, including but not limited to discovery on subjects not at issue in this case.

2.      Plaintiffs object to the discovery requests to the extent they seek information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other rule of privilege or confidentiality provided by law.

3.      In responding to this discovery, Plaintiffs do not waive the foregoing general objections or the specific objections that are set forth in the responses to particular requests.

---

[1]      Hawkins Electrical Construction of Washington DC, LLC is withdrawing as a plaintiff.



By making their responses, Plaintiffs do not concede that the information requested is relevant to this action or is calculated to lead to the discovery of admissible evidence. Plaintiffs expressly reserve the right to object to further discovery into the subject matter of any of these requests, to the introduction into evidence of any response or portion thereof, and to supplement their responses should further investigation disclose responsive information.

## INTERROGATORIES

**INTERROGATORY NO. 1**: Identify each person, other than a person intended to be called as an expert witness or your attorneys, having knowledge or information relating to the allegations set forth in the Amended Complaint, and describe that knowledge or information for each person identified.

**RESPONSE:** Mike Burlas, Chief Financial Officer of Miller & Long, has information about the impact of the First Source Act on business, including what steps the company has taken to comply with the Act regarding tracking of employees, bidding on work, assignment of tasks, recruiting and retention programs, and experience with the Act. Mr. Burlas has also served on the Board of ABC-Metro Washington and has information about how the members of ABC-Metro Washington have been affected by the Act. He is aware of the lobbying and educational efforts undertaken by ABC-Metro Washington and information received from membership about the impact of the Act.

Otto Girr, Vice President for Human Resources at Miller & Long, is responsible for human resources and employee-training programs at the company. He has information about the hiring efforts and attrition rates involving District of Columbia residents employed by Miller & Long. He also has information about the steps Miller & Long takes to comply with the Act and the costs associated with those efforts. He can also testify about the specific work

2

situations involving Mr. Morris and Mr. Upshur, who are both employees of Miller & Long.

Mr. Morris is employed by Miller & Long as a qualified Carpenter Foreman. He has information about his work history and qualifications. He can testify about situations and bids in which he is not allowed to participate because he is not a District of Columbia resident.

Mr. Upshur is employed by Miller & Long as a Construction Safety Manager. He has information about his work history and qualifications. He can testify about situations and bids in which he is not allowed to participate because he is not a District of Columbia resident.

Various District of Columbia officials have information about the First Source Act program, how the First Source list is compiled, how the law is enforced, how and to whom waivers or exemptions are granted, and the number of projects affected by the law. Included among these officials are the Director of the Department of Employment Services; Drew Hubbard, formerly of DOES; the workforce development specialists in DOES who work in particular on the construction industry aspect of the First Source Program (for example, Terry Kenner and DeCarlo Washington); and other individuals in the Department to be identified.

Plaintiffs reserve the right to supplement this interrogatory based on additional inquiry as well as discovery that may be provided by the District.


**INTERROGATORY NO. 2**: Identify each person, by discovery request, who was contacted, supplied information, or drafted the response or any part of any response, for all discovery requests in this matter.

**Response:**      The responses were drafted by counsel for the Plaintiffs with the review and input of (a) Mike Burlas and Otto Girr from Miller & Long, (b) Debbie Livingston and Buddy Henley from ABC-Metro Washington. The Miller & Long representatives provided information in particular about Interrogatories 5-10, 14. In addition,

3

Eric Shatzer from Hawkins Electrical of Washington, DC, LLC provided information for

Interrogatory No. 14.

**INTERROGATORY NO. 3**: Identify each person you expect to call as an expert witness and state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and attach to your answers any written report made by the expert concerning those findings and opinions.

**Response:**  Plaintiffs have not yet identified an expert or determined whether they

will call one. This answer will be supplemented as required.

**INTERROGATORY NO. 4**: Identify any oral or written communications between Plaintiffs and the District (or any person, agent or representative purporting to act on its behalf) relating to the claims as alleged in the Amended Complaint. Describe the content of each communication, including the date, and provide each person's full name, address and telephone number, and position or title.

**Response:**  Plaintiffs object to the Interrogatory as burdensome and as seeking

information that is not relevant to any claim or defense in this matter. The claim that the

Amended Act is unconstitutional under the Privileges and Immunities Clause or under the

Due Process Clause is not affected by communications between any plaintiff and any District

official or agent. Without waiving the objection, plaintiffs state that when the amendment of

the First Source Act was being discussed before the Council, representatives for ABC-Metro

Washington spoke and wrote against the bill, identifying the impacts the amended legislation

would have on their members' businesses and their own business. Copies of the written

materials are being produced in response to the document requests.

**INTERROGATORY NO. 5**: State all facts and circumstances supporting your contention that "[t]he individual plaintiffs . . . are at a significant disadvantage" as alleged in paragraph 14 of the Amended Complaint.

**Response:**  Because the individual plaintiffs are not residents of the District of

Columbia, they cannot be included on the First Source List. They cannot be counted towards

the goals set forth in the Act or in a First-Source Agreement for a particular project. They are therefore not eligible to be included by Miller & Long in its bids or proposals for projects covered by the First Source Act for which certain quotas are required. They are treated differently from their peers for purposes of being included on such projects, which places them at a significant disadvantage based not on their skills or talents but based solely on where they live. And individuals who live in Maryland or Virginia are more susceptible to being laid off or let go in the event that work subject to First-Source requirements predominates in the company's job list.

**INTERROGATORY NO. 6**:  State all facts and circumstances supporting your contention of "increased costs" as alleged in paragraph 16 of the Amended Complaint.

**Response:**  Taking Miller & Long as an example, the company spends roughly 30% of its human-resources efforts to meet the unique requirements of the District's First Source Act. That is, the human-resources personnel of the company spend time participating in job fairs and similar recruiting efforts; compiling and tracking unique employee information; preparing, submitting, and following up on reporting requirements—all for First Source requirements. Similar efforts are not required to recruit and manage employees resident in Maryland or Virginia. Annually, on this one aspect alone, Miller & Long spends close to $200,000 on just the cost to the company of the additional work of its human-resources department to deal with First Source obligations. And that cost does not include the costs of actually running job fairs or advertising for positions limited to District residents or conducting apprenticeship programs or paying wages to new employees. The apprenticeship requirements under District law are themselves also expensive to operate.

Further, there is a substantial increased cost associated with the attrition rate for

District residents. According to its records, Miller & Long hired 653 District residents over the last four years and, during that same time, lost 531 District residents. That attrition rate of 81% is far higher than the attrition rate associated with its Maryland or Virginia hires. Moreover, because the District's labor pool has historically had less experience with construction work, District-resident employees tend to have a higher on-job accident rate than their peers from other jurisdictions. Miller & Long has had to hire additional staff just to compile data on First-Source compliance and to prepare required reports. All told, there is a higher labor cost associated with the employment of District residents than residents of other jurisdictions.

Subcontractors dealing with owners and general contractors subject to First Source requirements must also incur additional costs to comply with those entities' requirements. For example, owners and general contractors have hired third-party consulting firms to assist them in monitoring compliance with the Act and with the percentages and quotas set forth in the Act. Those entities and monitors want personal information about the subcontractors' employees—for example, social-security numbers and telephone numbers—so that they can monitor the employees. Moreover, an owner will hold back final payment to a subcontractor until the District's First-Source office gives the all-clear to the owner regarding compliance. During the time that the District is reviewing final compliance, the subcontractors are having final payments withheld by owners, driving the subcontractors' cost of borrowing and of the project up. This is another increased cost from the Act—and one that is virtually impossible to budget for at the front end because the scope and duration of the compliance review is unknown at the front end of the project.

Another increased cost to the companies is the decision not to bid on work because of a shortage of qualified District-resident employees. Miller & Long, and most other similarly

6

situated companies, do not employ enough District residents to meet multiple First-Source projects—not because they don't want to employ such residents, but simply because there are not enough such residents. The District itself estimates that there are about 1300 carpenters living in the District, entry-level carpenter being generally considered one of the trades that requires the least training or prior experience to fill. The figures regarding more skilled or more senior trades—ironworkers, concrete finishers, master electricians, crane operators—are smaller and smaller. As a result, companies that employ District-resident tradespeople and craftspeople that are deployed on First-Source-covered projects cannot take on additional work covered by the Act. And should the building industry economy falter and layoffs were required, companies would choose to lay off people who do not live in the District in order to maximize their opportunities to bid for work in the District.

One other cost that companies have observed has to do with the reality of the area housing market. The District remains an expensive jurisdiction in which to live. Construction workers who live in the District and may receive some form of housing subsidy from the District stand to lose that benefit when they become employed and become more financially stable. But the companies receive no "credit" for helping a District resident with a job and with promotions. Instead, once that employee is on his or her feet and drawing a paycheck, and the employee chooses to or is essentially required to move out of the District (especially if the housing subsidy is lost), the employee becomes another out-of-District employee that the company cannot count on for First Source requirements. Miller & Long, for example, has 5-10 people every month who stay employed by the company but who move out of the District to nearby Maryland or Virginia for economic reasons or for more affordable housing. The company's success in employing District residents winds up counting against the company when the next First-Source Act job opportunity comes along.

**INTERROGATORY NO. 7**: State with particularity the efforts encompassed by "screening" as that term is used in paragraph 16 of the Amended Complaint.

**Response:**  The reference in Paragraph 16 refers to efforts made at job fairs and similar events to identify potential employees who reside in the District. The "screening" includes inquiries into their skills sets, past experience, and educational background.

**INTERROGATORY NO. 8**: State all facts and circumstances supporting your contention of "additional costs" as alleged in paragraph 17 of the Amended Complaint.

**Response:** See Response to Interrogatory No. 6.

**INTERROGATORY NO. 9**: State all facts and circumstances supporting your contention of "a competitive disadvantage" as alleged in paragraph 18 of the Amended Complaint, including identifying any "construction companies that do not try to comply with the Act, that do not oppose entering into Employment Agreements that link hiring to residency, or that are able to secure waivers or exemptions."

**Response:**  The "competitive disadvantage" referred to in Paragraph 18 refers to companies that choose to gamble on later obtaining a waiver from First-Source requirements as well as companies who do not share the philosophy of ABC-Metro Washington members regarding freedom of employment. Because there are simply not enough District-resident tradespeople and craftspeople to meet the targets and quotas of the current Act (assuming that the District required compliance with the Act for the relevant projects), a subcontractor knowing that it did not employ sufficient people to meet those targets and quotas is faced with the question: Do I bid on work and hope I can secure a waiver later or do I not bid on the work because I know I cannot satisfy the requirements? Companies that are not willing to gamble on the waiver that may or may not be granted later by the District are at a disadvantage in the market.

8

Henley Construction, for example, does a substantial business elsewhere in construction of school buildings (K-12) but it does not work on school projects in the District where the Amended First Source Act requirements might apply. The Act is a barrier to the company's ability to bid on work and it does not have the money to hire the employees and the administrative staff that would be necessary to deal with the requirements of the Amended Act.

**INTERROGATORY NO. 10**:  State all facts and circumstances supporting your contentions of "significant efforts" and "reasons beyond their control" as alleged in paragraph 22 of the Amended Complaint, in relation to Miller & Long.

**Response:**  See Response to Interrogatory No. 6.

**INTERROGATORY NO. 11**: State all facts and circumstances supporting your contention that plaintiffs have been "discriminated against" as alleged in paragraph 23 of the Amended Complaint.

**Response:**  Plaintiffs object to Interrogatory No. 11 to the extent that the question asks plaintiffs to draw the legal conclusion about "discrimination." Without waiving the objection, when a person is denied his constitutional rights under the privileges-and-immunities clause or the due-process clause, plaintiffs submit that that constitutes unlawful discrimination. See also Responses to Interrogatories 5 and 6.

**INTERROGATORY NO. 12**: State all facts and circumstances supporting your contention that MWC's members will incur damages as alleged in paragraph 77 of the Amended Complaint, specifying which members and detailing which subcategories of alleged damages were or are being incurred.

**Response:**      Plaintiffs object to the Interrogatory to the extent that it treats the allegations of Paragraph 77 as "damages suffered" rather than, as alleged, damages that flow from the requirements of the Act and its application to the members of ABC-Metro

9

Washington. The case was filed as the new Act was coming into effect, As a practical matter, it appears that the District has not actively enforced the requirements of the Amended Act. Instead, it has found ways to "grandfather in" projects to the old Act or to create exceptions or exclusions for projects that would otherwise be subject to the Amended Act. However, when this lawsuit is resolved or if there is a change in the enforcement priorities of the District, companies and individuals will still be subject to discrimination based on employees' residences.

Notwithstanding the District's lack of vigorous enforcement, Miller & Long, for example, has incurred increased labor and other costs associated with the Act, as detailed in response to other interrogatories.

**INTERROGATORY NO. 13**: State with particularity any incident where the individual plaintiffs were "exclude[d]" from a "District job" as those terms are used in paragraph 84 of the Amended Complaint.

**Response:**  By definition, the individual employees are not eligible to be counted towards compliance with First Source Act work.

**INTERROGATORY NO. 14**: State with particularity which of MWC's members have "not bid on jobs" as that phrase is used in paragraph 85 of the Amended Complaint, identifying which companies and the details of each incident.

**Response:**  Plaintiffs object to Interrogatory No. 14 to the extent that it treats the statement in Paragraph 85 as a report about "damages suffered" rather than, as alleged, a statement about damages that will flow from the Act if enforced as written. Without waiving the objection, plaintiffs state that Miller & Long would be unable to perform simultaneously two or more projects for which the First Source requirements applied. It therefore would not bid on performing such work.

As recently as May 2016, Miller & Long declined to bid on a job because of the First

Source Act requirements. That job is known as the "WASA F1 Block Cinema" job.

ABC-Metro Washington member Hawkins Electric has withdrawn entirely from seeking work on projects to which First Source applies. After the enactment of the Amended Act, and in light of the shortage of District residents able to perform the work, Hawkins will not risk the costs and the potential penalties associated with seeking such work in the District. Hawkins has essentially been driven out of that segment of the market because of the Amended Act.

**INTERROGATORY NO. 15**: If you contend that the District (or anyone acting on its behalf) has made any admissions or declarations against interest which pertain to this litigation, describe each admission or declaration against interest, include the identity of any person involved, the date it was made, and identify all documents relating or referring to any admission or declaration against interest.

**Response:**  Plaintiffs are not aware of any.

Pursuant to the requirements of 28 U.S.C. § 1746(b), I hereby declare under penalty of perjury that the foregoing Responses to Defendant's Interrogatories are true and correct to the best of my knowledge, information, and belief.

Executed on June **24**, 2016.

Metropolitan Washington Chapter,
Associated Builders and Contractors, Inc.

By: _Debra D. Livingston_

#46959519_v1

Pursuant to the requirements of 28 U.S.C. § 1746(b), I hereby declare under penalty of perjury that the foregoing Responses to Defendant's Interrogatories are true and correct to the best of my knowledge, information, and belief.

Executed on June 2_4, 2016.

Miller & Long Co., Inc.

By: _M. Au_____
    MICHAEL BULLAS, CFO

Dated: June 27, 2016

Respectfully submitted,

/s/ Paul J. Kiernan
Paul J. Kiernan (Bar #385627)
Christine N. Walz (Bar # 996643)
HOLLAND & KNIGHT, LLP
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
(202) 663-7276 (phone)
(202) 955-5564 (facsimile)
Paul.Kiernan@hklaw.com (email)
Christine.Walz@hklaw.com(email)

## CERTIFICATE OF SERVICE

I hereby certify that, on this 27th day of June, 2016, a true and accurate copy of the foregoing was served via email and first class mail, postage prepaid, on the following:

Andrew J. Saindon
Toni Michelle Jackson
Senior Assistant Attorney General
441 Fourth Street, N.W.
Suite 600 South
Washington, D.C. 20001

/s/ Paul J. Kiernan
Paul J. Kiernan

13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

METROPOLITAN WASHINGTON CHAPTER,       )
ASSOCIATED BUILDERS AND                )
CONTRACTORS, INC., et al.,             )
                                       )
                    Plaintiffs         )     No. 12-CV-00853 (EGS)
        v.                             )
                                       )
DISTRICT OF COLUMBIA,                  )
                                       )
                    Defendant.         )
                                       )

## PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSIONS

Plaintiffs[1] Metropolitan Washington Chapter, Associated Builders and Contractors, Inc. ("ABC-Metro Washington"), Miller & Long Co., Inc., Emmett Morris, Jr., and Dairon Upshur reply to the District's First Set of Request for Admissions, as follows:

### GENERAL OBJECTIONS

1.      Plaintiffs object to the discovery requests, including the definitions and instructions, to the extent they (a) contain requests that exceed the scope and requirements of the applicable federal and local rules and (b) purport to require discovery not provided for by these rules, including but not limited to discovery on subjects not at issue in this case.

2.      Plaintiffs object to the discovery requests to the extent they seek information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other rule of privilege or confidentiality provided by law.

---

[1]      Hawkins Electrical Construction of Washington DC, LLC is withdrawing as a plaintiff.

EXHIBIT
3

3.      In responding to this discovery, Plaintiffs do not waive the foregoing general objections or the specific objections that are set forth in the responses to particular requests.  By making their responses, Plaintiffs do not concede that the information requested is relevant to this action or is calculated to lead to the discovery of admissible evidence. Plaintiffs expressly reserve the right to object to further discovery into the subject matter of any of these requests, to the introduction into evidence of any response or portion thereof, and to supplement their responses should further investigation disclose responsive information.

## REQUESTS FOR ADMISSIONS

**REQUEST NO. 1:**  No plaintiff has been fined for a violation of the First Source Act.

**Response:**  Admit.

**REQUEST NO. 2:**  No member of plaintiff MWC has been fined for a violation of the First Source Act.

**Response:**  Plaintiffs are without information sufficient to form a belief as to the truth of this request.

**REQUEST NO. 3:**  No member of plaintiff MWC who requested a waiver under the First Source Act has been denied a waiver.

**Response:**  Plaintiffs are without information sufficient to form a belief as to the truth of this request.

**REQUEST NO. 4:**  Beginning in 2010, DOES developed an online system to allow qualifying companies to register and provide the data and information required by the First Source Act.

**Response:**  Admit.

#46928422_v1

**REQUEST  NO.  5:**   The online system referenced in Request for Admission No. 4 reduced the administrative burden on qualifying companies, as compared to when the data and information was required to be submitted on paper.

**Response:**  Denied.


**REQUEST  NO.  6:**   The online system referenced in Request for Admission No. 4 is easier and less time consuming, as compared to the previous, paper reporting requirements.

**Response:**  Denied.


Dated: June 27, 2016                          Respectfully submitted,

                                             /s/ Paul J. Kiernan
                                             Paul J. Kiernan (Bar #385627)
                                             Christine N. Walz (Bar # 996643)
                                             HOLLAND & KNIGHT, LLP
                                             800 17th Street, N.W., Suite 1100
                                             Washington, D.C. 20006
                                             (202) 663-7276 (phone)
                                             (202) 955-5564 (facsimile)
                                             Paul.Kiernan@hklaw.com (email)
                                             Christine.Walz@hklaw.com(email)

3

#46928422_v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 27th day of June, 2016, a true and accurate copy of the foregoing was served via email and first class mail, postage prepaid, on the following:

Andrew J. Saindon
Toni Michelle Jackson
Senior Assistant Attorney General
441 Fourth Street, N.W.
Suite 600 South
Washington, D.C. 20001

/s/ Paul J. Kiernan
Paul J. Kiernan

4